**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION**

| | |
|---|---|
| Steven B. Cummings, an individual; John Gardiner, an individual; John Gardiner as Custodian for Max A. Gardiner; John Gardiner as Custodian for Paige M. Gardiner; John Gardiner as Custodian for Jake W. Gardiner; David J. Gartner, an individual; David J. Gartner Profit Sharing Account; Gregory T. Hegwood, an individual; Blake Johnson, LLC, a limited liability company; Bryant Johnson, an individual; J. Evan Johnson, an individual; J. Evan Johnson Individual Retirement Account; Peter Johnson, an individual; Craig Mandery, an individual; Guy M. Peterson Individual Retirement Account; Joseph H. Ryan, an individual; and Sandra M. Ryan, an individual, | Court File No. _____ |
| Plaintiffs, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| Paramount Partners, LP; Crossroad Capital Management, LLC; John W. Lawton; Capital Solutions Management, LP; Capital Solutions Distributors, LLC; Charles T. Thompson; Timothy R. Redpath; and Michael W. Bozora, | |
| Defendants. | |

Plaintiffs, for their Complaint against Defendants, state and allege as follows:

## INTRODUCTION

Plaintiffs are all individuals and entities who purchased securities, consisting of limited partnership interests in Defendant Paramount Partners, LP ("Paramount") through, and as a result of, public advertisement and personal solicitations by one or more of the other Defendants herein; Plaintiffs were induced to invest in Defendant Paramount by Defendants' false

representations that Paramount was an extremely successful hedge fund which had a history of obtaining significant profits for its limited partners by and through careful and well informed stock market hedge trading on a short term basis, and that Plaintiffs would be able to withdraw their investments (together with anticipated profits) from Paramount in accordance with the Limited Partnership Agreement.  Contrary to the aforesaid representations, however, Defendant Paramount was not a successful hedge fund and Plaintiffs' investment monies were not used by Paramount to engage in short term stock market hedge trading but rather were misappropriated by one or more of the Defendants; Defendants perpetuated the fraudulent sales and scheme through means and instruments of interstate commerce and the mail by, *inter alia*, transmitting prospectuses and  providing Plaintiffs with false written and oral "Performance Historys" for Paramount;  issuing false monthly statements to Paramount's limited partners, including Plaintiffs; and issuing false annual Schedule K-1 Internal Revenue Service forms ("K-1's") to Paramount's limited partners, including Plaintiffs, which purportedly verified the Defendants' claims that the limited partners were making substantial gains on their investments in Paramount. The Securities and Exchange Commission ("SEC") obtained a February 19, 2009 Temporary Restraining Order ("TRO") freezing Defendant Paramount's assets and effectively terminating any business operations that it might otherwise have attempted to conduct.  Based upon the information obtained by the SEC during the course of its recent investigation into Paramount, it appears that Paramount's assets have been reduced to a level that is wholly insufficient to repay Plaintiffs the amount of their collective investments in Paramount, to say nothing of the phantom profits that the Defendants claimed Paramount had earned for and on behalf of the Plaintiffs.  In this lawsuit, Plaintiffs seek to recover their compensatory damages, together with statutory doubling thereof, plus interest and their attorneys' fees.

## PARTIES

1.     At all times relevant herein, the following identified Plaintiffs were, and are,

either individuals or entities that purchased limited partnership interests, as investments, in

Paramount for the respective amounts, and at the respective times, set forth hereinbelow, subject

to the withdrawals from Paramount set forth hereinbelow:

| NAME | DOLLAR AMOUNT OF INVESTMENT | DATE OF INVESTMENT |
|------|------------------------------|---------------------|
| Steven B. Cummings, an individual | $125,000 | 10/15/08 |
| John Gardiner, an individual | $100,000<br>$100,000<br>$400,000<br>$200,000<br>$150,000<br>Withdrawal ($400,000)<br>Net Principal $550,000 | 9/18/06<br>3/1/07<br>11/6/07<br>9/10/08<br>11/19/08<br>January 2009 |
| John Gardiner as Custodian for Max A. Gardiner | $10,000 | 12/28/07 |
| John Gardiner as Custodian for Paige M. Gardiner | $10,000 | 12/28/07 |
| John Gardiner as Custodian for Jake W. Gardiner | $10,000 | 12/28/07 |
| David J. Gartner, an individual | $200,000 | 7/10/08 |
| David J. Gartner Profit Sharing Account<br>Subtotal | $300,000<br>$100,000<br>$400,000 | 9/5/08<br>11/5/08 |
| Gregory T. Hegwood, an individual | $100,000 | 10/29/08 |
| Blake Johnson, LLC, a limited liability company | $100,000 | 7/27/07 |
| Bryant Johnson, an individual | $100,000 | 11/1/08 |
| J. Evan Johnson, an individual | $100,000 | 11/1/08 |
| J. Evan Johnson Individual Retirement Account | $100,000 | 12/12/08 |
| Peter Johnson, an individual | $100,000 | 11/1/08 |
| Craig Mandery, an individual | $100,000 | 12/19/07 |
| Guy M. Peterson Individual Retirement Account | $100,000 | 2/1/08 |
| Joseph H. Ryan, an individual | $250,000<br>$250,000 | 8/22/06<br>7/31/07 |

| | Withdrawal | ($250,000) | 12/25/08 |
| | Withdrawal | ($250,000) | 1/9/09 |
| Net Principal | | $ - 0 - | |
| Sandra M. Ryan | | $250,000 | 7/31/07 |
| | | $200,000 | 1/3/08 |
| Subtotal | | $450,000 | |
| **TOTAL** | | **$2,430,000** | |

2.     At all times relevant herein, Defendant Paramount was, and is, a limited partnership organized under the laws of the State of Delaware, with its registered agent for service of process being The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware  19805; as stated in Defendant Paramount's Limited Partnership Agreement, its principal office was 130 West Lake Street, City of Wayzata, County of Hennepin, State of Minnesota.

3.     At all times relevant herein, Defendant Crossroad Capital Management, LLC ("Crossroad") was, and is, a limited liability company organized under the laws of the State of Delaware; since December 6, 2001, Defendant Crossroad has maintained its registered office in Minnesota, as a foreign limited liability company, at 130 West Lake Street, City of Wayzata, County of Hennepin, State of Minnesota.  At all times relevant herein, Defendant Crossroad was, and is, the general partner and a controlling person of and for Defendant Paramount and Paramount's portfolio Investment Manager.

