## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Steven B. Cummings, et al., | Court File No.:09-CV-00847-RJK-JJK |
| Plaintiff, | **DEFENDANT CHARLES T. THOMPSON'S MEMORANDUM OF LAW IN SUPPORT SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| Paramount Partners, LP, et al., | |
| Defendant. | |

### INTRODUCTION

Defendant Charles T. Thompson ("Thompson") submits this memorandum of law in support of his motion to dismiss specific claims in Plaintiffs' Second Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  Thompson joins and incorporates herein by reference the arguments made by Defendants Capital Solutions Management, LP, Capital Solutions Distributors, LLC, Timothy R. Redpath andMichael W. Bozora in their Motion to Dismiss.

Plaintiffs commenced this suit on the coattails of an action brought by the Securities and Exchange Commission against Defendants Paramount Partners, LP ("Paramount"), Crossroad Capital Management, LLC, ("Crossroad"), and John W. Lawton ("Lawton") following the collapse of the Paramount hedge fund in late 2008 and early 2009. (SEC v. John W. Lawton, et al., Case No. 0:09-CV-00368 (ADM/AJB)).  In the enforcement action, the SEC asserts Lawton, Paramount, and Crossroad made false representations and material

omissions in connection with their management and sale of the Fund's securities. Plaintiffs, all of whom were investors in the Paramount fund, sustained investment losses as a result of the fund's collapse, which coincided with the precipitous decline of the nation's financial markets. They seek to recover the value of those losses through this private securities suit.

Recognizing the SEC has netted the big fish in the SEC action, Plaintiffs have now cast their net wide naming any and all parties associated with Lawton, Paramount, or Crossroad as defendants in this case, including Defendant Thompson in an attempt to recover their investment losses. The Complaint, however, fails to support their attempt. Plaintiffs' attempts to cure their pleading deficiencies have also failed.[1] For this reason, certain counts of Plaintiffs' Complaint must be dismissed.

First, a number of Plaintiffs' claims fail to satisfy the pleading standards enunciated by the United States Supreme Court in <u>Twombly</u>, its progeny, and the Private Securities Litigation Reform Act, despite the fact Plaintiffs were afforded a second bite at the apple with their Second Amended Complaint. Second, Plaintiffs' claims against Thompson are particularly egregious given Thompson lacked any authority or management over the Fund or its investments. Like Plaintiffs, Thompson was a limited partner in Paramount and stands

---

[1] Thompson moved to dismiss Plaintiffs' Amended Complaint on June 14, 2009. (Case No. 09-cv-00847-RHK-JJK, Docket Nos. 4, 9, 13-15.) The parties then stipulated to the filing of the Second Amended Complaint, which named additional plaintiffs and sought to cure the pleading deficiencies in Plaintiffs' Amended Complaint. (Docket Nos. 24, 26.) The Second Amended Complaint is, however, equally deficient. For that reason, Thompson moves to dismiss certain counts of Plaintiffs' Second Amended Complaint.

to lose a personal investment of approximately $510,000. Its disingenuous for Plaintiffs to allege Thompson is liable as a control person of Paramount when he is in a position similar to Plaintiffs and stands to lose his investment as a result of the nefarious conduct perpetrated by Defendants Lawton, Crossroad, and Paramount. Additionally, certain of Plaintiffs' claims are barred under the statute of limitations and must be dismissed. Thompson's motion to dismiss under Fed. R. Civ. P. 9(b) and 12(b)(6) should be granted.

## BACKGROUND

Thompson brings this Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). The principal document comprising the record for this Motion to Dismiss is Plaintiffs' Second Amended Complaint dated August 19, 2009[2]. But this Court may consider additional materials to the Complaint without converting this motion to one for summary judgment if such materials are consistent with and embraced by Complaint, or part of the public record. See Noble Sys. Corp. v. Alorica Cent. LLC, 543 F.3d 978, 982 (8th Cir. 2008)(court may consider on a motion to dismiss "public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings."); State ex rel Nixon v. Coeur d'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999). Accordingly, Thompson submits the following materials as embraced by Plaintiffs' Complaint and attached to the

---

[2] For the purposes of this motion the factual allegations of the Complaint are accepted as true solely, see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), although Thompson denies and will dispute many of Plaintiffs' allegations in the trial of this matter.

Affidavit of Bryan R. Feldhaus:

- Exhibit 1    Paramount Partners, L.P. Fourth Amended and Restated Limited Partnership Agreement

- Exhibit 2    June 26, 2005 Private Placement Memorandum

- Exhibit 3    May 23, 2007 Private Placement Memorandum

## ISSUES

1. Should the Court dismiss Count I of Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted where a number of Plaintiffs' claims are barred by the applicable statute of limitations pursuant to Fed. R. Civ. P. 12(b)(6), 15 U.S.C. § 77b(a)(1), and 15 U.S.C. § 77m?

2. Should the Court dismiss Count II of Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), 15 U.S.C. § 77b(a)(2), 15 U.S.C. § 78j, 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78u-4(b)(1) and (2), 15 U.S.C. § 77o, 15 U.S.C. § 78t and 28 U.S.C. § 1658(b)?

3. Should the Court dismiss Count III of Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Minn. Stat. §§ 80A.68, 80A.76(b), (g) and (j)?

4. Should the Court dismiss Count IV of Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), Minn. Stat. §§ 325F.68 and 325F. 69, and Minn. Stat. § 8.31?

5. Should the Court dismiss Counts V, VI, VII and VIII of Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)?

6. Should this Court dismiss Plaintiffs' claim for punitive damages pursuant to Fed. R. Civ. P. 12(b)(6) and Minn. Stat. §§ 549.191 and 549.20 for failure to comply with the requirements of those statutes?

4

## ARGUMENT

**I.    STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6).**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint if a party fails to state a claim upon which relief can be granted. Atkinson v. Bohn, 91 F.3d 1127, 1128-1129 (8th Cir. 1996).   To avoid dismissal under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In analyzing a motion to dismiss under Rule 12(b)(6), this Court must accept as true all the factual allegations in the complaint and draw all reasonable inferences from the complaint in plaintiff's favor. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).   But, a complaint, like Plaintiffs, that merely offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is deficient. Iqbal, at 1949, quoting Twombly, at 555, 557.   Nor will a complaint that tenders "naked assertions devoid of further factual enhancement" suffice. Iqbal, at 1949.    A complaint cannot simply "leave open the possibility that a plaintiff might later establish some 'set of disclosed fact' to support recovery." O'Neill v. Simplicity, Inc., 553 F. Supp. 2d 1110, 111 (D. Minn. 2008), quoting Twombly, 550 U.S. at 560.  A complaint must have "enough facts to state a claim to relief that is plausible on its face." Iqbal, at 1949.

