UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

_____

Steven B. Cummings, et al.,

                  Plaintiffs,

vs.

Paramount Partners, LP; Crossroad Capital
Management, LLC; John W. Lawton;
Capital Solutions Management, LP; Capital
Solutions Distributors, LLC; Charles T.
Thompson; Timothy R. Redpath; and
Michael W. Bozora,

                  Defendants.
_____

File No.: 09-cv-00847-RHK/JJK

**MEMORANDUM IN SUPPORT OF DEFENDANTS CAPITAL SOLUTIONS MANAGEMENT, LP, CAPITAL SOLUTIONS DISTRIBUTORS, LLC, TIMOTHY R. REDPATH AND MICHAEL W. BOZORA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

THE COMPLAINT ................................................................................................... 6

ARGUMENT............................................................................................................. 7

I.      STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6).................... 7

II.     PLAINTIFFS' CLAIMS IN COUNT I BASED ON ALLEGED VIOLATION
        OF ..SECTION 12(a)(1) OF THE SECURITIES ACT SHOULD BE DISMISSED
        AS UNTIMELY AND FOR FAILURE TO STATE A CLAIM ............................ 8

        A.      Certain Plaintiffs' Section 12(a)(1) Claims Are Time-Barred .................... 9

        B.      Most Plaintiffs' Section 12(a)(1) and Section 12(a)(2) Claims Against
                CSM, Redpath and Bozora Must Be Dismissed Because Plaintiffs
                Have Failed to Allege That These Defendants Were Statutory Sellers
                of the Securities ........................................................................................ 11

III.    PLAINTIFFS' CLAIMS IN COUNT II FOR ALLEGED VIOLATION OF
        SECTION 12(a)(2) OF THE SECURITIES ACT AND SECTION 10(b) OF
        THE EXCHANGE ACT MUST BE DISMISSED FOR FAILURE TO STATE
        A CLAIM OR AS UNTIMELY .......................................................................... 14

        A.      Certain Plaintiffs' Section 12(a)(2) Claims Are Untimely ........................ 14

        B.      Plaintiffs Have Failed to State a Claim Against CSM, CSD, Redpath
                and Bozora Under Section 10(b) ................................................................ 15

        C.      Plaintiffs Have Failed Adequately to Plead Controlling Person Liability
                On the Part of CSM, CSD, Redpath and Bozora ....................................... 20

        D.      Plaintiffs Have Failed to Plead Scienter .................................................... 23

        E.      Plaintiffs Have Failed to Plead Loss Causation as to these Defendants ..... 24

        F.      Some of the Section 10(b) Claims of Plaintiffs Gulbrandsen and
                Weekly Are Time Barred ........................................................................... 26

IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR ALLEGED VIOLATION OF THE MINNESOTA SECURITIES ACT ................................. 27

        A.    Plaintiffs Have Failed to Plead Controlling Person Liability On the Part of CSM, CSD, Redpath and Bozora ...................................................... 28

        B.    The Minnesota Securities Act Claims of Certain Plaintiffs Are Time Barred .................................................................................................... 29

V.    PLAINTIFFS' CLAIMS FOR ALLEGED VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT FAIL AS A MATTER OF LAW ............................ 29

VI.    PLAINTIFFS HAVE NOT PROPERLY PLED A CLAIM FOR UNJUST ENRICHMENT .................................................................................................... 31

VII    PLAINTIFFS CLAIMS FOR BREACH OF FIDUCIARY DUTY MUST BE DISMISSED ...................................................................................................... 33

VIII.    PLAINTIFFS' NEGLIGENCE CLAIMS MUST BE DISMISSED ...................... 34

IX.    PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FAILURE TO COMPLY WITH STATUTORY PREREQUISITES .......................................................................... 36

CONCLUSION ............................................................................................................ 37

## INTRODUCTION

Defendants Capital Solutions Management, LP ("CSM"), Capital Solutions Distributors, LLC ("CSD"), Timothy R. Redpath ("Redpath") and Michael W. Bozora ("Bozora") originally filed a memorandum in support of their motion to dismiss the Amended Complaint on July 14, 2009.  Thereafter, the parties stipulated to the filing by plaintiffs of a Second Amended Complaint – a "third bite of the apple," which added more plaintiffs and sought to cure some of the pleading defects that were the subject of defendants' original motion to dismiss.  Because the Second Amended Complaint fails to state a claim against these defendants, they now submit this memorandum in support of their motion to dismiss, with prejudice, most of the claims in plaintiff's Second Amended Complaint.

Plaintiffs are purchasers of limited partnership interests in defendant Paramount Partners, LP ("Paramount") – a hedge fund that was shut down by the SEC in early 2009. In this action, in addition to suing the hedge fund, its general partner defendant Crossroad Capital Management, LLC ("Crossroad") and operator defendant John Lawton ("Lawton"), each of whom are the subject of the SEC administrative action, plaintiffs have sued other corporate entities (CSM and CSD) and individuals (Redpath, Bozora and Thompson) with no alleged involvement in the day-to-day operation of the Paramount hedge fund.

The Complaint, other than mirroring some allegations from the SEC action related to the hedge fund, its general partner and operator, does very little to describe the fraud plaintiffs claim was perpetrated on them by even the SEC action defendants. The Complaint's allegations against CSM, CSD, Redpath and Bozora are wholly conclusory and in the nature of "guilt by association."  There are no allegations that these defendants

1

had any involvement in or knowledge of the wrongful actions of Paramount, Crossroad or Lawton, which caused the loss plaintiffs complain of in this action.  Indeed, as to some of the individual defendants, the Complaint is largely devoid of any allegations of involvement in the limited partnership sales in issue.

The Complaint asserts a variety of securities fraud-based claims.  In doing so, it impermissibly lumps together sweeping allegations by over thirty plaintiffs that all defendants made various representations.  Despite pages of new factual allegations made on a plaintiff-by-plaintiff basis in the Second Amended Complaint, no attempt has been made to allege "who, what, when, where and how" facts as to how each of the moving defendants' supposed wrongdoing caused the losses (*i.e.*, "loss causation") for which plaintiffs seek redress.  Nor have plaintiffs plead any facts giving rise to a strong inference of scienter as to the non-Paramount/Lawton defendants.  Accordingly, the moving defendants seek dismissal of these claims, with prejudice, for failure to plead the allegations of securities fraud in keeping with the heightened pleading requirements applicable to such claims.  Defendants seek dismissal of other claims on the grounds that the claims are barred by the applicable statutes of limitation, contain conclusory allegations insufficient to support a valid claim or simply fail to state a cognizable claim.

## BACKGROUND[1]

Lawton is an individual resident of California, who previously resided in Minnesota.  (Second Amended Complaint dated August 18, 2009, filed October 6, 2009 [Docket No. 40], ("Compl.") ¶ 4.)  Lawton is at least a 50% owner of Crossroad, a

---

[1]     The statement of facts is taken from the allegations in plaintiffs' Second Amended Complaint and must, for purposes of this motion, be deemed to be true.  *See Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1030 (8th Cir. 1996).  The defendants deny and will dispute many of these allegations in any trial of this matter.

Delaware limited liability company.  (Compl. ¶¶ 3-4.)  Crossroad is the general partner of Paramount, a Delaware limited partnership organized by Lawton in or about November 2001 for the purpose of operating a private hedge fund. (Compl. ¶¶ 2, 12-13.)

Plaintiffs are a group of individuals, a limited liability company, and IRA and retirement plan account owners who between December 2002 and January 2009 purchased limited partnership interests in Paramount.  (Compl. ¶ 1.)  Plaintiffs allege that as early as November 2001 and certainly by June 11, 2003, Lawton, through Crossroad, began the public solicitation of investors in the Paramount hedge fund.  (Compl. ¶¶ 12-13.)

