# PARAMOUNT PARTNERS, L.P.
### (a Delaware limited partnership)

## FOURTH AMENDED AND RESTATED
## LIMITED PARTNERSHIP AGREEMENT

The limited partnership interests to which this agreement relates have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state. The interests are being offered pursuant to exemptions provided by Section 4(2) of the Securities Act, Regulation D thereunder, certain state securities laws and certain rules and regulations promulgated pursuant thereto. The limited partnership interests may not be transferred in the absence of an effective registration statement under the Securities Act and any applicable state securities laws or (unless waived by the General Partner in its sole discretion) an opinion of counsel acceptable to the General Partner that such registration is not required. Transferability of the limited partnership interests is further restricted by the terms of this Limited Partnership Agreement. The limited partnership interests have not been recommended or approved by the Securities and Exchange Commission or any state regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of this offering or the accuracy or adequacy of this memorandum. Any representation to the contrary is a criminal offense.

EXHIBIT

1

# TABLE OF CONTENTS

**Page**

ARTICLE 1  NAME, CHARACTER, AND PRINCIPAL OFFICE OF PARTNERSHIP ............ 1
  1.1  Continuation ............................................................................................... 1
  1.2  Name ........................................................................................................... 2
  1.3  Purpose ....................................................................................................... 2
  1.4  Principal Office .......................................................................................... 2
  1.5  Registered Agent And Office ..................................................................... 2
ARTICLE 2  CERTAIN DEFINITIONS ................................................................................ 2
ARTICLE 3  TERM AND TERMINATION OF THE PARTNERSHIP ............................. 5
  3.1  Term ............................................................................................................ 5
  3.2  Events Affecting a Limited Partner ........................................................... 5
ARTICLE 4  NAME AND ADMISSION OF PARTNERS ................................................... 5
  4.1  Name And Address ..................................................................................... 5
  4.2  Admission Of Additional Partners ............................................................ 5
ARTICLE 5  CAPITAL CONTRIBUTIONS ........................................................................ 5
  5.1  Capital Contributions of Limited Partners ............................................... 5
  5.2  Capital Contribution of the General Partner ............................................ 5
  5.3  Effective Date of Capital Contributions. .................................................. 5
ARTICLE 6  CAPITAL ACCOUNTS; ALLOCATIONS DISTRIBUTIONS ..................... 6
  6.1  Capital Accounts ....................................................................................... 6
  6.2  Allocation of Net Profits and Net Losses .................................................. 7
  6.3  Performance Allocation .............................................................................. 7
  6.4  Income Tax Allocations .............................................................................. 8
  6.5  Distributions ............................................................................................... 8
ARTICLE 7  MANAGEMENT FEE; EXPENSES ................................................................ 8
  7.1  Management Fee ......................................................................................... 8
  7.2  Expenses ...................................................................................................... 9
  7.3  Sales Fee ...................................................................................................... 10
ARTICLE 8  WITHDRAWALS BY THE PARTNERS ....................................................... 10
  8.1  Interest ........................................................................................................ 10
  8.2  Withdrawals by the Partners ..................................................................... 10
  8.3  Partners' Obligation to Repay or Restore. ............................................... 10
  8.4  Permitted Withdrawals ............................................................................. 10
  8.5  Mandatory Withdrawals ............................................................................ 11
  8.6  Withdrawal Proceeds In Cash or In Kind ................................................ 11
ARTICLE 9  MANAGEMENT, DUTIES, AND RESTRICTIONS .................................... 12
  9.1  Management ................................................................................................ 12
  9.2  No Control by the Limited Partners .......................................................... 12
  9.3  Other Activities of the General Partner and its Affiliates ........................ 12
ARTICLE 10  ASSIGNMENT OR TRANSFER OF PARTNERSHIP INTERESTS ......... 12
  10.1  Transfer of General Partnership Interest ............................................... 12
  10.2  Transfer of Limited Partnership Interest ............................................... 12
  10.3  Substitution as a Limited Partner .......................................................... 12
  10.4  Expenses of Transfer ............................................................................... 13
ARTICLE 11  DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP .............. 13
  11.1  Dissolution .............................................................................................. 13
  11.2  Winding Up Procedures .......................................................................... 13

CT00104

11.3    Payments in Liquidation ............................................................................. 13
ARTICLE 12  FINANCIAL ACCOUNTING REPORTS, MEETINGS AND VOTING ................. 14
12.1    Financial Accounting; Fiscal Year ............................................................ 14
12.2    Supervision of Books and Records ............................................................ 14
12.3    Reports to Partners ..................................................................................... 14
12.4    Tax Returns and Information ...................................................................... 14
12.5    Tax Matters Partner .................................................................................... 14
12.6    Voting .......................................................................................................... 14
ARTICLE 13  DETERMINATION OF NET ASSET VALUE ................................................. 15
13.1    Net Asset Value ........................................................................................... 15
13.2.   Valuation of Assets ..................................................................................... 15
13.3.   Temporary Suspension of Net Asset Value Calculation ........................... 16
ARTICLE 14  OTHER PROVISIONS ..................................................................................... 16
14.1    Governing Law ............................................................................................ 16
14.2    Limitation of Liability of the Limited Partners ........................................ 17
14.3    Exculpation ................................................................................................. 17
14.4    Indemnification ........................................................................................... 17
14.5    Execution ..................................................................................................... 17
14.6    Other Instruments and Acts ....................................................................... 17
14.7    Binding Agreement ..................................................................................... 17
14.8    Notices ......................................................................................................... 18
14.9    Amendment; Waiver .................................................................................... 18
14.10   Entire Agreement ........................................................................................ 18
14.11   Titles; Subtitles ........................................................................................... 18

CT00105

# PARAMOUNT PARTNERS, L.P.
## (a Delaware limited partnership)

### FOURTH AMENDED AND RESTATED
### LIMITED PARTNERSHIP AGREEMENT

THIS FOURTH AMENDED AND RESTATED AGREEMENT OF Paramount Partners, L.P., a Delaware limited partnership (the "Partnership") is made and entered into as of May 23, 2007 by and among Crossroad Capital Management, LLC, a Delaware limited liability company (the "General Partner"), and each of the persons named as limited partners in Schedule A hereto or each of the persons who execute a counterpart of this Agreement, personally or by attorney-in-fact, as a limited partner (collectively, the "Limited Partners") (the General Partner and the Limited Partners are collectively referred to as the "Partners").