4.     Defendant John W. Lawton ("Lawton") is an individual who resided in the metropolitan Minneapolis area of Minnesota until approximately a year ago, at which time he moved to, and took up residing in, San Francisco, California; at all times relevant herein, Defendant Lawton owned at least 50%, and was a controlling person, of Defendant Crossroad.

5.     At all times relevant herein, Defendant Capital Solutions Management, LP ("Solutions Management") was, and is, a limited partnership organized under the laws of the

State of Delaware, which maintained an office at 130 West Lake Street, City of Wayzata, County of Hennepin, State of Minnesota, but which maintains its principal and registered office at 21 Tamal Vista Boulevard, Suite 230, Corte Madera, California   94925; Defendant Solutions Management is a registered "Investment Adviser" with the SEC, as well as being registered as an "Investment Adviser" in the States of Minnesota, California, Arizona, and Louisiana; Defendant Solutions Management owns, or owned, at least a substantial minority interest in Defendant Crossroad and was a controlling person of Defendant Crossroad and Defendant Paramount.

6.      At all times relevant herein, Defendant Capital Solutions Distributors, LLC ("Solutions Distributors") was, and is, a limited liability company organized under the laws of the State of California, with its registered office in the State of California at 21 Tamal Vista Boulevard, Suite 230, Corte Madera, California   94925; Defendant Solutions Distributors is a registered "Broker-Dealer" with the NASD; Defendant Solutions Distributors was, and is, Defendant Crossroad's designated "Sales Agent" for the purpose of soliciting and referring prospective limited partner investors in Paramount to Crossroad and Paramount and was a controlling person of Defendants Crossroad and Paramount.

7.      At all times relevant herein, Defendant Charles T. Thompson ("Thompson") was, and is, an individual resident of the State of Minnesota who is a managing agent of Defendant Solutions Management, a managing director of Defendant Solution Distributors and a controlling person of Defendants Solutions Management, Solutions Distributors, Crossroad, and Paramount, and who also is the individual sales agent who personally solicited Plaintiffs to invest with Defendants as limited partners in Paramount.

8.      At all times relevant herein, Defendant Timothy R. Redpath ("Redpath") was, and is, a resident of the State of California, who is an owner of, and a principal in, Defendants

Solutions Management and Solutions Distributors and a controlling person of, Defendants Solutions Management, Solutions Distributors, Crossroad and Paramount.

9.      At all times relevant herein, Defendant Michael W. Bozora ("Bozora") is a resident of the State of California, who is an owner of, and a principal in, Defendants Solutions Management and Solutions Distributors and a controlling person of, Defendants Solutions Management, Solutions Distributors Crossroad and Paramount (Defendants Thompson, Redpath, Bozora, Solutions Management and Solutions Distributors are hereinafter collectively referred to as the "Solutions Group").

## JURISDICTION AND VENUE

10.      The above-entitled Court has jurisdiction over this lawsuit pursuant to Section 22(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77v(a)), Section 27 of the Securities and Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78aa), and the doctrine of pendent jurisdiction.

11.      Venue is proper in this district as all Plaintiffs reside in this District, all of the Defendants have conducted business within this District, and the conduct of Defendants that is alleged as a basis for Plaintiffs' Complaints herein occurred in this District.  Venue is further proper in this District because the various Subscription Agreements executed by Plaintiffs and Defendant Crossroad and Defendant Paramount whereby the respective Plaintiffs became limited partners in Paramount, provide for litigation of this matter in the City of Minneapolis, State of Minnesota.

## FACTUAL ALLEGATIONS

**Defendants' Relationships Before May 23, 2007.**

12.     In or about November 2001, Defendant Lawton, by and through Defendant Crossroad, organized a private hedge fund under the name and style of doing business as "The Crossfire Trading Fund, L.P."

13.     In or about May 2003, Defendant Lawton, through Defendant Crossroad, changed the name and style of doing business of the aforesaid hedge fund to "Paramount Partners, L.P." and began the public solicitation of investors by means of internet advertisements containing false representations including, *inter alia*, ". . . [We conduct] fundamental research [and] . . . side visits with company management to develop a detailed understanding of each company's strategy and what drives its business."

14.     Prior to May 23, 2007, Defendant Lawton, by and through Defendant Crossroad, amended and restated Paramount's Limited Partnership Agreement three separate times, as follows:

> First Amended and Restated Limited Partnership Agreement – July 11, 2003
> Second Amended and Restated Limited Partnership Agreement – September 1, 2003
> Third Amended and Restated Limited Partnership Agreement – June 15, 2004

15.     At some time prior to May 23, 2007, but at least by May, 2006, Defendants Lawton, Crossroad and Paramount had become affiliated in some capacity with the Solutions Group, and the Solutions Group was, as early as May, 2006, soliciting potential limited partnership investors in Defendant Paramount, for and on behalf of Defendants Crossroad and Paramount.

**Defendants' Relationships After May 23, 2007.**

16.     On or about May 23, 2007, Defendants Lawton, Crossroad and Paramount further defined and formalized their relationship with the Solutions Group in an agreement whereby Capital Solutions became an owner in and of Defendant Crossroad, which relationship was described by Defendants in a May 23, 2007 Private Placement Memorandum (page 23) for the offer and sale of the limited partnership investments in Paramount, as follows:

> The General Partner of the Fund [Defendant Paramount] will be Crossroad Capital Management, LLC, a Delaware limited liability company.  All of the General Partner's capital is owned by John W. Lawton and Capital Solutions Management, L.P. ("Capital Solutions").  As of the initial date of the agreement between Capital Solutions and the General Partner, Capital Solutions owns 10% of the General Partner.  For each $2,000,000 in new assets the General Partner takes under management, Capital Solutions will own an additional 10 percent of the General Partner up to a maximum of 50 percent. Capital Solutions will advise and assist the General Partner in business planning, business management, business development, and fundraising, and the General Partner will pay Capital Solutions a monthly fee for services rendered.

17.     As of May 23, 2007, Defendants also amended Paramount's Limited Partnership Agreement, by and through a Fourth Amended and Restated Agreement, with the only change from the Third Amended and Restated Agreement being the addition of Section 7.3 thereto to specifically provide for Paramount to pay a "sales fee" to an entity responsible for the successful referral of limited partnership investors to Paramount, as follows:

> **7.3     Sales Fee.**  The General Partner may, in its sole discretion, charge certain Limited Partners an annual sales fee in advance equal to 1% of such Limited Partner's Capital Account, commencing on the effective date of such Limited Partner's initial subscription, and on each anniversary date of the initial subscription thereafter.   In addition, the General Partner may, in its sole discretion, agree to pay a sales agent a portion of its Performance Allocation, if any, in connection with successful referrals of Limited Partners to the General Partner.