5

To state a claim with "facial plausibility," a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949-50. Determining whether a plausible claim has been stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Where a complaint only pleads facts consistent with a theory of liability, the complaint falls short. Id. Additionally, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not 'shown' - that the pleader is entitled to relief." Id.

Here, rather than amend the Complaint with well-pleaded facts, Plaintiffs intone legal conclusions that should be disregarded by this Court on Thompson's motion to dismiss. (See, e.g., Compl. ¶¶ 7, 48 (controlling person liability on Section 12(a)(1) claim); ¶¶ 51,56 (scienter and controlling person liability on Section 10(b) and Rule 10b-5 claims); ¶ 67 (consumer fraud claim); ¶ 74 (unjust enrichment); ¶¶ 77, 78 (financial planner duty); ¶¶ 86, 87 (negligence); ¶¶ 92, 93 (partner fiduciary duty)). For example, the Complaint never alleges how Thompson was a control person of Crossroad and Paramount or whether he actually exercised control over those entities. Nor does the Complaint allege any facts to permit a "strong inference of scienter" as required in Section 10(b) claims. The bulk of Plaintiffs' allegations are predicated solely upon Plaintiffs' conclusions and lack any factual predicate sufficient to avoid dismissal.

6

**II.**   **COUNT I OF PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND FAILS TO STATE A CLAIM FOR RELIEF.**

**A.**   **Count I Is Barred By Statute of Limitations In Section 13 of the 1933 Act.**

To state a prima facie case under Section 12(a)(1), a plaintiff who purchased unregistered securities must prove: (1) a registration statement covering the securities was not in effect; (2) the defendant offered or sold the security to the plaintiff; (3) the mails or facilities of interstate commerce were used in connection with the offer or sale; and (4) the action is timely under the statue of limitations in Section 13. See Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir. 1980); Piper Acceptance Corp. v. Slaughter, 600 F. Supp. 169, 172 (D. Colo. 1985). Many of Plaintiffs' Section 12(a)(1) claims in the Complaint, which allege the offer, sale, and delivery of nonexempt securities in violation of the registration and prospectus requirements of the 1933 Securities Act, are barred under the one-year statute of limitations set forth in Section 13 of the 1933 Act.  Section 13 of the Securities Act, 15 U.S.C. § 77m, provides as follows:

> No action shall be maintained to enforce any liability created under section 11 or 12(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, **or, if the action is to enforce a liability created under section 12(a)(1) of this title, unless brought within one year after the violation upon which it is based.**  In no event shall any such action be brought to enforce a liability created under section 11 or 12(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 12(a)(2) of this title more than three years after the sale.

Section 13 (emphasis added).

7

The relevant inquiry in a Section 12(a)(1) limitations analysis is "which of the defendants' activities – offer, sale, or delivery – occurred last as that is the time from which to measure the limitation period." Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032, 1064 (D. Minn. 2003), quoting Doran v. Petroleum Mgmt. Corp., 576 F.2d 91, 93 (5th Cir. 1978). Here, Plaintiffs premise their Section 12(a)(1) claims on the sale of unregistered securities. (See Complaint ¶¶ 43, 44)("Defendants' offer, transmittal of prospectuses, sales and delivery of the respective limited partnership interests to each of the various Plaintiffs, as alleged herein, violate Section 5 of the Securities Act."). Defendants' last activity – the sale of the securities – occurred on those transaction dates set forth in Plaintiffs' Complaint. Because the Complaint was filed on April 13, 2009, the one-year statute of limitations bars any 12(a)(1) claims arising from the purchase of securities before April 13, 2008. Thus, the Section 12(a)(1) claims from the following transactions are barred:

| Name | Amount of Investment | Date of Investment |
|---|---|---|
| Ellen DeHaven (Peterson) as the beneficial owner and real party in interest of her Individual Retirement Account | $250,000 | 5/1/2007 |
| John Gardiner, an individual | $100,000<br>$100,000<br>$400,000 | 9/18/2006<br>3/1/2007<br>11/6/2007 |
| John Gardiner, as Custodian for Max A. Gardiner | $10,000 | 12/28/2007 |
| John Gardiner, as Custodian for Paige M. Gardiner | $10,000 | 12/28/2007 |
| John Gardiner, as Custodian for Jake W. Gardiner | $10,000 | 12/28/2007 |

| | | |
|---|---|---|
| Stephen R. Gulbrandsen, an individual | $100,000<br>$15,000<br>$25,000 | 9/7/2003<br>10/6/2005<br>10/27/2005 |
| Stephen R. Gulbrandsen, as the beneficial owner and real party in interest of his Profit Sharing Plan | $185,000 | 3/24/2006 |
| Blake Johnson, LLC, a limited liability company | $100,000 | 7/27/2007 |
| R. Thomas Lane, an individual | $150,000 | 10/19/2006 |
| Craig Mandery, an individual | $100,000 | 12/19/2007 |
| Guy M. Peterson, as the beneficial owner and real party in interest of his Individual Retirement Account | $100,000 | 2/1/2008 |
| Jeffrey M. Petrik, as the beneficial owner and real party in interest of his Individual Retirement Account | $100,000 | 3/1/2007 |
| Sally M. Petrik, as the beneficial owner and real party in interest of her Individual Retirement Account | $50,000 | 3/1/2007 |
| Joseph H. Ryan, an individual | $250,000<br>$250,000 | 8/22/2006<br>7/31/2007 |
| Sandra M. Ryan, an individual | $250,000<br>$250,000 | 7/31/2007<br>1/3/2008 |
| Robert Spadafora, an individual | $50,000<br>$50,000<br>$50,000 | 3/1/2007<br>9/1/2007<br>1/15/2008 |

| | | |
|---|---|---|
| Thomas C. Weekly, as the beneficial owner and real party in interest of his Individual Retirement Account | $100,000 $50,000 $12,500 $14,000 $16,000 | 12/26/2002 9/8/2003 7/1/2005 7/12/2007 11/1/2007 |
| Daniel White, as the beneficial owner and real party in interest of his Individual Retirement Account | $100,000 | 3/1/2008 |

(*See* Compl. ¶ 1.) Accordingly, the Section 12(a)(1) claims of these Plaintiffs' must be dismissed under the Section 13 statute of limitations.