CSM is a Delaware limited partnership which plaintiffs claim has a "substantial equity interest in" Crossroad.  (Compl. ¶ 5.)  CSD is a Delaware limited liability company and a registered broker-dealer of securities which plaintiffs allege is a wholly-owned subsidiary of CSM.  (Compl. ¶ 6.)  Defendants Redpath and Bozora are California residents whom plaintiffs allege to be owners and principals of CSM and CSD.  (Compl. ¶¶ 8-9.)  Plaintiffs allege that Bozora solicited "a number of the plaintiffs" to invest in Paramount.  (Compl. ¶ 9.) Defendant Charles T. Thompson ("Thompson") is a Minnesota resident whom plaintiffs allege was a managing agent of CSM, a managing director of CSD and a sales agent who solicited "a number of plaintiffs" to invest in the Paramount hedge fund.  (Compl. ¶ 7.)

Plaintiffs assert that defendants offered and sold limited partnership interests in Paramount through the use of Private Placement Memoranda ("PPM") dated November 1, 2001; June 26, 2005 and/or May 23, 2007.  (Compl. ¶¶ 19-26.)[2]  Plaintiffs allege that

---

[2]     The June 26, 2005 and May 23, 2007 PPMs are attached as Exhibits 2 and 3, respectively, to the Affidavit of Bryan Feldhaus dated October 23, 2009.  On a Rule 12

as early as May 2006, CSM, CSD, Thompson, Redpath and Bozora (whom plaintiffs frequently lump together as "the Solutions Group") began soliciting potential limited partnership investors in Paramount.  (Compl. ¶ 15.)

According to plaintiffs, effective July 12, 2006, CSM entered into an agreement with Crossroad pursuant to which CSM acquired a minority ownership interest in Crossroad, and CSD entered into a "distribution agreement with Crossroad whereby it became the "exclusive distributor" of Paramount's limited partnership interests.  (Compl. ¶ 15.)  Plaintiffs acknowledge that disclosure was made in the May 23, 2007 Paramount PPM that CSM would "advise and assist [Crossroad] in business planning, business management, business development, and fundraising" in exchange for which CSM would be paid a monthly fee and receive somewhere between a 10% and 50% ownership interest in Crossroad depending on the level of new assets Crossroad received under its management.  (Compl. ¶ 16.)  Likewise, Paramount made disclosure in its May 23, 2007 PPM that Crossroad had appointed CSD as a sales agent to refer prospective investors to Paramount, for which CSD was to receive a fee.  (Compl. ¶ 18.)

Plaintiffs assert that they were solicited to invest in Paramount through oral and written statements about Paramount's trading strategy and historical performance.  (*See, e.g.*, Compl. ¶¶ 19-22.)  The PPMs described Paramount as an "opportunistic long/short equity trading fund" that employed a "proprietary trading strategy" to achieve "absolute returns to increase our investor wealth regardless of market trends."  (Compl. ¶ 19.)

---

motion to dismiss, the Court may consider, without converting the motion to one for summary judgment, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record.  *Noble Sys. Corp. v. Alorica Cent. LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002).

Paramount described that it would invest in long positions in securities which it believed would outperform the overall securities markets while simultaneously taking short positions in securities which it believed would underperform the markets, and that it may utilize leverage in implementation of its strategies.  (Compl. ¶ 22.)

Plaintiffs assert that defendants, principally through Thompson, made various statements and representations to them in order to convince them that Paramount was a "successful, secure and reliable investment vehicle" for plaintiffs.  (Compl. ¶¶ 27, 28.) Plaintiffs assert that they relied on these oral statements, as well as representations in the PPMs, and in a few instances, representations in other documents, in purchasing limited partnership interests in Paramount. (Compl. ¶ 30.)  Plaintiffs' also assert that defendants omitted to inform plaintiffs of various facts related to Paramount, Lawton and/or Crossroad.  (Compl. ¶ 29.)

After making their Paramount investments, Plaintiffs received monthly statements of their limited partnership accounts with Paramount which generally described that the value of their investments had increased substantially in dollar amount.  (Compl. ¶ 32.) Plaintiffs also received from Paramount IRS Forms K-1 purporting to reflect positive earnings by Paramount from its stock market hedge trading activities for calendar years 2006 and 2007.  (Compl. ¶¶ 30-31.)

In or about January 2009, the United States Securities and Exchange Commission ("SEC") began to investigate Lawton, Paramount and Crossroad.  (Compl. ¶ 34.)  In connection therewith, those defendants are alleged to have provided false information to the SEC which allegedly overstated the actual value of the investments managed by Paramount. (Compl. ¶¶ 34-35.)  Plaintiffs further assert that Lawton, Paramount and Crossroad told the SEC that they had an active stock trading account with Goldman

Sachs, even though the Goldman Sachs account had been closed in June 2008.  (Compl. ¶ 35.)  Plaintiffs allege that in its investigation the SEC determined that Crossroad and/or Lawton transferred to themselves or withdrew approximately $3 million from Paramount or Paramount's stock trading account.  (Compl. ¶ 37.)  On February 18, 2009 the SEC commenced a civil enforcement action against Lawton, Crossroad and Paramount in this District (Case No. 09-CV-368) and, thereafter, obtained an injunction freezing the assets of those defendants and prohibiting any further stock trading activities by them.  (Compl. ¶ 38.)

Plaintiffs commenced this action by filing the Complaint (Docket No. 2) on April 9, 2009.  They then filed their Amended Complaint (Docket No. 4) on May 14, 2009 and the Second Amended Complaint (Docket No. 40) on October 6, 2009.

## **THE COMPLAINT**

The Second Amended Complaint purports to state the following claims against defendants:

| Count I: | Sale of Unregistered Securities in Violation of Section 12(a)(1) of the Securities Act (15 U.S.C. § 77l(a)(1)) – Against all Defendants. |
|---|---|
| Count II: | Material Misrepresentations or Omissions in Violation of Section 12(a)(2) of the Securities Act (15 U.S.C. § 77l(a)(2)), Section 10(b) of the Exchange Act (15 U.S.C. § 78j) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) – Against all Defendants. |
| Count III: | Material Misrepresentations and Omissions in Violation of the Minnesota Securities Act (Minn. Stat. § 80A.01, et. seq.) – Against all Defendants. |
| Count IV: | Violation of the Minnesota Consumer Fraud Act (Minn. Stat. § 325F.69) – Against all Defendants. |
| Count V: | Unjust Enrichment – Against all Defendants. |

6

Count VI:      Breach of Fiduciary Duty – Against all Defendants.

Count VII:     Negligence – Against Defendants CSM, CSD, Redpath, Bozora and Thompson.

Count VIII:    Breach of Partner Fiduciary Duty – Against all Defendants except Paramount.

Count IX:      Conversion – Misappropriation – Against Defendants Lawton, Crossroad and Paramount.

Count X:       Civil Liability for Theft – Against Defendants Lawton, Crossroad and Paramount.

## **ARGUMENT**

## I.      **STANDARD FOR DISMISSAL UNDER FED. R. CIV. P. 12(b)(6).**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555.)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore, must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

While the factual allegations of a complaint are accepted as true in a motion to dismiss, the complaint "must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Springdale Educ. Ass'n,* 133 F.3d at 651; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1559 (7th Cir. 1991) *cert. denied*, 502 U.S. 903 (April 10, 1991).

Here, despite three attempts over a roughly six month period to plead viable claims against the moving defendants, including the filing of the Second Amended Complaint <u>after</u> defendants had filed their earlier memorandum in support of a motion to dismiss, plaintiffs have failed, with limited exceptions, to plead claims against CSM, CSD, Redpath and Bozora that satisfy the pleading standards of *Twombly* and *Iqbal*. Accordingly, the bulk of the Complaint should be dismissed, with prejudice, against these defendants.

## II.     PLAINTIFFS' CLAIMS IN COUNT I BASED ON ALLEGED VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT SHOULD BE DISMISSED AS UNTIMELY AND FOR FAILURE TO STATE A CLAIM.