### WITNESSETH

WHEREAS, the General Partner has heretofore formed the Partnership and has entered into a Limited Partnership Agreement dated as of November 1, 2001 (the "Original Partnership Agreement") with the initial Limited Partners; and

WHEREAS, the Original Partnership Agreement was amended and restated as of July 11, 2003 (the "First Amended and Restated Partnership Agreement"); and

WHEREAS, the First Amended and Restated Partnership Agreement was amended and restated as of September 1, 2003 (the "Second Amended and Restated Partnership Agreement"); and

WHEREAS, the Second Amended and Restated Partnership Agreement was amended and restated as of June 15, 2004 (the "Third Amended and Restated Partnership Agreement"); and

WHEREAS, the parties hereto desire to continue the Partnership under the laws of the State of Delaware for the purposes set forth below.

NOW, THEREFORE, the parties hereto hereby further amend and restate the Third Amended and Restated Partnership Agreement as follows:

### ARTICLE 1

#### NAME, CHARACTER, AND PRINCIPAL OFFICE OF PARTNERSHIP

**1.1    Continuation.**

(a)    The Partners agree to continue the Partnership in accordance with the terms and conditions of this Agreement (which amends, restates and supersedes the Original Partnership Agreement).

(b)    The name, address and Capital Contribution of each Limited Partner are set forth on Schedule A hereto, as amended.

CT00106

**1.2    Name.**  The name of the Partnership is Paramount Partners, L.P.  The affairs of the Partnership shall be conducted under the Partnership name or such other name as the General Partner may, in its discretion, determine.

**1.3    Purpose.**  The Partnership is organized for the following purposes:

(a)    to invest and trade, on margin or otherwise, in common stocks, preferred stocks, bonds, notes, debentures and other equity and debt instruments (whether subordinated, convertible or otherwise), and other securities and financial instruments of whatever kind or nature of any domestic or foreign corporation, partnership, government or entity whatsoever, such investment and trading to include acquisition or control of any entity, in rights and options relating thereto, including put and call options or any combination thereof written by the Partnership or by others, and in currencies, futures, forward, spot, and physical contracts or options, or any combination thereof (all such items being herein individually referred to as a "Security" and collectively referred to as "Securities"), to sell Securities short and cover such sales, to lend funds or properties of the Partnership, and to invest and trade in assets contributed to the Partnership; and

(b)    to enter into, make and perform all contracts and other undertakings, and engage in all activities and take all such actions, as may be necessary or advisable for carrying out the purposes of the Partnership.

**1.4    Principal Office.**  The principal office of the Partnership is 130 West Lake Street, Wayzata, MN 55391 or such other place or places within the United States as the General Partner may from time to time designate by written notice to the Limited Partners.

**1.5    Registered Agent And Office**  The Partnership's registered office in Delaware, and the name of the registered agent for service of process' shall be The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19805, or such other place or persons as the General Partner may from time to time designate.

## ARTICLE 2

### CERTAIN DEFINITIONS

For the purposes hereof:

"Affiliate" of any person means any person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with the person specified.

"Agreement" means this Limited Partnership Agreement of Paramount Partners, L.P., a Delaware limited partnership.

"Allocable Management Fees" as to any Limited Partner means such Limited Partner's share of Management Fees, as determined in accordance with Section 7.1(a).

"Allocable Net Losses" as to any Partner means such Partner's share of Net Losses for any Fiscal Period determined in accordance with Section 6.2 and such Partner's Allocable Management Fee for such Fiscal Period.

-2-

CT00107

"Allocable Net Profits" as to any Partner means such Partner's share of the Net Profits for any Fiscal Period determined in accordance with Section 6.2, net of such Partner's Allocable Management Fee for such Fiscal Period. If a Partner's Allocable Management Fees for a Fiscal Period exceeds such Partner's share of Net Profits for such Fiscal Period, the amount of such excess shall be an Allocable Net Loss for such Fiscal Period.

"Capital Account" of each Partner means the capital account established for each Partner pursuant to the terms of Section 6.1 hereof.

"Capital Contribution" means the total amount of money and/or the agreed-upon fair market value of property contributed to the Partnership by any Partner.

"Certificate of Limited Partnership" means the certificate of limited partnership of the Partnership, as amended from time to time.

"Code" means the Internal Revenue Code of 1986, as amended.

"Delaware Act" means the Delaware Revised Uniform Limited Partnership Act of 1983, as amended.

"Excluded Securities" has the meaning given to it in Section 6.1(b).

"Fiscal Period" means a calendar month, except that the first Fiscal Period shall commence on the Formation Date and shall end on the last day of the calendar month in which the Formation Date occurs, and the final Fiscal Period shall end on the date the Partnership is terminated, regardless whether such date is the last day of a calendar month.

"Formation Date" shall have the meaning set forth in Section 3.1.

"General Partner" shall mean Crossroad Capital Management, LLC, a Delaware limited liability company, or any successor to such firm appointed by the Limited Partners in accordance with Section 10.1.

"Limited Partners" shall mean each person who executes a copy of this Agreement, either personally or by attorney-in-fact, as a limited partner and who is admitted to the Partnership as a limited partner pursuant to the terms of this Agreement.

"Loss Carryforward" shall have the meaning set forth in Section 6.3(c).

"Majority in Interest" of the Limited Partners means Limited Partners (excluding the General Partner and its Affiliates) whose collective Partnership Percentages exceed 50% of the Partnership Percentages of all such Limited Partners.

"Management Fee" shall have the meaning set forth in Section 7.1.

"Negative Total Return" shall mean, with respect to any Fiscal Period, the sum of the Allocable Net Loss (if any) for such Fiscal Period and the Loss Carryforward (if any) from the prior Fiscal Period, or, if applicable, the amount by which the Allocable Net Profit for such Fiscal Period is exceeded by the Loss Carryforward, if any, from the prior Fiscal Period.