18.     Also, on or about May 23, 2007, Defendants appointed Defendant Capital Solutions as the "Sales Agent" under and pursuant to the aforesaid Section 7.3 of the Fourth Amended and Restated Limited Partnership Agreement of and for Paramount, and described that appointment in the May 23, 2007 Private Placement Memorandum (page 3), as follows:

8

The General Partner [Defendant Crossroad] has appointed Capital Solutions Distributors, LLC (the "Sales Agent") to refer prospective Fund investors to the General Partner.  In connection with successful referrals, Limited Partners referred to the General Partner by the Sales Agent (the "Covered Limited Partners") will be charged an annual sales fee in advance equal to 1% of each Covered Limited Partner's Capital Account, commencing on the effective date of the Covered Limited Partner's initial subscription, and on each anniversary date of the initial subscription thereafter (the "Sales Fee").  The Sales Fee is payable to the Sales Agent and will be deducted from the Capital Account of each Covered Limited Partner.

In addition, the General Partner has agreed to pay the Sales Agent 7.5% of the Performance Allocation, if any, in connection with successful referrals of Covered Limited Partners.

**Defendants' Statements and Representations to Plaintiffs.**

19.     Defendants solicited prospective investors, including Plaintiffs, to become limited liability partners in Paramount by use of a prospectus, and both oral and written statements and representations regarding Paramount's "Performance History," which included, among others, the following specific statements and representations:

The Fund [Defendant Paramount] will employ a proprietary trading strategy, based on 30 years of historical research, technical strategies, fundamental research to uncover sector and economic market inefficiencies. The Fund is dedicated to achieving absolute returns to increase our investor wealth regardless of market trends. The General Partner [Defendant Crossroad] believes with our experience and strong money management strategies the Fund can produce long term gains for our Limited Partners. . . .

[Defendant Crossroad] provides professional portfolio management for high net individuals through its hedge fund.  It was founded on the principal that systematic risks can be managed by hedging a portfolio to the current market environment. . . .

[Defendant Paramount] is an opportunistic long/short equity trading fund.  Extensive and deep electronic directional monitoring and analysis of market conditions and then (sic) same analysis of individual stocks are utilized to identify specific securities for purchase or sale. . . . Through our own research/due diligence processes and relationships with research boutiques and regional firms. . . . We are constantly searching all research and other sources for ideas and then testing them to determine if they fit our industry and company criteria.  Then through electronic trend and directional analysis we determine if the particular stock is poised for a breakout or breakdown.  Only when all of the requirements are met does the name enter the portfolio.  Once in the portfolio, we monitor it closely to decide whether to add to the position if it is working as planned, remove it by way of our lost protection discipline, or let it run until it has reach (sic) our

> objective.  . . . At the portfolio level, we are responsible for managing systematic risk, such as Beta, to make sure that we remain on target within risk tolerances.  At the position level, we are responsible for identifying position risks and helping to set core position sizes and Tactical Trading limits before establishing a position.  Research, Trading and Risk Management are defined by Portfolio Manager and include:  specific exit triggers, stop loss triggers, and a detailed watch list of items that need to be continuously monitored during the life of a trade.

This "Performance History" also stated, as specific facts, that Defendant Paramount had achieved the following investment returns from its stock market hedge trading, net of its own fees and the Solutions Group's fees, for each of the following years:

| Year | "Net Performance" |
|------|-------------------|
| 2002 | 21.9% |
| 2003 | 43.07% |
| 2004 | -4.93% |
| 2005 | 23.48% |
| 2006 | 19.22% |
| 2007 | 64.97% |

for a total "Net Performance" of 167.71% by Paramount for those six years, or an average of 27.95% per year.

20.    Defendants also stated and represented to Plaintiffs in writing and orally, both before and after they had become limited partners in Paramount, that Paramount achieved the following "Net Performance" percentage earnings from its stock market hedge fund trading in each of the first 11 months of 2008, as follows:

| Month | "Net Performance" |
|-------|-------------------|
| January | -1.25% |
| February | .27% |
| March | 1.3% |
| April | 2.19% |
| May | 2.5% |
| June | 1.61% |
| July | 1.14% |
| August | 3.01% |
| September | 4.33% |
| October | 10.62% |
| November | 12.95% |

for a cumulative year to date "Net Performance" of 38.4% for the 11 month period ending

November 30, 2008, or an average of 3.51% per month; Defendants also stated and represented

to Plaintiffs that Paramount's earnings record had placed it in the top 100 of Bloomberg LP's

Hedge Fund Universe for several years, and in the top 50 for the recent months prior to May,

2008.

21.     Defendants offered and sold the limited partnership interests in Paramount to

Plaintiffs by means of written prospectuses including, *inter alia*, Private Placement

Memorandum dated both June 26, 2005 and May 23, 2007.

22.     Defendants in their June 26, 2005 Private Placement Memorandum (page 9)

describe Paramount's intended "Investment Objective and Strategies" as follows:

> *Principal Objective and Trading Strategy*.  The General Partner will seek to
> maximize the Fund's total return through employment of an active trading strategy that is
> based on technical and fundamental analysis of individual securities and markets.  In
> pursuing this objective, the General Partner will take long and short positions in securities
> based upon what it believes are relatively predictable patterns in investor behavior as well
> as fundamental analysis of securities.  However, to hedge against unknown market risk,
> the General Partner will normally retain a substantial portion of the Fund's portfolio in
> cash at the end of each trading day.  This trading strategy seeks to takes (sic) advantage
> of daily market fluctuations in equity prices, while minimizing exposure to the overall
> market.
>
> In pursuing the Fund's investment objective, the General Partner will primarily
> employ technical analysis in the trading of the Fund's assets.  Technical analysis is based,
> most simply, on supply and demand.  When supply is low and demand is high, the stock
> price will rise.  Conversely, if the supply is high and the demand is low, the stock price
> will fall.  Technical analysis operates with a number of basic rules and assumptions, one
> of which is that all available information is reflected in the price of a security.  Therefore,
> a technical trader does not normally concern him or herself with the fundamentals of a
> particular equity, only the market's reaction to the fundamentals.
>
> However, in addition to technical analysis, the General Partner will also employ
> fundamental analysis in the management of the Fund's portfolio.  Fundamental analysis
> is a method of evaluating securities by attempting to measure the intrinsic value of a
> particular security.  Fundamental analysis covers everything from the overall economy
> and industry conditions, to the financial condition and management of companies.  The

General Partner's approach will be to constantly search for intrinsic value in a company's securities and to trade those securities when value opportunities exist.  As money managers, the principals of the General Partner will constantly evaluate securities of various companies to identify situations where the asset or equity value of a company differs from its market price.