### B.   Plaintiffs' Remaining Section 12(a)(1) Claims Fail to State a Claim For Control Person Liability.

Plaintiffs remaining Section 12(a)(1) claims fail to state a plausible claim for control person liability against Thompson and must be dismissed under Twombly and Iqbal.  Under Section 15, a person who controls a party that commits a violation of securities laws may be held jointly and severally liable with the primary violator.  In Counts I and II, Plaintiffs allege Thompson is liable as a person who violated federal securities laws or as a "controlling person" of such persons within the meaning of Section 15 of the Securities Act, 15 U.S.C. § 77o, or Section 20 of the Exchange Act, 15 U.S.C. § 78t.  (Compl. ¶¶ 7 and 48.)[3]

_____

[3] Plaintiffs reassert a controlling person theory in Count II of their Complaint. Although Section 15 of the 1934 Act is not identical to Section 20 of the 1933 Act, the controlling person analysis is the same.  Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1578 (9th Cir. 1990), cert. denied 499 U.S. 976 (1991).  Plaintiffs' controlling person theory under Count II should similarly be dismissed.

To establish control person liability, Plaintiffs must establish that:

(I)     the alleged control person actually exercised control over the general operations of the primary violator; and

(ii)    the alleged control person possessed-but did not necessarily exercise-the power to determine the specific acts or omissions upon which the underlying violation is predicated.

Farley v. Henson, 11 F.3d 827, 835 (8th Cir.1993).

The only facts asserted by Plaintiffs in support of their control person claim against Thompson is that he conversed with Lawton and allegedly monitored the hedge fund trading activities.  (Compl. ¶¶ 7, 48.)  This is nothing more than a threadbare recital of the control person elements and is deficient under Twombly and Iqbal.   See Iqbal, at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" on a motion to dismiss); (Compl. ¶ 7.)  Dismissal of Plaintiffs' control person claim against Thompson is proper given Plaintiffs have not pled any facts from which it can be inferred Thompson was a control person of the primary violators - Lawton, Crossroads, and Paramount. See Saunders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 485-86 (6th Cir. 1992)(failure to state claim absent allegation of actual participation in operation of corporation); Vacanti v. Sunset Financial Services, Inc., 2009 WL 792387, *5 (D. Neb. 2009)(Controlling person claim dismissed when Plaintiff failed to allege facts to support conclusory statements.)

Furthermore, the allegations against Thompson - that he conversed with Lawton and allegedly monitored the hedge fund trading activities - fall well short of "control" as defined

by the SEC.  See 17 C.F.R. § 230.405 (Control is "the possession, direct or indirect, of the

power to direct or cause the direction of the management and policies of a person, whether

through the ownership of voting securities by contract or otherwise".)  The Complaint does

not allege that Thompson ever actually exercised control over the operations of Paramount

or Crossroad or the activities of Lawton in a manner commensurate with the SEC definition.

Nor does it allege that Thompson ever instructed, managed, or directed Lawton regarding

investments or trades or that Thompson ever made trades, provided advice, or directed

investment strategies for Crossroad or Paramount sufficient to constitute "control".

Nor could Plaintiffs have pled such factual content.  Thompson is a limited partner

in Paramount, which is a Delaware limited partnership.  Under Delaware Code § 17-303, a

limited partner is denied any duty to control or manage the affairs of the partnership as a

matter of law.  See Del. Code Ann. § 17-303.  Similarly, Paramount's Fourth Amended and

Restated Limited Partnership Agreement, which is the operative agreement with respect to

Thompson's rights and obligations as a limited partner of Paramount, mandates that limited

partners shall not control the management or affairs of the Partnership:

> **9.1**   **Management.**  Except as otherwise set forth in this Agreement, the General Partner shall have the sole and exclusive right to manage, control, and conduct the affairs of the Partnership and to do any and all acts on behalf of the Partnership . . . .

> **9.2**   **No Control by the Limited Partners**.  No Limited Partner shall take part in the control or management of the affairs of the Partnership nor shall any Limited Partner have any authority to act for or on behalf of the Partnership except as is specifically permitted by this Agreement.

(See Limited Partnership Agreement ¶ 9.2.)  Thompson could not have participated in the

control or management of the Paramount partnership as a matter of law and contract.[4]

Nor are there any facts alleged that render plausible the claim that Thompson was a control person. See Twombly, at 555, citing 5 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. 3d § 1216 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable cause of action")   This is especially true when Thompson himself has approximately $510,000 at risk in his investments with the Paramount Fund.  Absent any factual predicate for control person liability, and disregarding Plaintiffs' speculation and suspicion, Plaintiffs' control person liability claim against Thompson is deficient under Twombly and Iqbal and must be dismissed.[5]

### C. Plaintiffs' Section 12(a)(1) and 12(a)(2) Claims Against Thompson Must be Dismissed Because Plaintiffs Have Failed to Allege Thompson Was Involved in the Immediate Sale.

Certain of Plaintiffs' Section 12(a)(1) and 12(a)(2) claims must also be dismissed as to Thompson because he was not involved in the sale of securities as alleged in the

---

[4] The Private Placement Memorandum states that "[n]o person other than the General Partner has been authorized to make representations, or give any information, with respect to the Interests, except the information contained herein, and any information or representation not contained herein or otherwise supplied by the General Partner must not be relied upon as having been authorized by the Fund or any of its partners." (May 23, 2007 PPM at 2)(see id at 13("Management of the Fund")).

[5] In light of the anticipated dismissal of the primary violations of Section 12(a)(1) and 12(a)(2) claims in this action, Plaintiffs' controlling person liability claims under Section 15 must be dismissed.  See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550, n.12 (8th Cir.1997).