In Count I, plaintiffs claim that the Paramount limited partnership interests they purchased were not registered with the SEC in violation of the registration requirements

of Section 5 of the Securities Act, 15 U.S.C. §77e.  Plaintiffs claim that under Section

12(a)(1) of the Securities Act, any person who offers or sells a security in violation of

Section 5 of the Securities Act is liable to the person purchasing such security.  Plaintiffs

claim that all defendants are liable to the plaintiffs either as "persons" offering and selling

unregistered securities as defined in the Securities Act or as a "controlling person" of

such "person" within the meaning and purview of Section 15 of the Securities Act, 15

U.S.C. §77o.

In order to state a prima facie case under Section 12(a)(1), a plaintiff who

purchased unregistered securities must prove:  (1) a registration statement covering the

securities was not in effect; (2) the defendant offered or sold the security to the plaintiff;

(3) the mails or facilities of interstate commerce were used in connection with the offer or

sale; and (4) the action is timely under the statute of limitations in Section 13 *See, e.g.,

Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980); *Piper Acceptance Corp. v.

Slaughter*, 600 F. Supp. 169, 172 (D. Colo. 1985).

### A.      Certain Plaintiffs' Section 12(a)(1) Claims Are Time-Barred.

Many plaintiffs' Section 12(a )(1) claims in Count I should be dismissed, with

prejudice, as untimely.  Section 13 of the Securities Act, 15 U.S.C. § 77m, provides that

no action shall be maintained to enforce any liability created under [Section 12(a)(1)] of

the Securities Act, unless brought within one year of the violation on which it is based.

*See also Gridley v. Cunningham*, 550 F.2d 551, 552 (8th Cir. 1977) (Section 12(a)(1)

claim "must be brought within one year after the violation.").  Compliance with the

statute of limitation is a matter of substance, not procedure.  *Toombs v. Leone*, 777 F.2d

9

465, 468 (9th Cir. 1985).  This means that the plaintiffs' Complaint must set forth the

date the defendants allegedly violated Section 5 (and plaintiffs' have done so in

paragraph 1 of the Complaint by alleging the date each purchase was made).

In view of the foregoing, the Section 12 (a)(1) claims of any plaintiffs based on the

purchase of Paramount limited partnership interests prior to April 13, 2008 (one year

prior to the April 13, 2009, original filing date for the Complaint in this action) are time-

barred as they were not brought within one year of the alleged violation (the purchase or

sale of allegedly unregistered securities).  This precludes the Section 12(a)(1) claims of

the following plaintiffs/purchases:

Ellen DeHaven (Peterson) ($250,000 purchased on 5/1/07)

John Gardiner ($100,000 purchase on 9/18/06; $100,000 purchase on 3/1/07; and $400,000 purchase on 11/6/07)

John Gardiner, as Custodian for Max A. Gardiner ($10,000 purchase on 12/28/07)

John Gardiner, as Custodian for Paige M. Gardiner ($10,000 purchase on 12/28/07)

John Gardiner, as Custodian for Jake W. Gardiner ($10,000 purchase on 12/28/07)

Steven R. Gulbrandsen ($100,000 purchase on 9/07/03; $15,000 purchase on 10/06/05; and $25,000 purchase on 8/20/06)

Steven R. Gulbrandsen, Profit Sharing Plan ($185,000 purchase on 3/24/06)

Blake Johnson, LLC ($100,000 purchase on 7/27/07)

R. Thomas Lane ($150,000 purchase on 10/19/06)

Craig Mandery ($100,000 purchase on 12/19/07)

Guy M. Peterson ($100,000 purchase on 2/01/08)

Jeffrey M. Petrik ($55,000 purchase on 3/01/07)

Sally A. Petrik, IRA ($50,000 purchase on 3/1/07)

Joseph H. Ryan ($250,000 purchase on 8/22/06 and $250,000 purchase on 7/31/07)

Sandra M. Ryan ($250,000 purchase on 7/31/07 and $200,000 purchase on 1/03/08)

Robert Spadafora ($50,000 purchase on 3/01/07; $50,000 purchase on 9/01/07; and $25,000 purchase on 1/15/08)

Thomas C. Weekly, IRA ($100,000 purchase on 12/26/02; $50,000 purchase on 9/08/03; $12,500 purchase on 7/01/05; $14,000 purchase on 7/12/07; and $16,000 purchase on 11/01/07)

Daniel White, IRA ($100,000 purchase on 3/01/08)

(*See* Compl. ¶ 1.)  Accordingly, the Section 12(a) (1) claims of these plaintiffs, based on the identified purchases, must be dismissed, with prejudice, as untimely.

      **B.**    **Most Plaintiffs' Section 12(a)(1) and Section 12(a)(2) Claims Against CSM, Redpath and Bozora Must Be Dismissed Because Plaintiffs Have Failed to Allege That These Defendants Were Statutory Sellers of the Securities.**

Section 12 requires a plaintiff to plead and prove the "seller" status of each defendant.  This requirement is found in language common to Sections 12(a)(1) and 12(a)(2), which extends liability thereunder to "[a]ny person who offers or sells a security" and makes that person liable "to the person purchasing such security from him . . . ."  15 U.S.C. § 77l(a).  The Supreme Court has stated that Section 12(a)(1) "liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner."  *Pinter v. Dahl*, 486 U.S. 622, 647 (1988).  Under *Pinter*, a Complaint is subject to

11

dismissal unless it contains an allegation of direct and active participation by the defendant in the solicitation of the immediate sale.  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 n. 19 (3rd Cir. 1996).

Defendant CSM is alleged to be the corporate parent of defendant CSD – the corporate entity alleged to have been the sales agent for Paramount after May 2006. (Compl. ¶¶ 5-6, 15-16.)   Indeed, as to defendant CSM, there are only two vague allegations that it was a participant in any of the alleged sales of Paramount partnership interests.  Plaintiffs Jeffrey and Sally Petrik allege that they received a letter from Thompson and CSM in October 2006 inviting them to a dinner meeting, which they did not attend.  (Compl. ¶ 27(r).)  Plaintiff White alleges, without more, that he communicated with Thompson as an agent and representative of CSM.  (Compl. ¶ 27(x).) These allegations are insufficient to claim that CSM was a direct and active participant in the immediate sales of any of the investments in issue.  Accordingly, all Plaintiffs' Section 12 claims (in Counts I and II) [3]  against CSM must be dismissed.

The sole allegation of participation by Redpath in the sale to any plaintiff of a Paramount limited partnership interest is in paragraph 27(q) of the Complaint concerning plaintiff Peterson, who "believes" he met with Redpath and Bozora before he invested in

---

[3]     Although the *Pinter* Court expressly declined to rule on the scope of a statutory "seller" under what was then Section 12(2), lower courts that have considered the issue, including the Minnesota federal court in *In re Professional Management, Ltd.*, 692 F. Supp. 1057, 1063-64 (D. Minn. 1988), have applied *Pinter* to Section 12(a)(2).  As such, the Section 12(a)(2) claims in Count II are likewise subject to dismissal, with prejudice, for failure properly to allege that these defendants were statutory sellers.

Paramount.  Although Redpath is alleged to have had some interaction with plaintiff

Dziedzic, the allegations of paragraph 27(c) make clear that Thompson, not Redpath, is

alleged to have solicited the sale to Dziedzic.  These allegations are insufficient to claim

that Redpath was a direct and active participant in the immediate sales of any of the

investments in issue. As such, all plaintiffs' Section 12 claims against Redpath (in Counts

I and II), must be dismissed.[4]

Finally, only Plaintiff DeHaven alleges that Bozora directly and actively solicited

the immediate sale of Paramount limited partnership interests to her.  (Compl. ¶¶ 27(b).)

Plaintiff Dziedzic, while mentioning Bozora, alleges that Thompson solicited the sale.