CT00108

"Net Asset Value" means, as of any determination date, the excess of (a) the fair market value of all Securities and other assets held by the Partnership as of such date over (b) the liabilities of the Partnership, determined in accordance with the provisions of Article 13.

"Net Losses" means, for any Fiscal Period, the excess of the Net Asset Value of the Partnership as of the opening of business on the first day of the Fiscal Period, after adding any additional Capital Contributions made as of the beginning of such Fiscal Period, over the Net Asset Value of the Partnership at the close of business on the last day of such Fiscal Period (determined without regard to any Management Fees attributable to such Fiscal Period), prior to deducting any capital withdrawals to be effected as of such date or other distributions being made with respect to such Fiscal Period.

"Net Profits" means, for any Fiscal Period, the excess of the Net Asset Value of the Partnership at the close of business on the last day of the Fiscal Period (determined without regard to any Management Fees attributable to such Fiscal Period), prior to deducting any capital withdrawals to be effected as of such date or other distributions being made with respect to such Fiscal Period, over the Net Asset Value of the Partnership as of the opening of business on the first day of such Fiscal Period, after adding any additional Capital Contributions made as of the beginning of such Fiscal Period.

"Partnership Percentage" of any Partner during any Fiscal Period means the percentage determined by dividing the amount of such Partner's Capital Account balance (or Subaccount balance, as appropriate) by the sum of the Capital Account balances (or Subaccount balances) of all Partners as of the beginning of such Fiscal Period after, in each case, adding any additional Capital Contributions made at the beginning of such Fiscal Period.

"Performance Allocation" shall have the meaning set forth in Section 6.3.

"Performance Period" means a calendar year; *provided, however*, that the initial Performance Period for a Limited Partner shall commence with such Limited Partner's initial Capital Contribution to the Partnership and shall end on the last day of the calendar year in which such initial Capital Contribution was made, and the final Performance Period for a Limited Partner shall commence on the first day following the last day of the immediately prior Performance Period and shall end on the date the Limited Partner withdraws his or her entire Capital Account balance.

"Positive Total Return" shall mean, with respect to any Fiscal Period, the excess of the Allocable Net Profit (if any) for such Fiscal Period over the Loss Carryforward (if any) from the prior Fiscal Period.

"Restricted Partner" has the meaning given to it in Section 6.1(b).

"Security" and "Securities" each shall have the meaning set forth in Section 1.2(a).

"Securities Act" means the Securities Act of 1933, as amended.

"Subaccount" has the meaning given to it in Section 6.1(b).

"Total Return" as to any Fiscal Period shall mean the Positive Total Return or Negative Total Return, as applicable, for such Fiscal Period.

"Treasury Regulations" means the Income Tax Regulations promulgated under the Code, as such Regulations may be amended from time to time (including corresponding provisions of succeeding Regulations).

-4-

CT00109

## ARTICLE 3

### TERM AND TERMINATION OF THE PARTNERSHIP

**3.1    Term.** The term of the Partnership shall commence on the later of the date hereof or the date of the filing of the Certificate of Limited Partnership of the Partnership with the office of the Secretary of State of the State of Delaware (the "Formation Date"). Unless the Partnership is dissolved earlier pursuant to Section 11.1, the term of the Partnership shall be perpetual.

**3.2    Events Affecting a Limited Partner.** The death, temporary or permanent incapacity, insanity, incompetency, bankruptcy, liquidation, dissolution, reorganization, merger, sale of all or substantially all of the stock or assets of, or other change in the ownership or nature of a Limited Partner shall not dissolve the Partnership.

## ARTICLE 4

### NAME AND ADMISSION OF PARTNERS

**4.1    Name And Address.** The name and address of each Partner shall be maintained on the books and records of the Partnership.

**4.2    Admission Of Additional Partners.**

(a)    The General Partner may admit one or more additional general partners into the Partnership under such terms and conditions as the General Partner shall determine, but only after giving 120 days' notice to each Partner, which notice shall disclose the name of the new general partner and all of the terms and conditions of its admission to the Partnership.

(b)    The initial Limited Partners will be admitted to the Partnership as of the date of this Agreement. Thereafter, additional Limited Partners may be admitted to the Partnership, upon the prior consent of the General Partner, effective at such time as may be permitted by the General Partner, subject to such terms and conditions as the General Partner may in its sole discretion determine.

(c)    Each additional person admitted as a Partner shall execute and deliver to the Partnership a counterpart of this Agreement either in person or by attorney-in-fact.

## ARTICLE 5

### CAPITAL CONTRIBUTIONS

**5.1    Capital Contributions of Limited Partners.** The General Partner may offer and sell limited partnership interests in the Partnership upon such terms and conditions as are permitted in this Agreement or otherwise as the General Partner, in its sole discretion, determines. Subscriptions for partnership interests are not open to the general public, are subject to prior consent of the General Partner, and may be rejected in whole or in part for any reason.

**5.2    Capital Contribution of the General Partner.** The General Partner may, but shall not be required to, contribute to the capital of the Partnership.

-5-

CT00110

**5.3    Effective Date of Capital Contributions.** Unless otherwise determined by the General Partner in its sole discretion, the effective date of new Capital Contributions, and if applicable the admission of additional Limited Partners, shall be the first day of the first Fiscal Period beginning on or after the receipt thereof by the Partnership.

## ARTICLE 6

## CAPITAL ACCOUNTS; ALLOCATIONS DISTRIBUTIONS

**6.1    Capital Accounts.**

(a)    A capital account (a "Capital Account") shall be maintained on the Partnership's books for each Partner. Each such Capital Account shall be credited with such Partner's (i) Capital Contributions, (ii) Allocable Net Profits, and (iii) Performance Allocations (in the case of the General Partner only), and shall be debited with such Partner's (iv) Allocable Net Losses, (v) Performance Allocations (in the case of the Limited Partners only), (vi) the amount of money or the fair market value of property distributed to such Partner by the Partnership, and (vii) capital withdrawals, and shall otherwise appropriately reflect transactions of the Partnership and the Partners consistent with the Partnership's method of accounting. No loan made by a Partner to the Partnership shall constitute a Capital Contribution for any purposes. No interest shall be paid on any Capital Contribution to the Partnership. If any partnership interest is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent it relates to the transferred partnership interest.