Defendants, in their subsequent May 23, 2007 Private Placement Memorandum (page 9) describe

Paramount's intended "Investment Objective and Strategies" as follows:

*Principal Objective and Trading Strategy.*  The Fund's investment objective will be to maximize investment returns while minimizing risks by using a "long/short" investment strategy.  The Fund will invest in long positions in securities which it believes will outperform the overall securities markets while simultaneously taking short positions in securities which it believes will underperform the overall securities market.  The Fund may utilize leverage in the implementation of its investment strategy.

In pursuing the Fund's investment objective, the General Partner will primarily employ technical analysis in the trading of the Fund's assets.  Technical analysis is based, most simply, on supply and demand.  When supply is low and demand is high, the stock price will rise.  Conversely, if the supply is high and the demand is low, the stock price will fall.  Technical analysis operates with a number of basic rules and assumptions, one of which is that all available information is reflected in the price of a security.  The General Partner will typically use technical strategies to determine market direction and will also employ equity charts to identify specific securities for purchase or sale based on the overall direction of the market.  A technical trader does not normally concern him or herself with the fundamentals of a particular equity, only the market's reaction to the fundamentals.

However, in addition to technical analysis, the General Partner will also employ fundamental analysis in the management of the Fund's portfolio.  Fundamental analysis is a method of evaluating securities by attempting to measure the intrinsic value of a particular security.  Fundamental analysis covers everything from the overall economy and industry conditions, to the financial condition and management of companies.  The General Partner's approach will be to constantly search for intrinsic value in a company's securities and to trade those securities when value opportunities exist.  As money managers, the principals of the General Partner will constantly evaluate securities of various companies to identify situations where the asset or equity value of a company differs from its market price.

23.     Defendants also utilized an internet website, under the name and style of

"www.crossroadcapital.net" which touted Defendant Paramount's investment "strategy" as

follows:

Paramount Partners, L.P. invest primarily in US Stock Exchange companies with a market capitalization over $500 million for an initial investment. The Fund incorporates an active trading strategy, by taking both long and short positions, to capitalize on market inefficiencies coupled with fundamental research. We conduct side visits with company management to develop a detailed understanding of each company's strategy and what drives its business. The Fund maintains a strict discipline of exiting and position where there is a 10% or more loss from the cost basis.

24.     Defendants stated and represented to Plaintiffs that the net proceeds of Plaintiffs'

investment in Paramount would be invested and managed by Defendants in accordance with the

aforesaid representations regarding Defendants "Investment Objective and Strategies," as it

specifically stated in both the aforesaid Private Placement Memorandum as follows:

The net proceeds of this private offering, after deduction of organizational and initial offering expenses, will be invested in accordance with the policies set forth under "Investment Objective and Strategies."

(June 26, 2005 Private Placement Memorandum and May 23, 2007 Private Placement

Memorandum, page 4).

25.     Defendants also stated and represented to Plaintiffs that the net gains realized by

Paramount from its stock market hedge trading would generally be retained by Paramount and

reinvested on behalf of its limited partner investors, as Defendants described "Distributions" in

both of the aforesaid Private Placement Memorandum as follows:

The General Partner [Defendant Crossroad] generally intends to reinvest all realized income and capital gains into additional Fund investments rather than distribute such realized income and gains to the investing partners of the Fund. Because the Fund will be classified and treated as a partnership for income tax purposes, each Partner will be subject to income tax on its proportionate share of such income and gains whether or not the Fund makes distributions thereof.

(June 26, 2005 Private Placement Memorandum and May 23, 2007 Private Placement

Memorandum, page 5).

26.     Defendants also stated and represented to Plaintiffs that Plaintiffs would be able to withdraw their investments from Paramount in accordance with the following statement from both the Private Placement Memorandum under "Withdrawals":

> Limited Partners generally may make withdrawals from their Capital Accounts on an annual basis (as of the last business day of each calendar year) upon providing the General Partner with at least 60 days' prior written notice. ***However, you will generally not be permitted to make a withdrawal prior to the first anniversary of your admission to the Fund.***
>
> No Limited Partner may make a withdraw (sic), other (sic) a complete withdrawal, which reduces a Limited Partner's capital account balance below minimum initial capital contribution amount. However, the General Partner may, in its sole discretion, waive minimum Capital Account balances with respect to certain Limited Partners or under certain circumstances. The General Partner may require that any Limited Partner withdraw all or any portion of its capital account for any reason without notice.
>
> ***Additional restrictions may be placed on withdrawals. Please review the Partnership Agreement carefully before investing.***

(June 26, 2005 Private Placement Memorandum and May 23, 2007 Private Placement Memorandum, page 7).

27.     Defendants also stated and represented to Plaintiffs that Plaintiffs would be provided with management prepared monthly financial information, and accountant audited annual financial statements, for and of Paramount, as set forth in the following excerpts from both the Private Placement Memorandum under "Reports to Partners" and "Accounting and Reporting," respectively:

> The General Partner [Defendant Crossroad] will provide each Limited Partner with monthly financial statements and performance information of the Fund and its operations. Additionally, the General Partner will provide each Limited Partner with audited annual financial statements of the Fund as soon as practicable following the date they become available.
>
> . . .
>
> Virchow, Krause & Co., Bloomington, Minnesota, has been selected by the General Partner as the Fund's independent certified public accounting firm and will report upon

the financial statements of the Fund for each year.  Copies of their reports will be distributed to all Limited Partners together with a report of the Fund's operations and portfolio holdings.  The Fund's fiscal year will end December 31.

(June 26, 2005 Private Placement Memorandum and May 23, 2007 Private Placement Memorandum, page 8).

28.    The overall intended, and actual, effect of the aforesaid statements and representations was to create an image of Paramount and Crossroad as a successful, experienced, sophisticated, secure and reliable investment vehicle for Plaintiffs to invest in as limited partners, through Solutions Group.