Complaint. Section 12 allows a purchaser of a security to bring a private action against a seller that "offers or sells a security" in violation of section 5 or by means of a prospectus or oral communication that includes an untrue statement of a material fact or omits to state a material fact. Section 12(a)(1) and 12(a)(2). The Supreme Court has stated Section 12(a)(1) liability only extends to "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner." Pinter v. Dahl, 486 U.S. 622, 647 (1988). A complaint is subject to dismissal unless it contains an allegation of direct and active participation by the defendant in the solicitation of the immediate sale. See Maher v. Durango Metals, Inc., 144 F.3d 1302, 1307 (10th Cir. 1998); In re Westinghouse Sec. Litig., 90 F.3d 696, 717, n.19 (3rd Cir. 1996).

Although the Complaint asserts Thompson was involved in soliciting investments, no such allegations exist with respect to Plaintiffs DeHaven, Gulbrandsen, Elizabeth Lane, and Weekly. (See Compl. ¶¶ 27(b), (f), (m), and (v)). The Complaint does not allege Thompson was directly and immediately involved in the sale of securities to these Plaintiffs. Accordingly, the Section 12(a)(1) and 12(a)(2) claims of Plaintiffs DeHaven, Gulbrandsen, Elizabeth Lane and Weekly against Thompson must be dismissed.

## III. COUNT II OF PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS, FAILS TO PLEAD FRAUD WITH THE REQUISITE PARTICULARITY AND FAILS TO STATE A CLAIM.

Count II of the Complaint, which alleges defendants made misrepresentations and omissions to Plaintiffs in violation of Section (12)(a)(2) of the Securities Act (15 U.S.C. § 77l(1)), Section 10(b) of the Exchange Act (15 U.S.C. § 78j) and Rule 10b-5 (17 C.F.R. §

14

240.10b-5), is barred by the statute of limitations, is not pled with the specificity required

under the Private Securities Litigation Reform Act ("Reform Act") and Fed. R. Civ. P. 9(b),

and should be dismissed as to Thompson under Rule 12(b)(6).

### A. Plaintiffs' Claim Under Section 12(a)(2) of the 1933 Act is Barred By the Three-Year Statute of Repose in Section 13.

Plaintiffs' claims under Sections 12(a)(2) of the Securities Act, 15 U.S.C. §

77 $l$(a)(2) are time-barred.  Section 12(a)(2) allows a purchaser of a security to bring a private

action against a seller that "offers or sells a security . . . by means of a prospectus or oral

communication, which includes an untrue statement of a material fact or omits to state a

material fact necessary in order to make the statements, in light of the circumstances under

which they where made not misleading . . . ."  Section 12(a)(2).  Claims under Section

12(a)(2) are subject to the limitations period set forth in Section 13, 15 U.S.C. § 77m:

> No action shall be maintained to enforce any liability created under section 11
> or 12(a)(2) of this title unless brought within one year after the discovery of
> the untrue statement or the omission, . . . . In no event shall any such action be
> brought to enforce a liability created under section 11 or 12(a)(1) of this title
> more than three years after the security was bona fide offered to the public, or
> under section 12(a)(2) of this title more than three years after the sale.

Section 13, 15 U.S.C. § 77m. Plaintiffs' claims arising from the following transactions are

barred by Section 13, as they were not commenced within three years from the sale:

| Name | Amount of Investment | Date of Investment |
|---|---|---|
| Stephen R. Gulbrandsen, an individual | $100,000<br>$15,000<br>$25,000 | 9/7/2003<br>10/6/2005<br>10/27/2005 |
| Stephen R. Gulbrandsen Profit Sharing Plan | $185,000 | 3/21/2006 |

| Thomas C. Weekly Individual Retirement Account | $100,000 $50,000 $12,500 | 12/26/2002 9/8/2003 7/1/2005 |
|---|---|---|

(Compl. ¶ 1.)[6]

### B. Plaintiffs' Claims Under Section 10b of the 1934 Act and Rule 10b-5 Must Be Dismissed for Lack of Particularity.

Plaintiffs fail to properly plead their Section 10b and Rule 10b-5 claims against Thompson, which are brought pursuant to Section 10 of the 1934 Exchange Act, 15 U.S.C. § 78j and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and must be dismissed for lack of particularity. (See Am. Compl. ¶¶ 50-57.) Section 10(b) of the Exchange Act makes it unlawful for any person, "directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe . . . ." 15 U.S.C. § 78j(b). Similarly, Rule 10b-5 states that it shall be lawful for anyone, directly or indirectly,

> (a) To employ any device, scheme or artifice to defraud;
>
> (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

---

[6] The Section 12(a)(2) claims of Plaintiffs DeHaven, Gulbrandsen, Elizabeth Lane and Weekly against Thompson must be dismissed as set forth in Section II.C above.

Claims under Section 10(b) and Rule 10b-5 require "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." <u>Dura Pharm, Inc. v. Broudo</u>, 544 U.S. 336, 341-43 (2005); <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 128 S. Ct. 761, 768 (2008).   These allegations must comply with the heightened pleading requirements under the Private Securities Litigation Reform Act ("Reform Act"), which mandates that in any private action where the defendant is alleged to have made a misrepresentation or mission, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1). Plaintiffs fail to plead the essential elements of their Section 10(b) and Rule 10b-5 claims with particularity thus mandating a dismissal of those claims.

### 1.   Plaintiffs fail to plead scienter with particularity.

A Section 10b or Rule 10b-5 claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. 78u-4(b)(2); <u>Fla. State Bd. of Admin</u>, 270 F.3d at 654 (8th Cir. 2001).  The substantive standard is "scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 313 (2007). To determine whether Plaintiffs have alleged facts that give rise to the requisite "strong inference of scienter" this Court must

weigh "plausible nonculpable explanations for the defendants conduct" against inferences favoring the Plaintiffs' allegations. Horizon Asset Mgmt, Inc. v. H & R Block, Inc., 2009 WL 2870505 (8th Cir. 2009), quoting Tellabs, at 323-24.