(Compl. ¶ 27(c).)  Although Plaintiff Gartner met Bozora in 2006, it was allegedly to

discuss an unrelated investment and as to his 2008 investments in Paramount, he alleges

only that Thompson was involved in the sale.  (Compl. ¶ 27(e).)  Plaintiff R. Thomas

Lane alleges that he met Bozora in January 2008, but that was well after his October

2006 investment in Paramount, such that Bozora did not solicit the sale of the investment

in issue.  (Compl. ¶ 27(l).)  Plaintiff Elizabeth Lane alleges that defendant Lawton

solicited her investment in Paramount, then gratuitously alleges that Bozora was an

"investment advisor" for her father, plaintiff Thomas Lane and, as such, was "acting as

an investment advisor for [her] for all matters concerning Defendant Paramount."

(Compl. ¶ 27(m).)  Although plaintiff Joseph Ryan alleges his second $250,000

---

[4]      Were the Court to conclude that the conclusory allegations of Peterson are
sufficient to state a claim for seller liability against Redpath or Bozora under Sections
12(a)(1) and 12(a)(2), Peterson's claim against these defendants under Section 12(a)(1)
(Count I) are nevertheless subject to dismissal because, as indicated in Section II.A, *infra*,
that claim is time-barred.

investment in July 2007 was solicited by Bozora, he alleges he withdrew all of his

investments in late 2008 and early 2009, such that he sustained no losses.  (Compl. ¶

27(t).)  Plaintiff Sandra Ryan never met Bozora, but claims that her husband "relayed" to

her information Bozora provided to him.  (Compl. ¶ 27(t).)  Plaintiff Weekly invested

$162,500 in Paramount before he is alleged to have met Bozora in 2006.  (Compl. ¶

27(v).)  Although Weekly invested another $30,000 in Paramount in 2007, he alleges he

did so as a result of discussions with defendant Lawton.  (Compl. ¶¶ 27(v).)

Accordingly, the Section 12 claims (in Counts I and II) against Bozora of all plaintiffs

other than DeHaven must be dismissed, with prejudice.[5]

**III.    PLAINTIFFS' CLAIMS IN COUNT II FOR ALLEGED VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT AND SECTION 10(b) OF THE EXCHANGE ACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM OR AS UNTIMELY.**

**A.    Certain Plaintiffs' Section 12(a)(2) Claims Are Untimely.**

Section 13 of the Securities Act, 15 U.S.C. § 77m, provides that no action shall be

maintained to enforce any liability created under Section 12(a)(2) of the Securities Act,

more than three years after the sale.  The original Complaint was filed on April 13, 2009.

Accordingly, the Section 12(a)(2) claims in Count II of the following plaintiffs

concerning purchases of Paramount limited partnership interests made prior to April 13,

2006 are time barred and must be dismissed, with prejudice:

---

[5]     Plaintiff Steven Gulbrandsen alleges that Lawton solicited all of Gulbrandsen's investments, all of which occurred prior to March 2006 – before CSM, CSD, Redpath or Bozora are even alleged to have had any business dealings with Lawton, Paramount or Crossroad as to the Paramount limited partnership interests.  (Compl. ¶¶ 1, 15, 27(f).)  As such, all of Gulbrandsen's claims against CSM, CSD, Redpath and Bozora must be dismissed, with prejudice, for failure to state a claim against these defendants.

Stephen R. Gulbrandsen ($100,000 purchase on 9/17/03; $15,000 purchase on 10/6/05; and $25,000 purchase on 10/27/05)

Stephen R. Gulbrandsen, Profit Sharing Plan ($185,000 purchase on 3/21/06)

Thomas C. Weekly Individual Retirement Account ($100,000 purchase on 12/26/02; $50,000 purchase on 9/8/03; and $12,500 purchase on 7/1/05)

(Compl. ¶ 1.)

### B.   Plaintiffs Have Failed to State a Claim Against CSM, CSD, Redpath and Bozora Under Section 10(b).

In Count II, Plaintiffs purport to state a claim against CSM, CSD, Redpath and Bozora under Section 10(b) of the Exchange Act, 15 U.S. C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F. R. § 240.10b-5.  (*see* Compl. ¶¶ 51-57.)  Plaintiffs assert that these defendants are liable as persons who violated these provisions or as a "controlling person" of such persons within the meaning of Section 15 of the Securities Act, 15 U.S.C. § 77o, or Section 20 of the Exchange Act , 15 U.S.C. § 78t.  Plaintiffs' Section 10(b) claim against CSM, CSD, Redpath and Bozora should be dismissed, with prejudice, under Rule 12(b)(6) because the Second Amended Complaint fails to state a claim against them under 15 U.S.C. § 78u-4(b).

Section 10(b) of the Exchange Act and SEC Rule 10b-5 prohibit fraudulent conduct in the sale or purchase of securities. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter (*i.e.*, a wrongful state of mind); (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Stoneridge Inv. Partners,*

*LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008) (internal quotations and citations omitted); *see also In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 741 (8th Cir. 2002).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") dictates special, heightened pleading standards applicable to complaints brought under Section 10(b).[6] *Navarre*, 299 F.3d at 741-42. Specifically, the PSLRA mandates that in any private action where the defendant is alleged to have made a misrepresentation or omission, "the complaint shall *specify each statement alleged to have been misleading*, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (emphasis added). The PSLRA also requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]." 15 U.S.C. § 78u-4(b)(2); *Florida St. Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 654 (8th Cir. 2001). "[I]n evaluating whether a complaint is sufficient under the stringent pleading standards of the PSLRA, the Court must 'disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the statute.'" *Yellen v. Hake*, 437 F. Supp. 2d 941, 951 (S.D. Iowa 2006) (quotation omitted).

---

[6]     "Prior to the enactment of the PSLRA, pleadings were evaluated under Federal Rule of Civil Procedure 9(b) for particularity." *Navarre*, 299 F.3d at 742. The PSLRA supersedes and embodies the standards of Rule 9(b). *Id.*

Mere allegations of fraud do not satisfy the PSLRA's falsity pleading requirements. *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 958 (8th Cir. 2008) (quotation omitted). Rather, the circumstances of the alleged fraud must be particularly stated so as to include matters such as the time, place and content of the representations, the identity of the person who made the statements and what he or she obtained or gave up by making the statement – in other words, the "who, what, when, where, and how." *In re K-Tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 890 (8th Cir. 2002) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997)). The Complaint must also "indicate why the alleged misstatements would have been false or misleading at the several points in time in which it is alleged they were made." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005) (quotation omitted). Merely alleging "that defendants made statements 'and then showing in hindsight that [they were] false'" does not satisfy the PSLRA. *Elam v. Neidorff*, 544 F.3d 921, 927 (8th Cir. 2008) (quoting *Navarre*, 299 F.3d at 743).

Finally, Section 10(b) "imposes liability only on a person who makes a material misstatement or omission, not on a person who aids in making the misstatement or omission." *McAdams v. McCord*, ___ F.3d ___, 2009 WL 3350036 *2 (8th Cir. Oct. 20, 2009) (citing *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177-78 (1994)). Thus, under Section 10(b) a defendant is liable only for misstatements or omissions made by that defendant.