(b)    The General Partner may, in its discretion, establish on the books of the Company one or more subaccounts (the "Subaccounts") to either eliminate participation by a Partner (a "Restricted Partner") in the income or loss from a particular Security (an "Excluded Security" and collectively the "Excluded Securities") or to employ carve-out procedures to comply with the "de minimis" exemption of NASD Rule 2790. If Subaccounts are established by the General Partner, during any Fiscal Period in which Restricted Partners beneficially hold, on an aggregate basis, more than 10% of the Capital Accounts of the Partnership, all Restricted Partners shall, in the aggregate, be limited to a 10% (or such lesser percentage as the General Partner may determine from time to time in its discretion) beneficial interest in the Subaccount, and all Partners other than Restricted Partners (each a "Non-Restricted Partner") shall, in the aggregate, hold the remaining percentage of the beneficial interests in the Subaccount, with each Investor's beneficial interest in the Subaccount calculated as follows:

(i)    The percentage of each Restricted Partner's beneficial interest in the Subaccount shall be equal to the product of (i) 10% (or such lesser percentage as the General Partner has determined) *multiplied by* (ii) the proportion which (A) such Restricted Partner's Capital Account as of the beginning of the Fiscal Period bears to (B) the sum of the Capital Accounts of all Restricted Partners as of the beginning of such Fiscal Period; and

(ii)    The percentage of each Non-Restricted Partner's beneficial interest in the Subaccount shall be equal to the product of (i) the remaining percentage (after allocations of the Subaccount pursuant to Restricted Partners pursuant to 6(b)(i) above) *multiplied by* (ii) the proportion which (A) such Non-Restricted Partner's Capital Account as of the beginning of the Fiscal Period bears to (B) the sum of the Capital Accounts of all such Non-Restricted Partner's as of the beginning of such Fiscal Period.

(c)    As of the last day of each Fiscal Period, or such other time in the General Partner's discretion, in which a particular investment or investments are or were purchased or held in a

-6-

Subaccount, any profits or losses during such Fiscal Period with respect to the Subaccount shall be allocated to Partner's Capital Accounts in accordance with their beneficial interests in the Subaccount for such Fiscal Period. For avoidance of doubt, any profits or losses related to a Subaccount shall be included in the calculation of any Performance Allocation or Loss Carryforward.

(d)     In the General Partner's discretion, a Subaccount may be eliminated and the proceeds of sales in a Subaccount or securities held in the Subaccount that are no longer restricted by NASD Rule 2790 may be transferred back to the Capital Account of the Partnership, provided, however, that any profits or losses with respect to Subaccount shall be allocated as described above.

(e)     The General Partner is hereby authorized to make such other allocations or modifications to the allocations described in this Section 6.1 to the extent the General Partner in its reasonable discretion deems it necessary or appropriate to comply with NASD Rule 2790 or otherwise to treat the Partners fairly and equitably with respect to new issues.

**6.2     Allocation of Net Profits and Net Losses.** Profits and losses of the Partnership shall be allocated among the Partners as follows:

(a)     Net Profits (exclusive of Net Profits attributable to Excluded Securities) and Net Losses (exclusive of Net Losses attributable to Excluded Securities) shall be allocated among all Partners in proportion to their respective Partnership Percentages.

(b)     Net Profits attributable to Excluded Securities and Net Losses attributable to Excluded Securities shall be allocated among all Partners that are not Restricted Partners in proportion to their respective Partnership Percentages based on their respective Subaccount balances.

(c)     Each Limited Partner's Performance Allocation, if any, shall be determined and allocated in accordance with Section 6.3.

(d)     Each Limited Partner's Capital Account shall be charged (and the General Partner paid), an amount equal to such Limited Partner's Allocable Management Fee as of the last business day of each Fiscal Period prior to any withdrawals by such Limited Partner as of such date. The Management Fee shall be treated as an expense of the Partnership that is specially allocated among the Limited Partners as provided in Section 7.1 after each Limited Partner's share of Net Profits or Net Losses has been determined for purposes of this Section 6.2.

**6.3     Performance Allocation.**

(a)     A performance allocation (the "Performance Allocation") shall be determined as of the last business day of each Performance Period for each Limited Partner (except for Limited Partners, if any, that also are the General Partner or any of its members, governors, directors, officers or Affiliates). The Performance Allocation for each Performance Period shall equal 25% of any Positive Total Return for such Performance Period. The Performance Allocation, as calculated pursuant to this Section 6.3(a), shall be allocated to the General Partner and charged against each applicable Limited Partner, as of the last day of each Performance Period prior to any withdrawals by such Limited Partner as of such date.

(b)     Except as otherwise provided in this paragraph (b), any Negative Total Return for a Performance Period shall constitute a "Loss Carryforward" and shall be utilized in calculating Positive Total Return or Negative Total Return (as the case may be) in the immediately ensuing Performance Period. If a Limited Partner withdraws any portion of its Interest during the Performance

-7-

CT00112

Period to which a Loss Carryforward relates or during the ensuing Performance Period when the Loss Carryforward will be utilized in calculating Positive Total Return or Negative Total Return, such Loss Carryforward shall be reduced proportionately at each time such a withdrawal is made.

**6.4    Income Tax Allocations.**

(a)    For each Fiscal Period, items of income, gain, loss, deduction or credit shall be allocated solely for income tax purposes among the Partners in any manner, as reasonably determined by the General Partner, that reflects equitably amounts credited or debited to each Partner's Capital Account for the current and prior Fiscal Periods. In making such determination, the General Partner shall be guided by the rules and principles of Sections 704(b) and 704(c) of the Code and the regulations promulgated thereunder, including Treasury Regulation Section 1.704-3(c)(3).

(b)    Notwithstanding Section 6.4(a), if a Partner withdraws all or a portion of its Capital Account balance from the Partnership, the General Partner in its sole discretion may make a special allocation to the withdrawing Partner for federal income tax purposes of items of income, gain, loss or deduction recognized by the Partnership in such a manner as will reduce the amount, if any, by which the amount of the withdrawal differs from the federal income tax basis of the appropriate portion of such Limited Partner's interest in the Partnership before such allocation.