29.    Many, if not all, of the Plaintiffs, however, were at least initially skeptical of Defendants' claims regarding the degree of success that Defendants Paramount and Crossroad had purportedly achieved in the past through their claimed stock market hedge trading; in response to such skepticism and inquiries from Plaintiffs, the Solutions Group, through their authorized agent and representative Defendant Thompson, made various statements and representations to Plaintiffs in an effort to convince Plaintiffs that Paramount and Crossroad were a successful, secure and reliable investment vehicle for Plaintiffs, including, but not limited to, the following:

(a)    That the Solutions Group had, and continued to, verify Defendant Paramount's stock trades and stock trading account balances with the stock brokerage firm of Goldman Sachs;

(b)    That Defendant Thompson personally watched the stock market trades being made by Defendants Lawton, Paramount and Crossroad, and that Defendant Thompson talked to Defendant Lawton on a daily basis regarding the Fund's activities;

(c)    That Defendants Thompson, Redpath and Bozora were continually watching over Defendants Lawton, Paramount and Crossroad, and that there were checks and balances in place to make sure that the performance data provided by Defendants Lawton, Paramount and Crossroad was accurate;

(d)     That Defendants Redpath and Bozora had been in the investment business for many years handling investments for high net worth clients, that they were very savvy investors, and that they were good partners to have for Plaintiffs;

(e)     That Defendant Paramount's cash assets and stock trading accounts were being followed and audited by the large Minneapolis, Minnesota accounting firm of Virchow, Krause & Co.;

(f)     That Defendant Thompson had personally seen Defendant Paramount's financial and trading statements and that everything added up; and

(g)     That in order to hedge against market risk, Defendants Paramount and Crossroad normally retained all, or nearly all, of the Fund's portfolio and cash at the end of the trading date.

**Plaintiffs' Reliance and Investments.**

30.     In reasonable reliance upon the aforesaid written and oral statements and representations by Defendants, Plaintiffs purchased their respective limited partnership interests in Defendant Paramount by paying the respective dollar amounts therefor, upon the respective dates, as set forth in paragraph 1 hereinabove, and became limited partner investors in Paramount.

**Positive K-1's and Monthly Statements.**

31.     For the calendar years of 2006 and 2007, Defendants Paramount and Crossroad issued K-1's to the respective Plaintiffs who had invested in Paramount during or by those two years, with each such K-1 purporting to reflect actual positive earnings by Paramount from its stock market hedge trading on behalf of the respective Plaintiff limited partners; in reasonable reliance upon the accuracy and truthfulness of these K-1's, said Plaintiffs reported the respective amount of income as stated therein as income on their federal and state income tax returns, and paid federal and state income tax thereon.

32.      Defendants also provided each of the respective Plaintiffs with written monthly statements for each such Plaintiff's limited partnership "account" with Paramount, which

monthly statements generally documented a substantial increase in the dollar amount of each such limited partnership "account" in accordance with the monthly "net performance" earnings set forth in the "Performance History" documentation referenced in paragraphs 19 and 20 hereinabove.

33.    The intended and actual effect of these positive K-1's and monthly statements was to reinforce the effect of Defendant's aforesaid statements and representations that Defendants Paramount and Crossroad were a successful, experienced, sophisticated, secure and reliable investment vehicle for Plaintiffs to continue to invest in as limited partners, through Solutions Group.

### SEC's Investigation and Action.

34.    In or about January 2009, the SEC began an investigation into the activities of Defendants Lawton, Paramount and Crossroad; in connection with that investigation, said Defendants provided the SEC with documentation purportedly showing that the cumulative net assets in the accounts of all of Paramount's limited partners amounted to approximately $19,800,000 as of November 30, 2008, and that those cumulative limited partner account assets had declined to approximately $16,900,000 as of December 31, 2008, with this reduction being attributed by said Defendants mainly to a reported -14.39% return on limited partners' investment accounts with Paramount during the month of December 2008 as a result of Paramount's stock market hedge trading.

35.    The SEC has now determined, however, that Defendants Lawton, Paramount and Crossroad provided false information and documentation to the SEC, and that all of Paramount's liquid assets as of February 13, 2009 had a total cumulative value of only approximately $1,300,000.

36.     The SEC also determined, as part of its investigation into the activities of Defendants Lawton, Paramount and Crossroad, that limited partners had invested approximately $10,800,000 into Paramount during the period of December 2001 to December 2008 (with the vast majority of those investments being after May 23, 2007); that limited partner withdrawals from Paramount had been only approximately $1,200,000; and that the net investment by Paramount's remaining limited partners in Paramount was therefore approximately $9,600,000.

37.     The SEC also determined, as part of its investigation into the activities of Defendants Lawton, Paramount and Crossroad, that during the period March 2007 through July 2008 said Defendants transferred approximately $2,100,000 from Defendant Paramount to Defendant Crossroad, and then transferred approximately $1,100,000 from Defendant Crossroad to Defendant Lawton; the SEC also determined that in January 2009, Defendant Lawton withdrew approximately $900,000 from Defendant Paramount's stock trading account at Merrill Lynch.

38.     As a result of the SEC's investigation into Defendants Lawton, Crossroad and Paramount, the SEC commenced a civil enforcement action in United States District Court, District of Minnesota (Case No. 09-CV-368) ("SEC Lawsuit") on or about February 18, 2009 alleging seven separate Counts of federal securities law violations by said Defendants; the SEC obtained a TRO in the SEC Lawsuit on February 19, 2009, freezing the assets of Defendants Lawton, Crossroad and Paramount, which TRO has had the effect of terminating said Defendants' stock market hedge trading activities; by Order entered on February 25, 2009 in the SEC Lawsuit, the aforesaid TRO was extended to a Preliminary Injunction against Defendants Lawton, Crossroad and Paramount.

39.     Defendants Lawton, Crossroad and Paramount have failed to interpose any Answer in the SEC Lawsuit, and are presently in default in the SEC Lawsuit.

**Present Value of Plaintiffs' Investments in Paramount.**

40.     Defendant Paramount's present assets, as determined by the SEC, are wholly inadequate to permit its limited partners, including Plaintiffs, to withdraw their initial investment in Paramount from Paramount, and Paramount has no ability whatsoever to pay the limited partners, including Plaintiffs, any of the profits that Defendants claimed that Defendant Paramount realized on their behalf from its stock market hedge trading; it is possible that as a result of the SEC Lawsuit, Plaintiffs will receive a relatively nominal portion of their initial investment in Paramount from Paramount itself, or a Court appointed receiver for Paramount; but, it does not appear that Paramount has the financial capability of repaying its limited partners, including Plaintiffs, anywhere near the amount of money that Paramount owes to its limited partners, and Plaintiffs have therefore been damaged as hereinafter alleged.