Although the inference of scienter need not be the "most plausible of competing inferences", it "must be more than merely reasonable or plausible - it must be cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324; In re Ceridian Sec. Litig.,542 F.3d 240, 244 (8th Cir. 2008). While this Court is to assess Plaintiffs' factual allegations "holistically", rather than in isolation, Plaintiffs must nevertheless raise a strong inference of scienter for each defendant and with respect to each alleged misrepresentation." Horizon, at *3, quoting Tellabs, at 326. The Reform Act "requires the court to dismiss the complaint if these requirements are not met." Kushner v. Beverly Enters., Inc., 317 F.3d 820, 826 (8th Cir. 2003), citing 15 U.S.C. § 78u-4(b).

There are three methods to establish scienter: first, it may be established from facts demonstrating a "mental state embracing intent to deceive, manipulate or defraud"; second, while allegations of negligence are insufficient, conduct that rises to the level of severe recklessness may be sufficient to meet the scienter requirement; and finally, a party may allege opportunity and "an unusual and heightened motive." Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032 (D. Minn. 2003).

Here, Plaintiffs have failed to plead scienter with particularity under any of these methods. Plaintiffs have not pled that Thompson had a "mental state embracing intent to deceive, manipulate, or defraud." Nor have Plaintiffs pled that Thompson had an "unusual

and heightened motive" sufficient to constitute scienter for their Section 10b and Rule 10b-5 claims. Even if Plaintiffs intended to pled scienter under these theories, they have not been pled with the particularity sufficient to survive a motion to dismiss.

The only scienter allegations arguably pled against Thompson is that he acted unreasonably in soliciting Plaintiffs' purchase of securities (See Compl. ¶ 51 ("Solution Group Defendants had, at all times relevant herein, actual knowledge that Defendants Lawton, Crossroad and Paramount were not obtaining, or disseminating accountant certified financial statements for Paramount," and that the "statements, representations, and material omissions by the Solution Group Defendants, and each of them, were, and are, highly unreasonable, and involve extreme departure from any acceptable standard of ordinary care . . .") and that he was aware the facts set forth in Paragraph 29 of the Complaint. (See Compl. ¶ 29(a)("The Anderson Lawsuit was a matter of public record as of January 10, 2007 and was certainly known to, or the information contained therein available to, all of the Solutions Group Defendants); ¶ 29(b)("each of the Solutions Group Defendants had to have actual knowledge . . ."). But these allegations do not constitute severe recklessness, are not plead with the requisite particularity, and fail to create a strong inference of scienter. To demonstrate severe recklessness, a plaintiff must allege "highly unreasonable omissions or misrepresentations amounting to an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Horizon Asset Mgmt, Inc, 2009 WL at 9, quoting Kushner, 317 F.3d at 828.

19

Plaintiffs fail to allege any basis to plausibly conclude Thompson's conduct reached this level of severe recklessness. At best, Plaintiffs have pled Thompson was negligent with respect to the investment forecasts. The Complaint lacks any facts Thompson knew or should have known about Lawton's, Crossroad's and Paramount's fraudulent investment scheme, conduct or that the investment documents were false or misleading. Nor does the Complaint provide any inference, let alone a strong inference, that Thompson acted with an intent to manipulate Plaintiffs' purchase of securities. In the event that any such inference existed, it is fatally weakened given the fact Thompson was an investor in Paramount, was swindled by Lawton, and is at risk to lose approximately $510,000 in investments with Paramount. Having failed to plead scienter with the requisite particularity, Plaintiffs Section 10b and Rule 10b-5 claims must be dismissed.

### 2.      Plaintiffs fail to plead misrepresentation with particularity.

A Section 10b and Rule 10b-5(b) claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1). This requires detail about the "who, what, when, where and how" of the allegedly false statement. Cornelia I. Crowell GST Trust v. Possis. Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008); In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 890 (8th Cir. 2002)(Alleged fraud must be particularly stated to include"who, what, when, where, and how.") Mere allegations of fraud do not satisfy the Act's pleading requirements. In re Hutchinson Tech., Inc. Sec. Litig., 536 F.3d 952, 958 (8th Cir. 2008).

The Complaint must also "indicate why the alleged misstatements would have been false or misleading at the several points in time in which it is alleged they were made." In re Cerner Corp. Sec. Litig., 425 F.3d 1079, 1083 (8th Cir. 2005). Simply asserting "defendants made statements 'and then showing in hindsight that [they were] false'" does not satisfy the Reform Act. Elam v. Neidorff, 544 F.3d 921, 927 (8th Cir. 2008).

Here, Plaintiffs' Section 10(b) claims against Thompson fall well short of the stringent PSLRA heightened pleading requirement. Plaintiffs do not identify "with particularity" the requisite "who, what, where, when and how" with respect to the allegedly false representations made by Thompson. Instead, the Complaint offers generic representations about the management and risk level of the fund allegedly made by Thompson, such as the fund was "safe", "well-managed" and "lower risk than most hedge funds." (See Compl. ¶¶ 27(a) and (c)). Plaintiffs have not pled how or why these representations attributed to Thompson were false or fraudulent at the time made. The misrepresentations allegedly attributed to Thompson amount to nothing more than allegations his representations were false in hindsight. This is insufficient under the PSLRA.

Further, the bulk of misrepresentations alleged by Plaintiffs, and the representations upon which Plaintiffs relied, are those set forth in Paramount's PPMs, Limited Partnership Agreement or Performance Histories. Thompson cannot be held liable for Paramount's misrepresentations. Section 10(b) only imposes liability on a person who makes "a material misstatement or omissions, not on a person who aids in making the misstatement or omission." McAdams v. McCord, 2009 WL 3350036 (8th Cir. 2009), citing Central Bank of

21

Denver v. First Interstate Bank of Denver, 511 U.S. 164, 177-78 (1994). The representations made by Paramount are not attributable to Thompson. Additionally, the PPM expressly prohibits Thompson from making any representations regarding the Fund:

> No person other than the General Partner has been authorized to make representations, or give any information, with respect to the Interests, except the information contained herein, and any information or representation not contained herein or otherwise supplied by the General Partner must not be relied upon has having been authorized by the Fund or any of its partners.

(PPM at 2.) Thompson, therefore, cannot be held liable for Paramount's statements. Only Paramount can be held liable for the statements made within its materials.