Here, the plaintiffs' Section 10(b) claims against CSM, CSD, Redpath and Bozora fall well short of satisfying the stringent PSLRA pleading standards. In the Complaint,

17

plaintiffs quote extensively from Paramount's PPMs, a Paramount limited partnership agreement, and Paramount's "performance histories." (Compl. ¶¶ 16-26.)  These documents are all – on their face – Paramount's documents and statements.  While CSM and CSD are referenced in the May 23, 2007 PPM, nowhere within that PPM are any of the statements made therein attributed to defendants CSM, CSD, Redpath or Bozora. (*See* Compl. ¶¶ 16, 18-26; Exhibits 2 and 3 to Feldhaus Aff.)  Thus, although certain other defendants may have provided to some plaintiffs Paramount's June 26, 2005 or May 23, 2007 PPM, a partnership agreements or the Paramount performance histories, only Paramount may have direct liability for the statements made therein.  *See*, *e.g.*, *Lattanzio v. DeLoitte & Touche LLP*, 476 F.3d 147, 154 (2d Cir. 2007) (quarterly reports that did not contain CPA firm's audit opinion and which were not attributed to the auditors were not the CPA firm's statements for purposes of Section 10(b)).  Although some plaintiffs complain vaguely about a Bloomberg print-out, and K-1s and account statements provided to them by the Paramount limited partnership, none of those documents are attributed to CSM, CSD, Redpath or Bozora.  (Compl., ¶ 27, 30-33.)  Further, in most instances, plaintiffs allege they received these documents after-the-fact, such that they could not have relied on them in making a decision to invest in Paramount.  (*Id.*)

Moreover, the vast majority of the plaintiffs never met or spoke with Redpath or Bozora concerning an investment in Paramount.  *See* Section II.B, *infra*.  Nowhere in the Complaint do the plaintiffs other than Dziedzic and Peterson specify that they have ever met or spoken with Redpath.  Likewise, only plaintiffs Dziedzic, DeHaven, Gartner, Thomas Lane, Joseph Ryan and Weekly allege that they have met or spoken with Bozora.

Other than plaintiff DeHaven as to Bozora, no plaintiff alleges in anything other than conclusory fashion that CSM, CSD, Redpath or Bozora had any direct involvement in the sale of any Paramount limited partnership interests to them.

The few plaintiffs that did have interaction with Redpath or Bozora have stated only vague or conclusory allegations of their supposed involvement in soliciting sales to those plaintiffs. Nor do those plaintiffs identify "with particularity" the requisite "*who, what, when, where and how*" regarding any allegedly false communications supposedly made by CSM, CSD, Redpath and/or Bozora. *See Navarre*, 299 F.3d at 745 (emphasis added). Instead, the Complaint largely lumps together allegations against all "Defendants" – most of which concern statements made by Paramount in the PPMs – or simply lump CSM, CSD, Bozora, Thompson and Redpath together as the "Solutions Group" – and makes no serious attempt to distinguish between or among each defendant. (*See* Compl. ¶¶ 18-22, 24-27.)

Such "broad-brush" allegations against multiple defendants fail to satisfy the PSLRA's heightened pleading standards.[7] *See Gurfein v. Ameritrade, Inc*., 411 F. Supp. 2d 416, 427 (S.D.N.Y. 2006) ("separate and specific" allegations should be made against each defendant); *Navarre*, 299 F.3d at 745 (affirming dismissal of securities fraud

---

[7]     Even absent the applicability of the PSLRA, Plaintiffs vague, group allegations are insufficient to satisfy Rule 9(b)'s particularity requirements. *See Weisburgh v. St. Jude Med., Inc.*, 158 F.R.D. 638, 641 (D. Minn. 1994) (the identical federal Rule 9(b) "requires that a complaint plead the 'who, what, when, where, and how' of the alleged fraudulent conduct"); *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988) ("Where plaintiff has brought fraud claims against more than one defendant, each defendant is entitled to know the particular allegations of fraud it allegedly committed. Common circumstances do not excuse a plaintiff from identifying which party allegedly perpetrated which specific acts of fraud.").

complaint that was "devoid of any details regarding time, persons, places, and subjects.");

*In re MoneyGram Int'l, Inc. Sec. Litig.*, __ F. Supp. 2d __, 2009 WL 1451582 at *24 n.

33 (D. Minn. May 20, 2009) (dismissing Section 10(b) and Rule 10b-5 claims against an

individual defendant where the Complaint did not allege he made any specific

misrepresentations or omissions).  Because plaintiffs have failed to plead their securities

fraud claims in accordance with the PSLRA's requirements, the Section 10(b) claim

against CSM, CSD, Redpath and Bozora in Count II should be dismissed, with prejudice.

> **C.    Plaintiffs Have Failed Adequately to Plead Controlling Person Liability
> On the Part of CSM, CSD, Redpath and Bozora.**

Under Section 15 of the Securities Act (15 U.S.C. § 77o) and Section 20 of the

Exchange Act (15 U.S.C. § 78t), a person who controls a party that commits a violation

of the securities laws may be held jointly and severally liable with the primary violator.

In Counts I and II, plaintiffs allege that each defendant is liable under Section 12(a) (1),

Section 12(a)(2),  Section 10(b) or Section 20 as a controlling person of a primary

violator.  (Compl. ¶ 56.)  The primary violators are alleged to be defendants Lawton,

Paramount and/or Crossroad.  (*see* Compl. ¶¶ 34-38.)

In *Metge v. Baehler*, the Eighth Circuit adopted a two-point test for "controlling

person" liability under 15 U.S. C. § 78t:

> Plaintiffs must establish, first, that the defendant . . . actually participated in
> (*i.e. exercised* control over) the operations of the corporation in general;
> then he must prove that the defendant possessed the power to control the
> specific transaction or activity upon which the primary violation is
> predicated, but he need not prove that this later power was exercised.

762 F.2d 621, 631 (8th Cir. 1985) (internal quotations omitted); *see also Farley v. Henson*, 11 F.3d 827, 835 (8th Cir. 1993).  The SEC has defined "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.

The control person statutes have been held to be remedial in nature and thus have been interpreted as "requiring only some indirect means of discipline short of actual direction to hold a 'controlling person' liable."  *Farley*, 11 F. 3d at 836.  Nonetheless, courts have held that dismissal is appropriate where, as here, a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was actually a control person of the alleged primary violator.  *See, e.g., Saunders  Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 485-86 (6th Cir. 1992) (upholding dismissal under Rule 12(b)(6) because plaintiff failed to adequately allege control relationship); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (dismissing control person claims even though plaintiff alleged that defendant corporation was a founder, creditor, and minority shareholder of the primary violator, had a vice president on the primary violator's board, and was the underwriter for the involved offering).

As to CSM, CSD, Redpath and Bozora, plaintiffs do not allege any substantive or non-conclusory facts that meet the control person requirements.  The Complaint alleges only that:  (1) CSM was a registered investment adviser, owned a minority interest in Crossroad and was a "controlling person" of Crossroad and Paramount (Compl. ¶ 5); (2)

21

CSD was a wholly-owned subsidiary of CSM, was Crossroad's sales agent for solicitation of prospective investors in Paramount and was a "controlling person" of Crossroad and Paramount (Compl. ¶ 6.); and (3)  Redpath and Bozora were "co-founders," owners of and principals in CSM and CSD and "controlling person[s]" of CSM, CSD, Crossroad and Paramount (Compl. ¶¶ 8-9.)  These conclusory allegations are insufficient to establish that CSM, CSD, Redpath and Bozora were control persons of Paramount or Crossroad.

The Complaint does not provide any basis to support the bare allegations of control on the part of CSM, CSD, Redpath or Bozora as to the allegedly defrauding corporate entities – Paramount and/or Crossroad.  While the Complaint alleges that Bozora held himself out as monitoring the trading activities of Paramount (Compl. ¶ 9), there are no allegations that support the conclusion that he ever exercised control over the operations of Paramount or Crossroad or over the investment activities or other activities of Lawton.  Moreover, there are no allegations that these defendants had any input in or responsibility for any of the investments made by Paramount.  Finally, plaintiffs allege no facts to the effect that CSM, CSD, Redpath or Bozora participated in or had any knowledge of or involvement in any scheme to defraud, in the alleged transfers of funds between or among Lawton, Crossroad and Paramount (Compl. ¶ 37), or in the alleged provision of false information by Lawton, Crossroad and/or Paramount to the SEC concerning the value of Paramount's investment assets (Compl. ¶¶ 34-35).  In short, Plaintiffs' allegations of control are pure speculation and insufficient to overcome the pleading standard enunciated in *Iqbal and Twombly*.  Having failed properly to plead that

these defendants may be liable as controlling persons of Lawton, Crossroad or

Paramount, the allegations in Counts I and II of the Complaint as to controlling person

liability must be dismissed, with prejudice, as to CSM, CSD, Redpath and Bozora.[8]

### D.    Plaintiffs Have Failed to Plead Scienter.

Under the PSLRA, a securities fraud Complaint under Section 10(b) must "state

with particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind [*i.e.*, scienter]."  15 U.S.C. § 78u-4(b) (2).  The PSLRA requires

the Court to dismiss the Complaint if these requirements are not met.  15 U.S.C. § 78u-

4(b) (3).  Scienter is "the intent to deceive, manipulate or defraud."  *Florida St. Bd. of*

*Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645,653 (8th Cir. 2001).