**6.5    Distributions.** The General Partner shall determine from time to time whether to make any distributions to the Partners prior to the liquidation of the Partnership. All distributions (other than distributions in respect of a withdrawal pursuant to Article 8 and distributions intended to assist Partners in meeting their tax obligations associated with their investment in the Partnership) will be made to Partners in proportion to each Partner's Capital Account balance. Distributions designated by the General Partner as intending to assist Partners in meeting their tax obligations associated with their investment in the Partnership shall be made to Partners in proportion to their allocated shares of the Partnership's net taxable income and gains. No Partner shall be able to demand or receive property other than cash, except in the General Partner's discretion. The General Partner is authorized to withhold from any distribution, or with respect to allocations, and to pay over to any applicable federal, state or local government, any amounts required to be withheld pursuant to applicable law and shall allocate such amounts to those Partners with respect to which such amounts were withheld.

## ARTICLE 7

### MANAGEMENT FEE; EXPENSES

**7.1    Management Fee.**

(a)    The Partnership shall pay the General Partner a management fee (the "Management Fee"), which shall be calculated and payable annually in advance within 5 business days after the first day of each calendar year. The Management Fee shall be equal to 1% per annum of the Partnership's Net Asset Value as of the first business day of each calendar year (excluding any portion of the Fund's Net Asset Value that is attributable to General Partner or to any Limited Partner that is a member, officer, employee or Affiliate of the General Partner). No portion of the Management Fee shall be charged to or assessed against the General Partner or any Limited Partner that is a member, officer, employee or Affiliate of the General Partner. The portion of the Management Fee allocable to each applicable Limited Partner (such Limited Partner's "Allocable Management Fee") shall be equal to the total Management Fee times a fraction the numerator of which is such Limited Partner's Capital Account balance as of the first business day of the Fiscal Period (including any Capital Contributions effective as of such date) and the denominator of which is the sum of the Capital Account balances of all applicable

-8-

CT00113

Limited Partners on such date (including any Capital Contributions effective as of such date). The General Partner, in its sole discretion, may adjust the total Management Fee to reflect a higher or lower Allocable Management Fee with respect to certain Limited Partners upon their admission to the Partnership. The Management Fee will be prorated for periods of less than a full calendar month.

(b)     In the event that the General Partner accepts a Capital Contribution on a day other than the first day of a calendar year, the Fund will pay the General Partner a prorated management fee with respect to such Capital Contribution. However, in the event that the General Partner, in its sole discretion, permits a Limited Partner to effect a withdrawal on a date other than the last day of a calendar year, the General Partner shall not be obligated to refund any portion of the management fees paid with respect to such withdrawn amount.

### 7.2    Expenses

(a)     The General Partner shall, at its own expense, furnish all office facilities, equipment and personnel necessary to discharge its responsibilities and duties under this Agreement and shall pay travel expenses incurred by its employees and agents in the performance of its duties hereunder. However, to the extent that the General Partner determines that brokers and dealers can deliver best execution on portfolio transactions for the Partnership, the General Partner is authorized to select from among such brokers and dealers based in part on their willingness to provide or pay for research, systems and other services and matters that the General Partner would otherwise be responsible for providing at its own expense. The General Partner may receive any such "soft dollar" payments, reimbursements or benefits (including payments, reimbursements and benefits that are not included within the "safe harbor" of Section 28(e) of the Securities Exchange Act of 1934) without any obligation to account for any such payments, reimbursements or benefits to the Partnership or to any Limited Partner. The General Partner shall not be responsible for the payment of any Partnership expenses, including but not limited to Partnership expenses described in Section 7.2(b), and the General Partner shall be entitled to prompt reimbursement out of Partnership assets for any of such expenses it incurs on the Partnership's behalf.

(b)     In addition to the Management Fee, the Partnership shall pay all its costs and expenses, including, but not limited to:

(i)     all costs and expenses in connection with purchasing, holding, selling or exchanging securities or other assets (whether or not ultimately consummated), including, but not limited to, brokerage fees, private placement fees and finder's fees, interest on borrowed money, real or personal property taxes on investments, costs and expenses in connection with the registration of investments under applicable securities laws, and related legal, accounting and other fees and expenses;

(ii)     all fees and expenses in connection with the maintenance of bank, brokerage or custodial accounts;

(iii)     all legal, accounting, auditing, bookkeeping, tax return preparation and consulting fees and expenses;

(iv)     all costs and expenses in connection with research analysts engaged or employed by the General Partner to provide services to the Partnership;

(v)     all costs and expenses, including travel costs and expenses, incurred by the General Partner on behalf of the Partnership in connection with performing due diligence on potential Partnership investments;

-9-

CT00114

(vi)     all liability and other insurance premiums for insurance in which the Partnership is a named beneficiary;

(vii)     all expenses in connection with meetings of and communications with Partners;

(viii)     all taxes applicable to the Partnership on account of its operations;

(ix)     all costs and expenses arising out of the Partnership's indemnification obligations pursuant to this Agreement;

(x)     all syndication and organizational costs, fees, and expenses in connection with the formation and organization of the Partnership, including without limitation legal and accounting fees and expenses incident thereto; and

(xi)     all costs, fees, and expenses in connection with the liquidation of the Partnership and its assets pursuant to Article 11 hereof.

7.3     **Sales Fee.** The General Partner may, in its sole discretion, charge certain Limited Partners an annual sales fee in advance equal to 1% of such Limited Partner's Capital Account, commencing on the effective date of such Limited Partner's initial subscription, and on each anniversary date of the initial subscription thereafter. In addition, the General Partner may, in its sole discretion, agree to pay a sales agent a portion of its Performance Allocation, if any, in connection with successful referrals of Limited Partners to the General Partner.

## ARTICLE 8

### WITHDRAWALS BY THE PARTNERS

8.1     **Interest.** No interest shall be paid to any Partner on account of its interest in the capital of or on account of its investment in the Partnership.

8.2     **Withdrawals by the Partners.** No Partner may withdraw any amount from its Capital Account unless such withdrawal is made pursuant to this Article 8 or, in the event of liquidation of the Partnership, Article 11.