## COUNT I

### Illegal Sale of Unregistered Securities Under the Securities Act

### (All Defendants)

41.     Plaintiffs restate and reallege paragraphs 1 through and including 40 hereinabove, as if fully stated herein.

42.     The limited partnership interests in Paramount, which were offered and sold by Defendants to Plaintiffs and others, constitute "securities" within the meaning and purview of Section 2(a) of the Securities Act (15 U.S.C. § 77b(a)).

43.     The offer and sale of Paramount's limited partnership interests were not registered with the SEC, and constituted an unregistered public offering of such securities for which

Defendants Crossroad, Solutions Management, Thompson, Redpath and Bozora were "underwriters" within the meaning and purview of Section 2(a) of the Securities Act (15 U.S.C. § 77b(a)).

44.     Defendants' offer, transmittal of prospectuses, sales and delivery of the respective limited partnership interests to each of the various Plaintiffs, as alleged herein, violate Section 5 of the Securities Act (15 U.S.C. § 77e).

45.     Defendants utilized means or instrumentality of interstate commerce or the United States Mail, in the offer, transmittal of prospectuses, sale and delivery of the subject limited partnership interests to the respective Plaintiffs herein.

46.     Under and pursuant to Section 12(a)(1) of the Securities Act (15 U.S.C. § 77l(a)(1)), any person who offers or sells a security in violation of Section 5 of the Securities Act "shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security . . ."

47.     Plaintiffs hereby tender their respective limited partnership interests in Paramount to Defendants.

48.     Defendants, and each of them, are jointly and severally liable to the respective Plaintiffs, for each of the respective Plaintiff's damages, either as a "person" offering and selling unregistered securities as defined in the Securities Act, or as a "controlling person" of such "person" within the meaning and purview of Section 15 of the Securities Act (15 U.S.C. § 77o).

49.     Plaintiffs, and each of them, are entitled to recover from Defendants, jointly and severally, the respective amounts of the purchase prices that they paid to purchase their

respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment to Paramount, less any amounts the respective Plaintiffs may receive from Paramount, or Paramount's court appointed receiver, as result of or pursuant to the SEC Lawsuit.

### COUNT II

### Material Misrepresentations and Omissions Under the Securities Act, the Exchange Act, and Rule 10b-5

### (All Defendants)

50.     Plaintiffs restate and reallege paragraphs 1 through and including 49 hereinabove, as if fully stated herein.

51.     Defendants made material statements and representations to Plaintiffs, including the statements and representations set forth in paragraphs 19 through 29 hereinabove, as well as the statements contained in the K-1's and monthly account statements referenced in paragraphs 31 and 32 hereinabove, knowing that such statements and representations were false and misleading, or with willful disregard to the truth or falsity of such statements and representations, and intending that Plaintiffs would rely on those statements and representations in determining whether to purchase limited partner interests in Paramount.

52.     Plaintiffs reasonably relied upon the truthfulness of the aforesaid material statements and representations made by Defendants to Plaintiffs in connection with, and as inducements to, Plaintiffs purchasing limited partner interests in Paramount.

53.     The aforesaid material statements and representations made by Defendants to Plaintiffs were, when made, and presently are, false and untrue statements of material fact, and omitted to state material facts necessary in order to make the statements, in light of the

circumstances under which they were made, not misleading, including, but not necessarily limited to, the following:

(a)     Paramount's and Crossroad's "net performance" in their claimed stock market hedge trading was not a cumulative total of 167.71% for the six years from 2002 through 2007;

(b)     Paramount's and Crossroad's "net performance" in their claimed stock market hedge trading was not a cumulative total of 38.4% for the 11 month period ending November 30, 2008;

(c)     Paramount and Crossroad did not employ an active trading strategy based on technical and fundamental analysis of individual securities and markets;

(d)     Paramount and Crossroad did not hedge against unknown market risk by retaining a substantial portion of the Fund's portfolio and cash at the end of each trading day;

(e)     The net proceeds of each respective Plaintiff's limited partner investment in Paramount was not invested by Paramount and Crossroad in accordance with the "Investment Objective and Strategies" set forth in their Private Placement Memorandum;

(f)      Paramount and Crossroad did not reinvest all, or any, income or gains that were realized from Paramount's stock market hedge trading into additional Fund investments for the limited partner accounts of the respective Plaintiffs herein;

(g)     Plaintiffs are not able to withdraw their net investments in Paramount from Paramount in accordance with either the Third or Fourth Amended and Restated Limited Partnership Agreements;

(h)     Defendants did not provide Plaintiffs with accurate monthly statements of their respective limited partner accounts in Paramount, but instead provided Plaintiffs with falsely inflated monthly statements of their respective accounts;

(i)      Defendants did not provide Plaintiffs with accurate financial monthly statements for Paramount and did not provide Plaintiffs with accountant prepared audited financial statements for Paramount;

(j)      The Solutions Group did not accurately verify that Plaintiffs' investments in Paramount were being employed and invested by Paramount and Crossroad in accordance with the "Investment Objectives and Strategies" set forth in their Private Placement Memorandum;

(k)     Paramount's cash assets and trading accounts were not being followed or audited by the accounting firm of Virchow, Krause & Co., or any other certified public accounting firm;

(l)     The K-1's provided to Plaintiffs by Paramount and Crossroad were falsely inflated by them to show that Plaintiffs were realizing income on their limited partner investments in Paramount during 2006 and 2007; and

(m)    Defendants omitted to inform Plaintiffs that Defendants Lawton, Paramount and Crossroad were misappropriating at least a substantial portion of the investment monies paid by Plaintiffs, and other limited partners in Paramount, to their own purposes.

54.    Defendants utilized means or instrumentality of interstate commerce, or the United States Mail, to communicate the aforesaid materially false misrepresentations and omissions.

55.    Defendants' material misrepresentations and omissions to Plaintiffs violate Section 12(2) of the Securities Act (15 U.S.C. § 77l(1)), and violate § 10(b) of the Exchange Act (15 U.S.C. § 78j) and Rule 10b-5  (17 CFR.240.10b-5) promulgated thereunder.