### 3.   Plaintiffs fail to plead loss causation.

Plaintiffs Section 10(b) and Rule 10b-5 claims against Thompson must be dismissed because Plaintiffs have failed to plead loss causation with the requisite specificity. A plaintiff must show the defendant's tortious conduct caused the plaintiff's losses to prevail in a tort action. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008), citing Prosser & Keeton on Torts § 41 (5th ed. 1984). This requires plaintiffs to establish a causal connection between defendant's wrongful conduct and the plaintiff's losses. Id. at 549, citing Dura, 544 U.S. at 347. Causality in a securities case is determined by "transaction causation" and "loss causation". Schaaf, at 549. Transaction causation is shown by establishing that defendant's fraud induced plaintiff to purchase the security. Id., citing Harris v. Union Elec. Co., 787 F.2d 355, 367 (8th Cir. 1986). Loss causation corresponds to the common law requirement of proximate cause and requires a plaintiff to prove "a causal connection between the material misrepresentations and the loss." Schaaf, 517 F.3d at 549-

22

50, quoting Dura, 544 U.S. at 342.

Plaintiffs have failed to plead loss causation in the Complaint. Nowhere in the Complaint do Plaintiffs assert the alleged misrepresentations by Thompson resulted in the loss of their investments. In fact, Plaintiffs allege the opposite - that it was the fraudulent conduct of Lawton, Crossroad, and Paramount that resulted in the loss of investments. (See Compl. ¶¶ 34-39)("Defendants Lawton, Paramount and Crossroad, willfully and intentionally misappropriated the monies paid by the respective Plaintiffs herein to purchase their respective limited partner interests in Paramount, by diverting those monies to themselves or using those monies for purposes other than the stated 'Use of Proceeds' in their Private Placement Memorandum and in the Third and Fourth Amended and Restated Limited Partnership Agreements.") Plaintiffs simply attempt to bootstrap Thompson into this case because of his association with Lawton, Crossroad and Paramount.

Nor can Plaintiffs set forth a plausible claim for loss causation when Thompson's pre-sale representations had no relationship, let alone a causal connection, with Plaintiffs' investment losses. Based on Plaintiffs' own pleading, Thompson was only involved in the offering and sale of the investments in the Paramount Fund, which may arguably mount to transaction causation. (See Compl. ¶ 27.) But Thompson had no involvement in any post-investment activity or investment management, which, combined with the alleged conduct of Lawton, Crossroad, and Paramount, served as the catalyst for Plaintiffs' losses and is the loss causation in this case. Plaintiffs have not and cannot set forth a plausible claim for loss causation thus mandating a dismissal of their Section 10(b) and Rule 10b-5 claims.

23

**C.** **Plaintiffs' Section 10(b) and Rule 10b-5 Claims are Time-Barred.**

Finally, certain of Plaintiffs' Section 10b and Rule 10b-5 claims are barred by the statute of limitations governing such private securities claims set forth in 28 U.S.C. § 1658. Section 1658 provides:

(b)     Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)), may be brought not later than the earlier of –

(1)     2 years after the discovery of the facts constituting the violation; or

(2)     5 years after such violation

28 U.S.C. § 1658(b).  The alleged violations underlying Plaintiffs' Section 10(b) and Rule 10b-5 claims were false representations and omissions made by defendants with the intent to induce Plaintiffs to purchase interests in Paramount.  These representations must have occurred before the purchase of the securities.  (See Compl. ¶ 52.)  Since this Complaint was filed on April 13, 2009, the Section 10(b) and Rule 10b-5 claims of Plaintiffs that purchased securities prior to April 13, 2004 are barred under Section 1658(b) and must be dismissed:

| Name | Amount of Investment | Date of Investment |
|---|---|---|
| Stephen R. Gulbrandsen, an individual | $100,000 | 9/7/2003 |
| Thomas C. Weekley Individual Retirement Account | $100,000 $50,000 | 12/26/2002 9/8/2003 |

(Compl. ¶ 1.)

24

IV.   **COUNT III OF PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS, FAILS TO PLEAD FRAUD WITH THE REQUISITE PARTICULARITY AND FAILS TO STATE A CLAIM.**

Count III in Plaintiffs' Complaint, which alleges Defendants violated Minn. Stat. § 80A.01[7] in their offer and sale of securities, must be dismissed as untimely under Minn. Stat. § 80A.76(j).  Section 80A.76(j) bars securities fraud claims unless the action is commenced within one-year after the violation:

A person may not obtain relief:

> (1)   under subsection (b), for a violation of section 80A.49, or under subsection (d) or (e), unless the action is instituted within one year after the violation occurred; or

> (2)   under subsection (b), for a violation of section 80A.49, or under subsection (c) or (f), unless the action is instituted within the earlier of two years after discovery of the fact constituting the violation or five years after the violation.

Minn. Stat. § 80A.76(j).  Plaintiffs allege defendants made representations and omissions with the intent to induce Plaintiffs to purchase interests in Paramount.  (See Compl. ¶¶ 59-63.)  To constitute a fraudulent sale, such representations must have occurred before the purchase of the securities. The claims of Plaintiffs that purchased securities prior to April 13, 2004 are therefore barred under Section 80A.76(j):

---

[7]  Minn. Stat. § 80A.01 was repealed by Laws 2006, Chapter 196, which in part repealed §§ 80A.01 to 80A.19, and also enacted §§ 80A.40 to 80A.90, the Uniform Securities Act (2002), relating to the same subject matter.  Minn. Stat. § 80A.01 was replaced by Minn. Stat. § 80A.68.

| Name | Amount of Investment | Date of Investment |
|------|---------------------|--------------------|
| Stephen R. Gulbrandsen, an individual | $100,000 | 9/7/2003 |
| Thomas C. Weekly Individual Retirement Account | $100,000<br>$50,000 | 12/26/2002<br>9/8/2003 |

Additionally, and because the substantive elements of Section 10(b), Rule 10b-5 and Minn. Stat. § 80A.01 are the same, Plaintiffs' claims are substantively barred for the reasons set forth in the Section I(B) above. Erickson v. Horing, 2001 WL 1640142, *7 (D. Minn. 2001). This includes Plaintiffs' allegation that Thompson is liable as a control person or seller under Minn. Stat. § 80A.76(g). (Compl. ¶ 63.) The Minnesota Supreme Court adopted the control person test set forth in Metge v. Baehler, 762 N.W.2d 621, 624 (8th Cir. 1985) to determine control person liability under the Minnesota Securities Act. Semrad v. Edina Realty, Inc., 493 N.W.2d 528 (Minn. 1992). The same should apply for control person liability under the amended and renumbered Minn. Stat. § 80A.76(g). Accordingly, Plaintiffs' Minnesota Securities Act claims against Thompson must be dismissed for failure to state a claim and failure to plead fraud with the particularity required under Minn. R. Civ. P. 9.02.