While under Rule 12(b) (6) all inferences must be drawn in plaintiffs' favor,

"inferences of scienter survive a motion to dismiss only if they are both reasonable and

strong."  *Green Tree*, 270 F.3d at 660 (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d

185, 195-96 (1st Cir. 1999)).  Scienter may be established from facts demonstrating:  (1)

a "mental state embracing intent to deceive, manipulate or defraud;" (2) severe

recklessness involving "highly unreasonable omissions or misrepresentations" involving

"an extreme departure from the standards of ordinary care, and . . . present[ing] a danger

of misleading buyers or sellers which is either known to the defendant or is so obvious

---

[8]     In Counts I and II, plaintiffs fail to specify which "persons" CSM, CSD, Redpath and Bozora are alleged to be "controlling persons" of.  (Compl. ¶¶ 48, 56.).  The control person claims are defective and subject to dismissal for this reason alone.  However, to the extent that Redpath and Bozora are alleged to be control persons of CSM or CSD (*see* Compl. ¶ ¶ 8-9.), the control person claims in Counts I and II should be dismissed, with prejudice, as to Redpath and Bozora as plaintiffs have failed to plead a primary violation of Section 12(a)(1), Section 12(a)(2) or Section 10(b) by CSM or CSD.

that the defendant must have been aware of it; or (3) opportunity and "an unusual and
heightened motive."  *Stephenson v. Deutsche Bank AG*, 282 F. Supp.2d 1032, 1056-57
(D. Minn. 2003) (citations omitted).

      Here, plaintiffs have failed to allege that CSM, CSD, Redpath or Bozora acted
with scienter.  As to these defendants, the allegations of the Complaint do not raise a
strong inference of <u>any</u> intent to deceive.  Indeed, as discussed in Section II.B, *infra*,
except for a few instances, the Complaint makes no particular assertion of alleged
statements, let alone misrepresentations or omissions, which the plaintiffs claim were
made by Redpath or Bozora.  Nor does the Complaint describe how CSM, CSD, Redpath
or Bozora participated in any alleged scheme on the part of Lawton, Crossroad or
Paramount, their alleged motive or how the scheme or their supposed participation in it
was allegedly carried out.  At best, the Complaint makes "rote allegations" that these
defendants "knowingly made false statements of material fact" (Compl. ¶ 51), yet such
allegations fail to satisfy the heightened pleading standards of the PSLRA.  *Navarre*, 299
F. 3d at 745.  Accordingly, the Section 10(b) claims in Count II should be dismissed, with
prejudice, as to CSM, CSD, Redpath and Bozora.

      **E.**    **Plaintiffs Have Failed to Plead Loss Causation as to these Defendants.**

      Plaintiffs' Section 10(b) claims should be dismissed as to defendants CSM, CSD,
Redpath and Bozora because plaintiffs have failed to plead that their alleged losses were
caused by any actions or inactions on the part of these defendants.  A Complaint "must
provide a defendant with some indication of the loss and the causal connection the
plaintiff has in mind."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  To

adequately plead loss causation, a plaintiff must allege facts that support a "'causal connection between the material misrepresentation and the loss.'"  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008) (quoting *Dura*, 544 U.S. at 342).  In other words, the defendant's fraud, and not other events, must have caused the loss complained of.  *Id.[9]*

Here, the plaintiffs make clear in their Complaint that their losses – the alleged diminution in the value of Paramount's investment assets underlying their limited partnership interests – were caused by malfeasance on the part of Lawton, Paramount and/or Crossroad.  Those defendants are alleged to have:  (1) violated restrictions in the limited partnership agreements; (2) engaged in stock trading in a manner inconsistent with the representations in Paramount's PPMs; (3) misrepresented or concealed the true value of the investment assets managed by them; and/or (4) and/or engaged in fraudulent or unauthorized transfers of Paramount's assets or commingling of those assets.  Plaintiffs allege that they collectively entrusted approximately millions to investment management by Paramount, and now – despite Paramount publishing information touting substantial investment gains – Paramount is left with little or no assets.

As to defendants CSM, CSD, Redpath and Bozora, some plaintiffs have pled "transaction causation" – that but for alleged statements or omissions of these defendants plaintiffs would not have purchased the limited partnership interests in issue.  (*See*

---

[9]     Courts assess loss causation under "ordinary pleading rules."  *Dura*, 544 U.S. at 347.  Thus, "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection the plaintiff has in mind."  *Id.*

Compl. ¶ 27, 29.)[10]  However, the only allegations of loss causation are leveled at

Lawton, Paramount and/or Crossroad.  (Compl. ¶¶ 34-38.)  While plaintiffs allege certain

"omissions" concerning, for example, a prior lawsuit involving Lawton, Crossroad and

Paramount (Compl., ¶ 29), none of these omissions are alleged to have caused plaintiffs'

alleged losses.  Accordingly, the Section 10(b) claims must be dismissed, with prejudice,

as to all defendants other than Lawton, Paramount and Crossroad.

### F.    Some of the Section 10(b) Claims of Plaintiffs Gulbrandsen and Weekly Are Time Barred.

The statute of limitations for a private claim under Section 10(b) and Rule 10b-5 is

two years from the discovery of the facts constituting the violation or five years from the

violation itself. 28 U.S.C.§ 1658(b).  The Complaint in this action was originally filed on

or about April 13, 2009.  The Section 10(b) and Rule 10b-5 claims of plaintiffs who

purchased prior to April 13, 2004, are time barred as they were not brought within five

years of the alleged violation (the purchase or sale of securities based on alleged

misrepresentations or omissions).  Accordingly, the Section 10(b) and Rule 10b-5 claims

of plaintiffs Steven Gulbrandsen based on his $100,000 purchase on September 7, 2003

and of plaintiff Thomas Weekly based on a $100,000 purchase on December 26, 2002

and a $50,000 purchase on September 8, 2003, must be dismissed as time barred.

---

[10]    In alleging "transaction causation," a plaintiff is simply stating that a defendant's
fraud caused the plaintiff to purchase the security in issue – here, the purchase of
Paramount limited partnership interests. "  *Schaaf*, 517 F.3d at 550.  In order to properly
allege loss causation, however, the plaintiff must allege that the defendant's fraud
actually or proximately caused the loss complained of.  *Id.*

**IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR ALLEGED VIOLATION OF THE MINNESOTA SECURITIES ACT.**

In Count III of the Complaint, plaintiffs basically restate their fraud allegations of Count II (Section 10(b)), asserting that the same conduct gives rise to liability under the Minnesota Securities Act, Minn. Stat. § 80A.01 and 80A.68.[11]  Minn. Stat. § 80A.68 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1)  to employ a device, scheme, or artifice to defraud; (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make a statement made, in the light of the circumstances under which it was made, not misleading; or (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Plaintiffs allege that all defendants are liable under Minn. Stat. § 80A.76(b) as a "person" who sells a security by means of an untrue statement or omission.  (Compl. ¶ 63.)  Minn. Stat. § 80A.76 (b) governs liability of sellers to purchasers and provides that a person is liable to a purchaser if the person sells a security in violation of section 80A.49 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

The elements of a securities fraud claim under Minn. Stat. § 80A.68 (formerly, Minn. Stat. § 80A.01) are "essentially the same" as a federal securities fraud claim under

---

[11]    Minn. Stat. § 80A.01 was repealed by Laws 2006, Chapter 196, which in part repealed §§ 80A.01 to 80A.19, and also enacted §§ 80A.40 to 80A.90, the Uniform Securities Act (2002), relating to the same subject matter.  Minn. Stat. § 80A.01 was replaced by Minn. Stat. § 80A.68.