8.3     **Partners' Obligation to Repay or Restore.** Except as required by law or the terms of this Agreement, no Partner shall be obligated at any time to repay or restore to the Partnership all or any part of any Capital Account withdrawal effected in accordance with the terms of this Article 8 or any distribution made to it from the Partnership in accordance with the terms of Article 11.

CT00115

### 8.4    Permitted Withdrawals.

(a)        Subject to the limitations contained in this Section 8.4, each Limited Partner may withdraw all or any part of its Capital Account (subject to such minimum withdrawal requirements as may be established from time to time by the General Partner) effective on the last day of each calendar year after allocations of Net Profits or Net Losses as of such date.  Any Limited Partner desiring to make a withdrawal from its Capital Account shall, no less than 60 days before the date on which such withdrawal is to be made, give written notice to the Partnership of such Limited Partner's intention to make such withdrawal and the amount of such withdrawal (or the manner in which the amount of such withdrawal is to be determined); provided, however, that the General Partner, in its sole discretion, may waive such notice requirement in the event of extreme hardship to the withdrawing Limited Partner.

(b)        The General Partner may withdraw all or any part of its Capital Account as of the last day of each Fiscal Period after allocations of Net Profits or Net Losses as of such date.

(c)        Except as provided in Section 8.4(f), withdrawal proceeds shall be sent to the applicable Limited Partner within 45 business days following the effective date of such withdrawal.

(d)        No Limited Partner may withdraw any portion of its Capital Account prior to the first anniversary of such Limited Partner's initial Capital Contribution to the Partnership.  If a Limited Partner withdraws his or her entire Capital Account balance (a "Complete Withdrawal"), any further Capital Contribution thereafter shall be deemed such Limited Partner's initial Capital Contribution for purposes of this subsection (d).

(e)        No Limited Partner may effect a withdraw from its Capital Account, other than with respect to a Complete Withdrawal, which reduces such Limited Partner's Capital Account balance below minimum initial Capital Contribution amounts as may be established by the General Partner in its sole discretion; provided, however, that the General Partner may, in its sole discretion, waive minimum Capital Account balances with respect to certain Limited Partners.

(f)        The General Partner may, in its sole discretion, suspend the right of withdrawal or postpone the date of payment of withdrawal proceeds for any period during which (i) any stock exchange or over-the-counter market is closed or trading on such exchange or market is restricted or suspended, (ii) there exists a state of affairs such that it is not practicable or is seriously prejudicial to the Limited Partners or the Partnership to dispose of the Partnership's assets, or (iii) a breakdown occurs in any of the means normally employed in ascertaining the value of Partnership assets or when for any other reason the value of such assets cannot be reasonably ascertained.

(g)        If the General Partner determines that liquidation of Partnership investments or borrowing to fund withdrawals would have adverse consequences to the remaining Partners, the General Partner may, upon written notice to all affected Limited Partners, defer any or all withdrawal requests.  Any unsatisfied withdrawal requests shall be deferred (subject to such opportunity, if any, as the General Partner may offer to affected Limited Partners to revoke such requests) to the first calendar quarter-end as of which such withdrawals can, in the General Partner's determination, be made effective without adversely affecting the remaining Partners.  All Limited Partner interests subject to deferred withdrawal requests shall continue to be treated for all purposes under this Agreement as if no withdrawal requests relating thereto had been submitted, until the effective date of their deferred withdrawal.  If the General Partner determines that a portion, but not all, of the currently pending withdrawal requests can be processed in due course without adversely affecting the remaining Partners, the requests of all Limited Partners submitting timely withdrawal requests with respect to the Fiscal Period end in question shall be satisfied *pro rata* (based on the amounts requested to be withdrawn).

CT00116

**8.5    Mandatory Withdrawals.** The General Partner may require that a Limited Partner withdraw all or a portion of its Capital Account for any reason.

**8.6    Withdrawal Proceeds In Cash or In Kind.**  Capital Account withdrawals from the Partnership shall be in cash or, in the discretion of the General Partner, in securities or other assets selected by the General Partner from the portfolio of the Partnership, or partly in cash and partly in securities and/or other assets, as determined by the General Partner.  If any withdrawal proceeds are paid in securities or other assets, such securities or other assets shall be subject to such conditions and restrictions as the General Partner reasonably determines are legally required or appropriate.

## ARTICLE 9

### MANAGEMENT, DUTIES, AND RESTRICTIONS

**9.1    Management.** Except as otherwise set forth in this Agreement, the General Partner shall have the sole and exclusive right to manage, control, and conduct the affairs of the Partnership and to do any and all acts on behalf of the Partnership (including, but not limited to, exercise of rights to elect to adjust the tax basis of Partnership assets and to revoke such elections and to make such other tax elections as the General Partner shall deem appropriate).

**9.2    No Control by the Limited Partners.** No Limited Partner shall take part in the control or management of the affairs of the Partnership nor shall any Limited Partner have any authority to act for or on behalf of the Partnership except as is specifically permitted by this Agreement.

**9.3    Other Activities of the General Partner and its Affiliates.** Each Partner agrees that neither this Agreement nor any principle of law or equity shall preclude or limit, in any respect, the General Partner and its Affiliates, or any director, governor, shareholder, member, partner, officer or employee of the General Partner and its Affiliates, from engaging in or deriving profit or compensation from any activities or investments, nor give any Limited Partner any right to participate or share in such activities or investments or any profit or compensation derived therefrom.   Except to the extent prohibited by law, the parties hereto hereby waive, and covenant not to sue on the basis of, any law (statutory, common law or otherwise) respecting the rights and obligations of the Partners *inter se* which is or may be inconsistent with this Section 9.3.

## ARTICLE 10

### ASSIGNMENT OR TRANSFER OF PARTNERSHIP INTERESTS

**10.1    Transfer of General Partnership Interest.** The General Partner shall not transfer, assign or subcontract any of its substantive investment advisory duties and responsibilities under this Agreement to any person other than an Affiliate without the consent of a Majority in Interest of the Limited Partners.

**10.2    Transfer of Limited Partnership Interest.**  No Limited Partner shall sell, assign, pledge, gift, mortgage, or otherwise dispose of or transfer its interest in the Partnership without the prior written consent of the General Partner.