56.    Defendants, and each of them, are jointly and severally liable to the respective Plaintiffs, for each of the respective Plaintiff's damages, either as a "person" who directly violated the aforesaid provisions of the Securities Act and the Exchange Act, or as a "controlling person" of such "person" within the meaning and purview of § 15 of the Securities Act (15 U.S.C. § 77o) or § 20 of the Exchange Act (15 U.S.C. § 78t).

57.    As a direct and proximate result of Defendants' aforesaid material misstatements and omissions, Plaintiffs, and each of them, have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment to Paramount, less any amounts the respective Plaintiffs may receive from

Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit; and each of the Plaintiffs herein are entitled to recover their respective damages from Defendants, jointly and severally.

## COUNT III

## Material Misrepresentations and Omissions Under the Minnesota Securities Act

## (All Defendants)

58.     Plaintiffs restate and reallege paragraphs 1 through and including 57 hereinabove, as if fully stated herein.

59.     Defendants made material statements and representations to Plaintiffs, including the statements and representations set forth in paragraphs 19 through 29 hereinabove, as well as the statements contained in the K-1's and monthly account statements referenced in paragraphs 31 and 32 hereinabove, knowing and intending that Plaintiffs would rely on those statements and representations in determining whether to purchase limited partner interests in Paramount.

60.     Plaintiffs did not know the aforesaid material statements and representations were untrue or omitted material facts, and Plaintiffs reasonably relied upon the truthfulness of the aforesaid material statements and representations made by Defendants to Plaintiffs in connection with, and as inducements to, Plaintiffs purchasing limited partner interests in Paramount.

61.     The aforesaid material statements and representations made by Defendants to Plaintiffs were, when made, and presently are, false and untrue statements of material fact, or omissions to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, including, but not necessarily limited to, as specifically set forth in paragraph 53 hereinabove.

62.     Defendants' aforesaid material misrepresentations and omissions to Plaintiffs violate the applicable provisions of the Minnesota Securities Act, specifically Minn. Stat. § 80A.01 and 80A.68.

63.     Defendants, and each of them, are jointly and severally liable to the respective Plaintiffs, for each of the respective Plaintiff's damages, pursuant to Minn. Stat. § 80A.76(b) as a "person" who sells a security by means of an untrue statement of a material fact or an omission of a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, as a "person who directly or indirectly controls" such a "person," or as an individual who is an employee of or associated with such a "person" and materially aids the illegal sale of the securities to Plaintiffs, as provided in Minn. Stat. § 80A.23, Subd. 3 (as amended and renumbered to Minn. Stat. § 80A.76(g)).

64.     Plaintiffs, and each of them, are entitled to recover from Defendants, jointly and severally, the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment to Paramount, less any amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit, together with Plaintiffs' costs, disbursements and reasonable attorneys fees.

## COUNT IV

## Violation of Minnesota Consumer Fraud Act

## (All Defendants)

65.     Plaintiffs restate and reallege paragraphs 1 through and including 64 hereinabove, as if fully stated herein.

66.     The limited partnership interests in Paramount that Plaintiffs purchased from, and through, Defendants constitute "merchandise" within the meaning and purview of Minn. Stat. § 325F.68, Subd. 2.

67.     Defendants used and employed fraud, false pretenses, false promises, misrepresentations, misleading statements or deceptive practices, all as specifically set forth hereinabove, in connection with Defendants' efforts to induce Plaintiffs to purchase limited partner interests in Paramount, all in violation of Minn. Stat. § 325F.69.

68.     Defendants used and employed the aforesaid fraud, false pretenses, false promises, misrepresentations, misleading statements or deceptive practices, with the intent that others, including Plaintiffs, relied thereon in connection with Defendants' sale of the limited partner interests in Paramount to Plaintiffs, all in violation of Minn. Stat. § 325F.69.

69.     Plaintiffs did reasonably rely upon Defendants' fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice in purchasing their respective limited partner interests in Paramount.

70.     As a direct and proximate result of Defendants' aforesaid violations of Minn. Stat. § 325F.69, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by

Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

71.     As a result of Defendants' violations of Minn. Stat. § 325F.69, Plaintiffs are entitled to recover from Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements, including reasonable attorney's fees, incurred due to Defendants' aforesaid violations, pursuant to Minn. Stat. § 8.31.

## COUNT V

## Unjust Enrichment

## (All Defendants)

72.     Plaintiffs restate and reallege paragraphs 1 through and including 71 hereinabove, as if fully stated herein.

73.     By and through Defendants' aforesaid fraud, false pretenses, false promises, misrepresentations, misleading statements or deceptive practices, Defendants have been unjustly enriched.

74.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

75.     As a result of Defendants' unjust enrichment, as aforesaid, Plaintiffs are entitled to recover from Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements incurred herein.

## COUNT VI

## Breach of Financial Planner Fiduciary Duty

## (Solutions Group Defendants)

76.     Plaintiffs restate and reallege paragraphs 1 through and including 75 hereinabove, as if fully stated herein.

77.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza held themselves out to Plaintiffs as "Financial Planners" on or through "advertisements" within the meaning and purview of Minn. Stat. § 45.026, Subd. 1.

78.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza received pecuniary compensation for providing the financial services of inducing Plaintiffs to purchase, and retain, their respective limited partner interests in Paramount.

79.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza owed a fiduciary duty to Plaintiffs in connection with the financial planning services that they provided to Plaintiffs by inducing Plaintiffs to purchase, and retain, their respective limited partner interests in Paramount.

80.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza breached their fiduciary duty to Plaintiffs by failing to ascertain, and disclose to Plaintiffs, the material misrepresentations and omissions set forth in paragraph 53 hereinabove and by failing to properly monitor the stock market hedge trading of Defendants Lawton, Paramount and Crossroad.

81.     As a direct and proximate result of Defendants Solutions Distributors', Solutions Management's, Thompson's, Redpath's, and Boroza's breach of their fiduciary duties to Plaintiffs, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

82.     As a result of Defendants Solutions Distributors', Solutions Management's, Thompson's, Redpath's, and Boroza's breach of their fiduciary duties, Plaintiffs are entitled to recover from Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements, incurred herein.