## V.   COUNT IV OF PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED.

Plaintiffs assert defendants violated Minn. Stat. § 325F.69, and that they are entitled to recover damages and costs, disbursements and attorneys' fees under Minn. Stat. § 8.31. The Minnesota Prevention of Consumer Fraud Act provides:

> the act, use, or employment by any person of any fraud, false pretense, false
> promise, misrepresentation, misleading statement or deceptive practice, with
> the intent that others rely thereon in connection with the sale of any
> merchandise, whether or not any person has in fact been misled, deceived, or
> damaged thereby, is enjoinable.

Minn. Stat. § 325F.69, subd. 1. Although Minnesota's Consumer Fraud Act does not confer

a private cause of action to individual consumers, in limited circumstances not available here,

consumers may proceed with a private action under Minn. Stat. § 8.31.

Minn. Stat. § 8.31, subd. 3(a), states that "any person injured by a violation of [the

Consumer Fraud Act] may bring a civil action and recover damages, together with costs and

disbursements, including costs of investigation and reasonable attorneys' fees, and receive

other equitable relief as determined by the court." See also Church of the Nativity of Our

Lord v. Watpro, Inc., 491 N.W.2d 1 (Minn. 1992).   The Minnesota Supreme Court has

limited recovery under Section 8.31 to causes of action that benefit the public.   Ly v.

Nystrom, 615 N.W.2d 302, 314 (Minn. 2000):

> [W]e hold that the Private AG Statute applies only to those claimants who
> demonstrate that their cause of action benefits the public.  We believe that this
> conclusion is consistent with the history and purpose of the office of the
> attorney general to prosecute misrepresentations involving only matters of
> public interest. Appellant was defrauded in a single one-on-one transaction in
> which the fraudulent misrepresentation, while evincing reprehensible conduct,
> was made only to appellant. A successful prosecution of his fraud claim does
> not advance state interests and enforcement has no public benefit, and is not
> a claim that could be considered to be within the duties and responsibilities of
> the attorney general to investigate and enjoin.

Because the purpose of Section 8.31 is the protection of public rights and the preservation

of state interests, for Plaintiffs to state a claim under Section 8.31, the public interest must

be demonstrated in their case. Ly, 615 N.W.2d at 313.

Plaintiffs' claims render no public benefit, but solely seek compensatory damages. (Compl. ¶ 71.)   As in Ly v. Nystrom, Plaintiffs' claims concern single, one-on-one transactions in which allegedly fraudulent representations were made and seek to recover investments lost as a result of those individualized sales.  Plaintiffs do not seek to enjoin a public wrong that will render a public benefit.  Nor does the remedy sought by Plaintiffs advance any state interests for which Section 8.31 should apply.  The redress sought by Plaintiffs is personal and includes their "damages, together with costs and disbursements, including reasonable attorney's fees, incurred due to Defendants' aforesaid violations, pursuant to Minn. Stat. § 8.31." (Compl. ¶ 71.)  On these grounds, Plaintiffs' claims under the Minnesota Fraud Act is properly dismissed.  See Evangelical Lutheran Church in America Bd. of Pensions v. Spherion Pacific Workforce, 2005 WL 1041487, D. Minn. 2005); Pecarina v. Tokai Corp., 2002 WL 1023153 (D. Minn. 2002).

Further, the basis of Plaintiffs' claims arise from a Private Placement Memorandum with was private, confidential, and targeted to specific potential investors.  No public offering or similar public element was involved in the investments offered by Defendants or accepted by Plaintiffs.  There is no public benefit.  Moreover, as Plaintiffs acknowledge in Paragraph 38 of the Complaint, the SEC asset freeze and TRO have had the effect of "terminating [Lawton's Crossroad's and Paramount's] stock market hedge trading activities." (Compl. ¶ 38.) There will be no further public detriment to the public on account of Paramount's actions. Plaintiffs' case is not appropriate for recovery under Minn. Stat. § 8.31,

28

and Plaintiffs' Consumer Fraud Act should be dismissed as to Thompson because it is outside the scope of Minn. Stat. §§ 325F.69 and 8.31.

## VI.   COUNT V OF PLAINTIFFS' FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AND SHOULD BE DISMISSED.

Plaintiffs fail to make a prima facie showing of unjust enrichment as to Thompson, which requires a dismissal of that claim.  To establish a claim for unjust enrichment, Plaintiffs are required to show the following elements: (1) a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit where it would be inequitable to retain it without paying for it.  Acton Constr. Co. v. State, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986), pet. for review denied, (Minn. 1986).  But, a claim for unjust enrichment does not lie simply because one party benefits from the actions of another; rather Plaintiff must allege "that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981); Servicemaster of St. Cloud v. GAB Bus. Servs. Inc., 544 N.W.2d 302, 306 (Minn. 1996). A party is not unjustly enriched simply when he receives a value to which he is entitled under a  that he is entitled to under a contract or otherwise.  Schaaf, 517 F.3d at 554; see also Ringier America, Inc. v. Land O'Lakes, Inc., 106 F.3d 825, 829 (8th Cir. 1997).

Plaintiffs assert Thompson has been unjustly enriched through his alleged "fraud, false pretenses, false promises, misrepresentations, misleading statements or deceptive practices." (Compl. ¶ 73.)  Plaintiffs fail, however, to allege what extracontractual benefits were

29

conferred by Plaintiffs upon Thompson, thus meriting a dismissal of Plaintiffs' unjust enrichment count. As Plaintiffs alleges, the rights of the parties are governed by the Fourth Amended and Restated Limited Partnership Agreement and the Private Placement Memorandum. Since Plaintiffs' relationship with Thompson is purely contractual, Plaintiffs cannot state a claim for unjust enrichment as a matter of law.