Rule 10b-5.  *Erickson v. Horing*, No. 99-1468, 2001 WL 1640142, at *7 (D. Minn. Sept. 21, 2001).  Given this, plaintiffs' Minnesota Securities Act claims against CSM, CSD, Redpath and Bozora, for the reasons articulated in Section  III above as to plaintiffs' federal securities fraud claims, must be dismissed, with prejudice, for failure to state a claim and failure to plead fraud with the particularity required under Minn. R. Civ. P. 9.02.

> ### A.     Plaintiffs Have Failed to Plead Controlling Person Liability On the Part of CSM, CSD, Redpath and Bozora.

Plaintiffs allege also in Count II that all defendants are liable under Minn. Stat. § 80A.76(b) as a control person or someone who is an employee of or associated with a person and materially aids the illegal sale under Minn. Stat. § 80A.23, subd. 3, as amended and renumbered to Minn. Stat. § 80A.76(g) (Compl. ¶ 63.)

Prior to the repeal of Minn. Stat. § 80A.23, the Minnesota Supreme Court decided that the 2-factor *Metge* test should be applied to determine "controlling person" liability under the Minnesota Securities Act.  *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 532-33 (Minn. 1992).  Defendants respectfully suggest that the *Semrad* decision would apply in equal measure to claims under Minn. Stat. § 80A.76.  Accordingly, for all of the reasons articulated in Section III.C herein, plaintiffs' claims for "controlling person" liability on the part of CSM, CSD, Redpath and Bozora under the Minnesota Securities Act must be dismissed, with prejudice.

**B.    The Minnesota Securities Act Claims of Certain Plaintiffs are Time Barred.**

The statute of limitations on a fraud claim under section 80A.76 (b), other than for a violation section 80A.49, expires two years after discovery of the facts constituting the violation or five years after the violation. Minn. Stat. § 80A.76(j)(2). Given that the original Complaint in this matter was filed on or about April 13, 2009, any Minnesota Securities Act claims arising from purchases before April 13, 2004, are subject to dismissal.  As such, the claims in Count III of plaintiff Steven Gulbrandsen based on his $100,000 purchase on September 7, 2003 and of plaintiff Thomas Weekly based on a $100,000 purchase on December 26, 2002 and a $50,000 purchase on September 8, 2003, are subject to dismissal, with prejudice.

**V.    PLAINTIFFS' CLAIMS FOR ALLEGED VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT FAIL AS A MATTER OF LAW.**

In Count IV, plaintiffs fail to set forth a legally sufficient claim under the Minnesota Consumer Fraud Act ("MCFA") because they do not allege facts that, if true, would show that their lawsuit is brought to secure a public benefit.  The MCFA, the relevant provision of which is codified at Minn. Stat. § 325F.69, subd. 1, provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable" as provided in Section 325F.70.

Although the MCFA does not provide a private right of action to individual consumers, in limited circumstances private remedies may be available under the private attorney general statute.  Minnesota's private attorney general statute provides, in part,

29

that "any person injured by a violation of [the MCFA] may bring a civil action and

recover damages, together with costs and disbursements, including costs of investigation

and reasonable attorneys' fees, and receive other equitable relief as determined by the

court."  Minn. Stat. § 8.31, subd. 3.  The Minnesota Supreme Court has limited recovery

under the private attorney general statute to causes of action that benefit the public, as

opposed to claims seeking individual damages or which seek to protect private or

individual purposes independent of a public purpose.  *Ly v. Nystrom*, 615 N.W.2d 302,

313-14 (Minn. 2000).[12]

Here, plaintiffs seek no equitable or injunctive relief, but rather solely

compensatory damages for the exclusive benefit of plaintiffs.  (Compl. ¶ 71.)  Under such

circumstances, the Minnesota federal courts have not hesitated to dismiss claims under

the MCFA.  *See Evangelical Lutheran Church in America Bd. of Pensions v. Spherion*

*Pacific Workforce*, No. 04-4791, 2005 WL 1041487 (D. Minn. May 4, 2005) ("Where

recovery is sought for the exclusive benefit of the plaintiff, there is no public benefit.");

*Zutz v. Case Corp.*, No. Civ.-02-1776 (PAM/RLE), 2003 WL 22848943 at *4 (D. Minn.

Nov. 21, 2003) (same); *Pecarina v. Tokai Corp.*, No. Civ.-01-1655 (ADM/AJB), 2002

WL 1023153 at *5 (D. Minn. May 20, 2002) (same).

Further, plaintiffs acknowledge that an SEC asset freeze and TRO have "had the

effect of terminating [Lawton's, Crossroad's and Paramount's] stock market hedge

trading activities" (Compl. ¶ 38), such that there will be no further detriment to the public

---

[12]      In "interpreting a state statute, a federal court is bound by the construction given
the statute by the highest court within the state."  *Slaaten v. Cliff's Drilling Co.*, 748 F.2d
1275, 1276 (8th Cir. 1984) (citation omitted).

from their actions.  And, while any successful lawsuit which recovers damages for

alleged fraudulent investment activities could have the potential to cause some public

benefit, courts have recognized such a broad application of the private attorney general

statute would not be in keeping with the Minnesota Supreme Court's decision in *Ly*.  *See*

*Behrens v. United Vaccines, Inc.*, 228 F.Supp.2d 965, 971-72 (D. Minn. 2002).

Accordingly, Count IV should be dismissed, with prejudice, for failure to state a

cognizable claim.[13]

## VI.     PLAINTIFFS HAVE NOT PROPERLY PLED A CLAIM FOR UNJUST ENRICHMENT.

Count V of plaintiffs' Complaint, alleging that defendants have been unjustly

enriched by plaintiffs, must be dismissed, with prejudice.  The sole allegation in support

of the unjust enrichment claim is that, "[b]y and through Defendants' aforesaid fraud,

false pretenses, false promises, misrepresentations, misleading statements or deceptive

practices, Defendants have been unjustly enriched."  (Compl. ¶ 73.)  This allegation,

coupled with the other conclusory allegations in the Complaint, is insufficient to state a

claim for unjust enrichment against CSM, CSD, Redpath and Bozora under *Twombly and*

*Iqbal*.   To establish a claim for unjust enrichment in Minnesota, plaintiffs must show: (1)

a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowing

acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit

---

[13]       Moreover, as discussed in Section II.B, *infra*, only a few of the plaintiffs have
alleged that they had any personal interaction whatsoever with Redpath, Bozora or CSM.
Accordingly, the MCFA claims of the plaintiffs who did not have substantive interaction
with Redpath, Bozora or CSM must be dismissed, with prejudice, as to these defendants
for failure to allege that they were involved in the sale of any "merchandise" to plaintiffs.

where it would be inequitable to retain it without paying for it.  *Acton Constr. Co. v. State*, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986), *pet. for rev. denied*, (Minn. May 22, 1986).  To state a claim, the plaintiff must plead more than that "one party benefit[ted] from the efforts or obligations of others," but instead must allege "that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully."  *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981); *Servicemaster of St. Cloud v. GAB Bus. Servs. Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (quotations and citations omitted).  Thus, a claim for unjust enrichment does not lie when the defendant is "enriched by what he is entitled to under a contract or otherwise."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2008) (quotation omitted).

Although the Complaint describes disclosures made in the PPMs and limited partnership agreements about fees or compensation paid to CSM or CSD in connection with Paramount (Compl. ¶¶ 16-18), those allegations only establish compensation those defendants were entitled to receive by contract.  The Complaint is devoid of any facts or allegation to the effect that any such payments were illegal or improper, or that these defendants received any undisclosed compensation or benefits.  Further, there are no allegations that plaintiffs, themselves, conferred a benefit on Redpath or Bozora, individually, let alone any improper benefit.  Indeed, most plaintiffs had no interaction with Redpath or Bozora whatsoever.  Accordingly, Count V should be dismissed, with prejudice.