**10.3    Substitution as a Limited Partner.**  A transferee of a Limited Partner's interest pursuant to this Article 10 shall become a substituted Limited Partner only with the consent of the

CT00117

General Partner (which consent may be withheld by the General Partner in its sole discretion) and only if such transferee (a) elects to become a substituted Limited Partner, (b) executes, acknowledges and delivers to the Partnership such other instruments as the General Partner may deem necessary or advisable to effect the admission of such transferee as a substituted Limited Partner, including, without limitation, the written acceptance and adoption by such transferee of the provisions of this Agreement, and (c) consents to pay all Partnership expenses incurred in connection with the transfer. No assignment by a Limited Partner of its interest in the Partnership shall release the assignor from its liability to the Partnership, provided that if the assignee is a Limited Partner prior to the transfer or if the assignee becomes a Limited Partner as provided in this Section 10.4, the assignor shall thereupon so be released (in the case of a partial assignment, to the extent of such assignment), provided that the assignee agrees to assume the assignor's liability.

    **10.4   Expenses of Transfer.**  Any costs or expenses (including but not limited to reasonable attorneys' fees) incurred by the Partnership in connection with the transfer of a Partnership interest hereunder shall be borne by the transferring Partner.

**ARTICLE 11**

**DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP**

    **11.1   Dissolution.**  The Partnership shall be dissolved and its affairs wound up upon the earliest to occur of the following events:

        (a)   the withdrawal, removal, bankruptcy, insolvency, or dissolution of all of the General Partners of the Partnership;

        (b)   the election by the General Partner to dissolve the Partnership; or

        (c)   the entry of a decree of judicial dissolution pursuant to Section 17-802 of the Delaware Act.

    **11.2   Winding Up Procedures.**

        (a)   Promptly upon dissolution of the Partnership, the affairs of the Partnership shall be wound up and the Partnership liquidated in accordance with this Section 11.2.  The Partners shall continue to share Net Profits, Net Losses, Management Fees and Performance Allocations during the winding-up process.

        (b)   Upon completion of the winding-up process, the Partnership's remaining assets shall be deemed to have been sold at their fair market values and the resulting Net Profits or Net Losses and Performance Allocations, if applicable, shall be allocated to the Partners in accordance with the provisions of Article 6.

        (c)   Distributions in liquidation may be made in cash or in kind or partly in cash and partly in kind. The General Partner or the liquidator shall determine the most advantageous time for the Partnership to sell investments or to make distributions in kind in connection with the dissolution and liquidation of the Partnership. All cash and each security distributed in kind after the date of dissolution of the Partnership shall be distributed ratably in proportion to the positive Capital Account balances of the Partners, unless such distribution would result in a violation of a law or regulation applicable to a Limited Partner, in which event, upon receipt by the General Partner of notice from such Limited Partner to such effect, the General Partner shall vary the method of distribution, in an equitable manner, so as to

-13-

CT00118

avoid violation of law or regulation (provided such alternative distribution procedure does not prejudice any of the other Partners). Each security so distributed shall be subject to reasonable conditions and restrictions necessary or advisable in order to preserve the value of such Security or for legal reasons.

**11.3   Payments in Liquidation.**   The assets of the Partnership shall be distributed in liquidation of the Partnership in the following order:

(a)   to the creditors of the Partnership, including Partners that are creditors, in the order of priority established by law, either by payment or by establishment of reserves; and

(b)   to the Partners in proportion to the positive balances in their respective Capital Accounts.

## ARTICLE 12

### FINANCIAL ACCOUNTING
### REPORTS, MEETINGS AND VOTING

**12.1   Financial Accounting; Fiscal Year.**   The books and records of the Partnership shall be kept in accordance with the provisions of this Agreement and otherwise in accordance with generally accepted accounting principles and industry standards. The Partnership's fiscal year shall be the calendar year. The General Partner may periodically or from time to time, but shall not be required hereunder to, engage at the Partnership's expense a certified public accounting firm to perform an audit of the Partnership's financial statements and accounts.

**12.2   Supervision of Books and Records.**   Books of account of the business of the Partnership, copies of the Partnership's federal, state and local tax returns for each fiscal year, a list showing the name and address of each Partner, this Agreement and the Partnership's Certificate of Limited Partnership shall be kept under the supervision of the General Partner at the principal office of the Partnership.

**12.3   Reports to Partners.**   The General Partner shall send to the Limited Partners, on or before March 15 of each year, unaudited financial statements for the twelve-month period ending on December 31 of the prior year (including each Partner's Capital Account as adjusted for its allocable share of unrealized gains and losses). In addition, the General Partner shall send to the Limited Partners, within 45 days after the end of each interim fiscal quarter, unaudited financial information relating to the Partnership and its investments.

**12.4   Tax Returns and Information.**   The General Partner shall cause the Partnership's tax return and IRS Form 1065, Schedule K-1, to be prepared and filed on a timely basis and shall use reasonable efforts to deliver to each Partner its Schedule K-1 within 90 days after the close of the Partnership's fiscal year. The Partnership shall upon the request of any Limited Partner promptly furnish to such Limited Partner any information such Limited Partner may require or reasonably request in order to withhold tax or to file tax returns and reports or to furnish tax information to any of its partners.

**12.5   Tax Matters Partner.**   The General Partner shall be the Partnership's tax matters partner under the Code and under any comparable provision of state law. The tax matters partner may employ tax counsel to represent the Partnership in connection with any audit or investigation of the Partnership by the Internal Revenue Service and in connection with all subsequent administrative and judicial proceedings arising out of such audit. If the tax matters partner is required by law or regulation

-14-

CT00119

to incur fees and expenses in connection with tax matters not affecting all the Partners, the tax matters partner may, in its sole discretion, seek reimbursement from those Partners on whose behalf such fees and expenses were incurred.

**12.6    Voting.** Except as specifically set forth in this Agreement and as to events described in Section 17-211 of the Delaware Act, the Limited Partners shall not have any right to vote on any matter relative to the Partnership and its affairs.