### COUNT VII

### Negligence

### (Solutions Group Defendants)

83.     Plaintiffs restate and reallege paragraphs 1 through and including 82 hereinabove, as if fully stated herein.

84.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza held themselves out to Plaintiffs as investment advisors who were providing investment advice to Plaintiffs in connection with inducing Plaintiffs to purchase, and retain, their respective limited partner interests in Paramount, and claimed that they were monitoring the stock market hedge trading of Defendants Lawton, Paramount and Crossroad to make sure that

those trades were made in conformity with the "Investment Objective and Strategies" as set forth in the Private Placement Memorandum.

85.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza received pecuniary compensation for providing Plaintiffs with the aforesaid investment advice to purchase, and retain, their respective limited partner interests in Paramount and monitoring functions.

86.     Defendants Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza owed Plaintiffs a duty to use reasonable care in providing Plaintiffs with the aforesaid investment advice to purchase, and retain, their limited partner interests in Paramount and monitoring functions.

87.     Defendants negligently breached and violated their duty to use reasonable care in providing the aforesaid investment advice and monitoring functions to Plaintiffs.

88.     As a direct and proximate result of Defendants Solutions Distributors', Solutions Management's, Thompson's, Redpath's, and Boroza's aforesaid negligence, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

89.     As a result of Defendants Solutions Distributors', Solutions Management's, Thompson's, Redpath's, and Boroza's aforesaid negligence, Plaintiffs are entitled to recover

from Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements, incurred herein.

**COUNT VIII**

**Breach of Partner Fiduciary Duty**

**(All Defendants Except Paramount)**

90.     Plaintiffs restate and reallege paragraphs 1 through and including 89 hereinabove, as if fully stated herein.

91.     Defendant Crossroad was, and is, the General Partner of and for Paramount, and Defendant Crossroad was, at all times relevant herein, controlled by Defendants Lawton, Solutions Distributors, Solutions Management, Thompson, Redpath, and Boroza.

92.     All of the Defendants herein, with the exception of Paramount, owed a fiduciary duty to Plaintiff limited partners in Paramount, by virtue of the fact that all of these Defendants were either the General Partner of Paramount or controlled the General Partner of Paramount.

93.     All of the Defendants herein, with the exception of Paramount, breached and violated their aforesaid fiduciary duty to Plaintiffs by failing to inform and advise Plaintiffs of the material misrepresentations and omissions specifically set forth in paragraph 53 hereinabove, and by permitting Plaintiffs' investments in Paramount to be used other than as stated in the "Use of Proceeds" portions of the aforesaid Private Placement Memorandum and in the Third and Fourth Amended and Restated Limited Partnership Agreements.

94.     As a direct and proximate result of said Defendants' breach and violation of their aforesaid fiduciary duty, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported

by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

95.     As a result of Defendants' Crossroad's, Lawton's, Solutions Distributors', Solutions Management's, Thompson's, Redpath's, and Boroza's breach of their aforesaid fiduciary duty, Plaintiffs are entitled to recover from said Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements, incurred herein.

## COUNT IX

### Conversion - Misappropriation

### (Defendants Lawton, Paramount and Crossroad)

96.     Plaintiffs restate and reallege paragraphs 1 through and including 95 hereinabove, as if fully stated herein.

97.     Defendants Lawton, Paramount and Crossroad willfully and intentionally misappropriated the monies paid by the respective Plaintiffs herein to purchase their respective limited partner interests in Paramount, by diverting those monies to themselves or using those monies for purposes other than the stated "Use of Proceeds" in their Private Placement Memorandum and in the Third and Fourth Amended and Restated Limited Partnership Agreements.

98.     The aforesaid misappropriation of Plaintiffs' monies by Defendants Lawton, Paramount and Crossroad constitutes conversion of Plaintiffs' monies.

99.     As a direct and proximate result of the aforesaid conversion by Defendants Lawton, Paramount and Crossroad, Plaintiffs have been damaged in the respective amounts of

the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

100.    As a result of Defendants' Lawton's, Paramount's and Crossroad's conversion, Plaintiffs are entitled to recover from said Defendants, jointly and severally, their aforesaid damages, together with costs and disbursements incurred herein.

## COUNT X

## Civil Liability for Theft

## (Defendants Lawton, Paramount and Crossroad)

101.    Plaintiffs restate and reallege paragraphs 1 through and including 100 hereinabove, as if fully stated herein.

102.    Defendants Lawton, Paramount and Crossroad willfully and intentionally misappropriated the monies paid by the respective Plaintiffs herein to purchase their respective limited partner interests in Paramount, by diverting those monies to themselves or using those monies for purposes other than the stated "Use of Proceeds" in their Private Placement Memorandum and in the Third and Fourth Amended and Restated Limited Partnership Agreements.

103.    The aforesaid misappropriation constitutes theft of property within the meaning and purview of Minn. Stat. §§ 609.53, Subd. 2 and 604.14, Subd. 1, by Defendants Lawton, Paramount and Crossroad.

104.    As a direct and proximate result of the aforesaid theft by Defendants Lawton, Paramount and Crossroad, Plaintiffs have been damaged in the respective amounts of the purchase prices that they paid to purchase their respective limited partner interests in Paramount, plus any federal and state income tax Plaintiffs paid for and with respect to the phantom profits reported by Defendants on Plaintiffs' K-1's, together with interest thereon from the date of each respective payment by Plaintiffs, less the amounts the respective Plaintiffs may receive from Paramount, or Paramount's court-appointed receiver, as a result of or pursuant to the SEC Lawsuit.

105.    As a result of the theft by Defendants Lawton, Paramount and Crossroad, Plaintiffs are entitled to recover from Defendants Lawton, Paramount and Crossroad, jointly and severally, their compensatory damages, together with 100% punitive damages as provided in Minn. Stat. § 604.14(1), and their costs and disbursements incurred herein.

WHEREFORE, Plaintiffs respectively request that the Court enter judgment against Defendants, jointly and severally, pursuant to the various separate Counts alleged herein, awarding compensatory damages to each of the Plaintiffs herein, as proved at trial, together with interest, attorneys fees, punitive damages, and costs and disbursements, as alleged herein.

**NEATON & PUKLICH, P.L.L.P**

Dated:  April 13, 2009

_____s/Patrick J. Neaton_____
Patrick J. Neaton (#77318)
Michael L. Puklich (#0250661)
7975 Stone Creek Drive, Suite 120
Chanhassen, MN  55317
(952) 258-8444

George W. Frisch (#0032293)
1770 Delaware Avenue
West St. Paul, MN  55118
(612) 849-4198

*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby make demand for a trial by jury of all issues triable in the above-contained Complaint.