Additionally, unjust enrichment is an equitable claim, which only arises when a party gains a benefit "illegally or unlawfully." See U.S. Fire Ins. Co. v. Minnesota State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981)(Under Minnesota law, the equitable relief of unjust enrichment will not lie where one has a legal remedy or the rights of the parties are governed by a valid contract). Plaintiffs have not asserted that if Thompson prevails he would gain a benefit "illegally or unlawfully" outside the structure of his contractual relationship set forth in the Limited Partnership Agreement or PPMs. Accordingly, Plaintiffs' unjust enrichment claim against Thompson must be dismissed.

## VII.  PLAINTIFFS' CLAIMS FOR BREACH OF FIDUCIARY DUTY IN COUNTS VI AND VIII FAIL TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED.

Plaintiffs' breach of fiduciary duty claims in Counts VI and VIII fail to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In Count VI, Plaintiffs assert defendants held themselves out as "Financial Planners" on "advertisements" within the meaning of Minn. Stat. § 45.026, subd. 1, and therefore owed fiduciary duties to Plaintiffs in connection with financial planning services. A "Financial Planner" is statutorily defined as a person who indicates that he or she is a

"financial planner," "financial counselor," "financial adviser," "investment counselor," "investment adviser," "financial consultant," or other similar designation or title. Minn. Stat. § 45.026, subd. 1(b). Plaintiffs, however, offer no factual basis supporting their conclusion that Thompson held himself out as "Financial Planners" and instead rely on the same conclusory statements the render other claims in the Complaint deficient under Twombly and Iqbal. Plaintiffs' breach of financial planner fiduciary duty claim must be dismissed.

Similarly, in Count VIII, Plaintiffs allege defendants owed Plaintiffs fiduciary duties by virtue of the fact that they were either the General Partner of Paramount or controlled the General Partner of Paramount. (Compl. ¶ 92.) But Plaintiffs' Complaint lacks any factual content to conclude Thompson was, in fact, a controlling person of Paramount or controlled Paramount's General Partner sufficient to impose fiduciary duties upon him. (See id.)

Moreover, to the extent Plaintiffs - investors in the Paramount limited partnerships - are suing Thompson as a co-partner or person alleged to have controlled the partnership or general partner, Plaintiffs, as limited partners, lack standing to assert such claims individually. See Spiegel v. Besikof, 1995 WL 697559, *2 (Minn. Ct. App. 1995)("To determine whether limited partners have standing to bring an action directly or whether they must bring it derivatively, the court must analyze the alleged injury to see if it is an individualized harm, separate and distinct from the harm to the limited partnership."), citing Buckley v. Control Data Corp., 923 F.2d 96, 97-98 (8th Cir. 1991). The injuries alleged by Plaintiffs arose from Paramount and Lawton's malfeasance. This was not a separate and distinct injury to each partner, but was sustained by the partnership as a whole. Count VIII

must be dismissed.  It is deficient and Plaintiffs lack standing to assert the claim.

## VII.   COUNT VII OF PLAINTIFFS' FAILS TO STATE A CLAIM FOR NEGLIGENCE AND SHOULD BE DISMISSED.

Plaintiffs' Complaint falls far short in setting forth a plausible claim for negligence under Twombly and Iqbal.  In their Complaint, Plaintiffs blankly conclude Thompson breached his duty to use reasonable care in providing investment advice and monitoring functions to Plaintiffs and that, as a direct and proximate result of that breach, Plaintiffs have been damaged.  But this is nothing more than a recitation of the elements for negligence under Minnesota law, which is deficient under Twombly and Iqbal.  Plaintiffs fail to set forth any factual content that renders their claim plausible to entitle them to relief.  For example, how did alleged pre-sale representations made by Thompson proximately cause Plaintiffs' investment losses arising from the post-sale investment management by Crossroad, Paramount and Lawton?  How did Thompson's representations violate the standard of care when Thompson himself is at risk to lose his investment in the Paramount Fund?

There are no facts alleged that give Plaintiffs' negligence claim any "facial plausibility." At a minimum if a Plaintiffs choose to allege that Thompson was negligent, Plaintiffs should identify how Thompson's pre-sale representations proximately affected the post-sale investment management and how Thompson's alleged representations breached the applicable standard of care.

Further, and as set forth above in Section III.B.3 above, Plaintiffs cannot establish loss causation, which is the equivalent of proximate causation.  See Schaaf, 517 F.3d at 549-50, quoting Dura, 544 U.S. at 342. Plaintiffs do not assert that the alleged misrepresentations by Thompson resulted in the loss of their investments, but allege that it was the fraudulent conduct of Lawton, Crossroad, and Paramount that resulted in the loss of investments. (See Compl. ¶¶ 34-39)  Plaintiffs' failure sufficiently plead proximate cause is fatal to their negligence count and mandates dismissal of that claim under Twombly and Iqbal.

## IX. PLAINTIFFS HAVE IMPROPERLY PLEAD A CLAIM FOR PUNITIVE DAMAGES UNDER MINN. STAT. § 549.191.

Plaintiff pleads for an award of punitive damages against Defendant Thompson. There are two deficiencies in this plea.  First, the Complaint contains no factual allegations or other conclusory allegation necessary to state a claim under Minn. Stat. § 549.20.  Second, Plaintiffs may not place a claim for punitive damages in the original complaint, but must make a motion to amend its pleadings to include a punitive damages claim to prevent frivolous claims by allowing the court to first determine whether punitive damages are appropriate. Minn. Stat. § 549.191;  Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244 (8th Cir. 1994), cert. denied 513 U.S. 1198.  That motion must set forth a prima facie case for punitive damages, which has not been pled in the Complaint.

## CONCLUSION

Defendant Charles T. Thompson respectfully requests this Court grant his Motion and dismiss the above-identified counts alleged against him in Plaintiffs' Second Amended Complaint with prejudice.

LOMMEN, ABDO, COLE, KING & STAGEBERG, P.A.

Dated: October 23, 2009          BY   s/Bryan R. Feldhaus
                                      Phillip A. Cole, I.D. No. 17802
                                      Bryan R. Feldhaus, I.D. No. 386677
                                      Attorneys for Defendant Charles T. Thompson
                                      2000 IDS Center
                                      80 South 8th Street
                                      Minneapolis, MN 55402
                                      (612) 339-8131
                                      FAX: (612) 339-8064