VII.   **PLAINTIFFS CLAIMS FOR BREACH OF FIDUCIARY DUTY MUST BE DISMISSED.**

Plaintiffs' claims for breach of fiduciary duty in Counts VI and VIII must be dismissed, with prejudice, for failure to state a claim.  In Count VI, plaintiffs allege, in conclusory fashion, that all defendants owed fiduciary duties to plaintiffs under Minn. Stat. § 45.026, subd. 1, because they allegedly held themselves out to plaintiffs as "financial planners" on or through "advertisements." (Compl. ¶ 77.) This legal conclusion, devoid of any factual support, is insufficient to state a claim against these defendants for alleged breach of the duty that financial planners may owe their clients. CSM, for example, is not alleged to have been a broker-dealer of securities or to have been in privity with the plaintiffs in connection with their Paramount purchases.  Nor does the Complaint allege any "advertisements" plaintiffs supposedly received from Redpath or Bozora in which Redpath and Bozora allegedly held themselves out as financial planners.  Indeed, most plaintiffs acknowledge having had no contact with Redpath or Bozora.  Because there are no facts pled in the Complaint concerning these supposed financial planner advertisements, Count VI must be dismissed, with prejudice.

Count VIII is styled as a claim for "Breach of Partner Fiduciary Duty."  In that Count, plaintiffs allege nothing more than the legal conclusion that all defendants, except Paramount, owed (and breached) a fiduciary duty because they were either the General Partner of Paramount (*i.e.*, Crossroad) or they controlled the General Partner of Paramount (Compl. ¶ 92.)  Although Crossroad, Paramount's General Partner, may owe fiduciary duties to Paramount's limited partners, plaintiffs have (as described more fully

in Section III.C herein) failed to allege facts sufficient to show that CSM, CSD, Redpath and/or Bozora were each in control of Crossroad, such that they could even arguably owe fiduciary duties to Paramount's limited partners. As such, Count VIII should be dismissed, with prejudice.

Moreover, to the extent plaintiffs – investors in the Paramount limited partnerships – are suing CSM, CSD, Redpath and/or Bozora as co-partners or persons who are alleged to control the partnership or the general partner, they lack standing to do so individually. "To determine whether limited partners have standing to bring an action directly or whether they must bring it derivatively, the court must analyze the alleged injury to see if it is an individualized harm, separate and distinct from the harm to the limited partnership." *Spiegel v. Besikof*, 1995 WL 697559 *2 (Minn. Ct. App. Nov. 28, 1995), *pet. for rev. denied* (Minn. Jan. 25, 1996) (citing *Buckley v. Control Data Corp.*, 923 F.2d 96, 97-98 (8th Cir. 1991)). The injury alleged by plaintiffs resulted from Paramount's, Crossroad's and/or Lawton's mismanagement or fraud concerning the partnerships' investment assets. This did not cause a separate and distinct injury to each limited partner investor, but rather was an injury suffered, if at all, by the partnership as a whole. Therefore, the breach of "partner fiduciary duty" claim must be dismissed for lack of standing.

## VIII.   PLAINTIFFS' NEGLIGENCE CLAIMS MUST BE DISMISSED.

Plaintiffs' negligence claim in Count VII falls far short of pleading a plausible claim for negligence against CSM, CSD, Redpath and Bozora. Further, the negligence claim must be dismissed against CSM, Redpath and Bozora as to each plaintiff who, as

described in Section II.B, *infra*, has failed to allege any substantive interaction with these defendants. Absent such interaction, plaintiffs clearly fail to satisfy the duty element of a negligence claim.

The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of duty was the proximate cause of the injury. *Anderson v. State Dep't of Natural Res.*, 693 N.W.2d 181, 186 n. 1 (Minn. 2005). "Duty in a negligence case may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Minneapolis Employees Retirement Fund v. Allison-Williams Co.*, 519 N.W.2d 176, 182 (Minn. 1994). "Where a party has no duty, there can be no breach." *Safeco Ins. Co. of America v. Dain Bosworth Inc.*, 531 N.W.2d 867, 873 (Minn. Ct. App. 1995) (citation omitted). The existence of a duty is generally a question of law. *Anderson*, 693 N.W.2d at 186.

Here, as discussed in Sections II and III, *infra*, plaintiffs have failed to allege in other than conclusory fashion the duty of care supposedly owed to them by CSM, CSD, Redpath and Bozora, how these defendants supposedly breached any such duty and, most importantly, that the alleged breach was the proximate cause of their losses. The proximate cause analysis in connection with the negligence claim is no different than the "loss causation" analysis for the Section 10(b) claim. *See Schaaf*, 517 F.3d at 550 (loss causation "corresponds to the common law's requirement of proximate causation.") (citation omitted). Plaintiffs' Complaint is devoid of any allegation that any sales activities by these defendants – as opposed to Lawton's, Crossroad's and/or Paramount's

35

fraud – were the proximate cause of their loss. As such, under *Twombly* and *Iqbal*, plaintiffs have failed to state a viable claim for negligence.

Moreover, there are very few allegations of any interaction with plaintiffs on the part of defendants CSM, Redpath and Bozora, let alone interaction that would rise to the level of establishing a duty of care.  As discussed in Section II.B *infra*, no plaintiff claims to have had serious interaction with CSM, or to explain what duty CSM supposedly owed to plaintiffs.  Likewise, the sole allegation of participation by Redpath in discussions concerning Paramount limited partnership interest is in paragraph 27(q) of the Complaint concerning plaintiff Peterson, who "believes" he discussed Paramount with Redpath and Bozora. Only Plaintiff DeHaven pleads facts sufficient to show that that Bozora discussed with her the purchase of Paramount limited partnership interests.  Under these circumstances, the negligence claims must be dismissed, with prejudice.

IX.   **PLAINTIFFS' CLAIM FOR PUNITIVE DAMAGES MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AND FAILURE TO COMPLY WITH STATUTORY PREREQUISITES.**

Plaintiffs have improperly pled in the *ad damnum* clause of their Complaint (Compl. p. 70) a claim for punitive damages against all defendants.  Under Minn. Stat. § 549.191, a plaintiff may not claim entitlement to punitive damages in the initial complaint. Rather, after filing the suit the party must make a motion to amend the Complaint to seek punitive damages.  *Id.*  In the Federal courts in this District, the pleading of punitive damages claims under causes of action premised upon Minnesota law must conform to the Minnesota statutory sections addressing punitive damages. *Hern v. Bankers Life Cas. Co.*, 133 F. Supp.2d 1130, 1135 (D. Minn. 2001).  Because

plaintiffs have failed to comply with these prerequisites to pursuit of punitive damages,

their claims for punitive damages against CSM, CSD, Redpath and Bozora must be

dismissed.

**<u>CONCLUSION</u>**

Based upon all of the foregoing, defendants CSM, CSD, Redpath and Bozora

respectfully request that their motion to dismiss be granted.


Dated:  October 23, 2009                    ANTHONY OSTLUND
                                            BAER &  LOUWAGIE P.A.


                                            By:  _/s/ *Steven M. Phillips*_____
                                                  Joseph W. Anthony (#2872)
                                                  Steven M. Phillips (#177659)
                                            90 South Seventh Street
                                            Suite 3600
                                            Minneapolis, MN  55402
                                            (612) 349-6969

                                            ATTORNEYS FOR DEFENDANTS CAPITAL
                                            SOLUTIONS MANAGEMENT, LP, CAPITAL
                                            SOLUTIONS DISTRIBUTORS, LLC,
                                            TIMOTHY R. REDPATH AND MICHAEL W.
                                            BOZORA