## ARTICLE 13

### DETERMINATION OF NET ASSET VALUE

**13.1    Net Asset Value.** The Net Asset Value of the Partnership shall be determined as of the last day of each Fiscal Period (or at such later time as is set forth in Section 13.3, in which case such Net Asset Value shall be deemed for purposes of this Agreement to be as of the last business day of such Fiscal Period). The Net Asset Value of the Partnership as of any such date means the value of the Partnership's assets (determined in accordance with this Article 13) minus its liabilities, determined as of the close of business on that date. For this purpose:

(a)    The Partnership's assets as of any date shall be deemed to include: (i) all cash on hand or on deposit, including any interest accrued thereon; (ii) all bills, demand notes, and accounts receivable (including proceeds of Securities sold but not delivered); (iii) all instruments owned or contracted for by the Partnership; (iv) all stock dividends, cash dividends, and cash distributions receivable by the Partnership (the General Partner may make adjustments with regard to fluctuations in the market value of Securities caused by trading ex-dividend, ex-rights, or by similar practices); (v) all interest accrued on any interest-bearing Securities except to the extent that the same is included or reflected in the valuation of such Securities; (vi) unamortized organization and syndication costs, fees and expenses; (vii) all interests in other partnerships, trusts, mutual funds, and other entities; and (viii) all other assets of every kind and nature, including prepaid expenses.

(b)    The liabilities of the Partnership as of any date shall include: (i) all outstanding loans, bills and accounts payable; (ii) accrued or payable expenses; (iii) the current market value of all short sale obligations; and (iv) all other liabilities. For purposes of determining the amount of the Partnership's liabilities as of any date, the General Partner may treat estimates of expenses that are incurred on a regular or recurring basis over yearly or other periods as accruing in equal proportions over any such period. In addition, the General Partner may establish such reserves for unknown or unfixed liabilities or contingencies as it may determine.

**13.2.    Valuation of Assets.** For all purposes of this Agreement, including the determination of the Net Asset Value of the Partnership and the value of Capital Accounts, the assets of the Partnership shall be valued as follows:

(a)    Securities traded on a national securities exchange shall be valued at their last reported sales prices on the valuation date on the exchange where the Securities are principally traded or on a consolidated tape which includes the exchange, whichever shall be selected by the General Partner, or, if there are no sales on such date on the exchange or consolidated tape, at the mean between the last "bid" and "asked" prices at the close of trading on such date on the national securities exchange where the Securities are principally traded (or on the consolidated tape if "bid" and "asked" prices are reported on the consolidated tape). However, in no case shall a convertible security be valued at less than its conversion value as determined by the closing price of the underlying security into which it is convertible.

-15-

(b)     Securities traded over-the-counter shall be valued at the last reported sales price as reported by the National Association of Securities Dealers Automated Quotations ("NASDAQ") National Market System, or if such sales prices are not available, at the mean between the "bid" and "asked" prices on the relevant valuation date, as reported by NASDAQ (or if such prices are not reported by NASDAQ, as reported by the National Quotation Bureau, Inc.), or may be determined from any reliable source selected by the General Partner.

(c)     If on any valuation date the exchange or market herein designated for the valuation of any given asset is not open for business, its valuation shall be determined as of the last preceding date on which the exchange or market was open for business.  If an asset could not be liquidated on the valuation date, due to the operation of daily limits or otherwise, the settlement price on the first subsequent day on which the asset could be liquidated shall be the basis for determining the value thereof for that day, or such other value as the General Partner may determine.

(d)     Short-term money market instruments and bank deposits shall be valued at cost plus accrued interest to date.

(e)     All other assets and Securities shall be valued by the General Partner in its reasonable business judgment in accordance with industry standards and the valuation principles set forth in this Section 13.2.

(f)     Valuations determined pursuant this Section 13.2 may be modified by the General Partner to reflect restrictions upon liquidity or marketability, or other factors affecting valuation including, but not limited to, the amounts invested by the Partnership in the asset, subsequent purchases of the asset by other investors, actual or anticipated management changes, material events or pending events affecting the issuer (such as bankruptcies, reorganizations, mergers, acquisitions or strategic partner arrangements), and the current financial position and operating results of the issuer.

(g)     The General Partner does not guarantee or otherwise warrant that the valuations determined by the General Partner under this Section 13.2 represent with respect to any Partnership asset the amount which might be realized upon the sale, liquidation or other disposition of such asset. Nonetheless, all determinations of values by the General Partner under this Section 13.2 shall be final and conclusive as to all Partners for all purposes under this Agreement.

13.3.   **Temporary Suspension of Net Asset Value Calculation.**  The General Partner may declare a suspension of the determination of the Partnership's Net Asset Value if any of the following occur: (i) the closure or suspension of trading on any market or exchange or any other circumstance which, in the judgment of the General Partner, makes it not reasonably practicable for the Partnership to realize or dispose of its investments or to fairly determine the Net Asset Value; (ii) a breakdown occurs in any means normally employed in ascertaining the value of the Partnership's assets, or when for any reason the value of the Partnership's assets cannot be reasonably ascertained; (iii) the General Partner is in possession of material non-public information that may have a material impact on the determination of the Partnership's Net Asset Value; or (iv) the transfer of monies with respect to redemptions or the acquisition or realization of Partnership assets cannot be effected at normal rates of exchange.  In the event of a suspension in the determination of the Net Asset Value of the Partnership, the Partnership's Net Asset Value shall be determined at the earliest practicable time that such Net Asset Value can be determined in accordance with this Article 13.

-16-

CT00121

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed as of the date first above written.

**GENERAL PARTNER:**

CROSSROAD CAPITAL MANAGEMENT, LLC

By: _____

Name:

Title:

**LIMITED PARTNERS:**

ALL LIMITED PARTNERS NOW AND HEREAFTER
ADMITTED AS LIMITED PARTNERS OF THE
PARTNERSHIP PURSUANT TO POWERS OF ATTORNEY
EXECUTED IN FAVOR OF AND GRANTED AND
DELIVERED TO THE GENERAL PARTNER.

By: CROSSROAD CAPITAL MANAGEMENT, LLC,
    as attorney-in-fact for all Limited Partners

By: _____

Name: Charles T Thompson

Title: Custodian For Tyler C Thompson

MJ 1099616.02

CT00122