*Name of Recipient* _____          *Copy Number* _____

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM
dated May 23, 2007
of

# PARAMOUNT PARTNERS, L.P.
(a Delaware limited partnership)

This Confidential Private Placement Memorandum (this "Memorandum") is provided to you on a confidential basis solely in connection with your consideration of an investment in limited partnership interests (the "Interests") of Paramount Partners, L.P., a Delaware limited partnership (the "Fund"). This Memorandum may not be reproduced in whole or in part without the prior written consent of the Fund's general partner, Crossroad Capital Management, LLC (the "General Partner").

The Interests have not been and will not be registered under the Securities Act of 1933, as amended (the "Securities Act"), or the securities laws of any state. The Interests are being offered pursuant to exemptions provided by Section 4(2) of the Securities Act, Regulation D thereunder, certain state securities laws and certain rules promulgated pursuant thereto. The Interests may not be transferred in the absence of an effective registration statement under the Securities Act and any applicable state securities laws or (unless waived by the General Partner in its sole discretion) an opinion of counsel acceptable to the General Partner that such registration is not required. Transferability of the Interests is further restricted by the terms of the Fund's limited partnership agreement (as the same may be amended from time to time, the "Partnership Agreement"). The Interests have not been recommended or approved by the Securities and Exchange Commission or any state regulatory authority, nor have any of the foregoing authorities passed upon or endorsed the merits of this offering or the accuracy or adequacy of this Memorandum. Any representation to the contrary is a criminal offense.

The Interests offered hereby involve a high degree of risk. See "Investment Objective and Strategies," "Other Risk Factors" and "Potential Conflicts of Interest." Purchases of Interests are suitable only for persons of substantial financial means who can make a long term investment, can bear the risk of a complete loss of their investments in the Fund and have no need for liquidity in their investment. There is no market for the Interests and none is expected to develop. The General Partner reserves the right to reject the subscription of any prospective investor for any reason.

*Any inquiries should be directed to:*

John W. Lawton
Crossroad Capital Management, LLC
461 Bush Street; Suite: 330
San Francisco, CA 94108

Telephone: (415) 956-9560

**EXHIBIT 3**

CT00394

Except as otherwise indicated, this Memorandum speaks as of the date hereof. Neither the delivery of this Memorandum nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Fund after the date hereof.

Each prospective investor, by accepting delivery of this Memorandum, agrees promptly to return to the Fund or the General Partner this Memorandum and any other documents or information furnished if the prospective investor elects not to purchase any of the Interests offered hereby.

This Memorandum contains summaries believed by the Fund and the General Partner to be accurate with respect to the contents of certain documents, but investors should refer to the actual documents (copies of which either accompany this Memorandum or are available from the General Partner upon request) for complete information concerning the terms thereof, and all such summaries are qualified in their entirety by the contents of such documents.

No representations or warranties of any kind are intended or should be inferred with respect to the economic return or the tax consequences from an investment in the Fund. No assurance can be given that existing laws will not be changed or interpreted adversely to the Fund or the Limited Partners. Prospective investors are not to construe this Memorandum as legal or tax advice. Each prospective investor should consult with its own counsel and accountant for advice concerning the various legal, tax and economic considerations relating to the prospective investment. The Fund and the General Partner disclaim any and all liabilities for representations or warranties, expressed or implied, contained in, or omissions from, this Memorandum or any other written or oral communication transmitted or made available to the recipient.

The Fund shall make available to each prospective investor or its investment representative, during this offering and prior to the sale of any Interests to such prospective investor, the opportunity to ask questions of and receive answers from the General Partner or its representatives concerning any aspect of the Fund and its proposed business and to obtain any additional related information to the extent the General Partner possesses such information or can acquire it without unreasonable effort or expense.

This Memorandum does not purport to be all-inclusive or to contain all the information that a prospective investor may desire in investing in the Fund. In making an investment decision, prospective investors must rely on their own examination of the Fund and the terms of the offering made hereby, including the merits and risks involved. Prospective investors are urged to request any additional information they may consider necessary in making an informed investment decision. Each prospective investor is invited, prior to the consummation of a sale of any Interests in the Fund to such an investor, to ask questions of, and to seek additional information from, the General Partner concerning the Fund and this offering. A prospective investor should not subscribe for the Interests unless satisfied that it and its investment representative (if any) have asked for and received all information which would enable them to evaluate the merits and risks of the proposed investment.

No person other than the General Partner has been authorized to make representations, or give any information, with respect to the Interests, except the information contained herein, and any information or representation not contained herein or otherwise supplied by the General Partner must not be relied upon as having been authorized by the Fund or any of its partners.

CT00395

This offering may be withdrawn at any time before a closing and is specifically made subject to the terms described herein. The General Partner reserves the right to reject any subscription, in whole or in part, or to allot to any prospective investor less than the amount of Interests subscribed for by such prospective investor.

This Memorandum does not constitute an offer to sell, or a solicitation of an offer to buy, (a) by anyone in any state or jurisdiction in which such an offer or solicitation is not authorized, or in which the person making such an offer or solicitation is not qualified to do so, or (b) to any person to whom it is unlawful to make such an offer or solicitation.

It is the responsibility of any investor purchasing Interests to satisfy itself as to full observance of the laws of any relevant territory outside the United States in connection with any such purchase, including obtaining any required governmental or other consents or observing any other applicable requirements.

CT00396

## SUMMARY OF PRINCIPAL TERMS

The following is a summary of principal terms of the Fund and of the offering. This summary is qualified by reference to the other provisions of this Memorandum and the Partnership Agreement. The terms hereof are subject to modification or withdrawal.

| | |
|---|---|
| General Partner | Crossroad Capital Management, LLC, a Delaware limited liability company (the "General Partner"), will manage the Fund and its investment portfolio. |
| Investment Strategy | The Fund's investment objective will be to maximize investment returns while minimizing risks by using a "long/short" investment strategy. The Fund will invest in long positions in securities which it believes will outperform the overall securities markets while simultaneously taking short positions in securities which it believes will underperform the overall securities market. The Fund may utilize leverage in the implementation of its investment strategy. |
| | *As with any investment, there can be no assurance that the Fund's investment objective will be achieved or that an investor will not lose a portion or all of his or her investment in the Fund. The Fund's net asset value will fluctuate on a daily basis. The Fund is designed for investors who do not require current liquidity.* |
| The Offering | Limited Partnership Interests in the Fund ("Interests") are being offered in accordance with Section 4(2) of the Securities Act and Rule 506 of Regulation D thereunder to "accredited investors" only. |
| | Subscribers for Interests will be required to contribute their subscribed capital by wire transfer to such prime broker as the General Partner may designate (the "Prime Broker"). See "Subscription Terms and Procedures." Subscriptions received prior to each closing (which will occur in the General Partner's discretion) will be held by the Prime Broker pending each such closing, and interest (if any) earned on the subscription amounts will be added to the subscriber's investment in the Fund. |
| Use of Proceeds | The net proceeds of this private offering, after deduction of organizational and initial offering expenses, will be invested in accordance with the policies set forth under "Investment Objective and Strategies." A portion of the organizational and initial offering expenses of the Fund may be advanced by the General Partner and reimbursed by the Fund in equal monthly installments over a five year period. However, in the event that the Fund terminates operations prior to the expiration of this five year period, neither the Fund nor the Limited Partners will be responsible for reimbursement of the remaining unreimbursed amount. |

| | |
|---|---|
| Capital Contributions | Upon the acceptance by the General Partner of an investor's first subscription for Interests, such investor will become a limited partner of the Fund (a "Limited Partner"). Each investor will be required to make a capital contribution in the amount of its total subscription upon its admission as a Limited Partner. The minimum initial capital contribution by each subscriber is $100,000, although the General Partner may, in its sole discretion, permit subscribers to make an initial capital contribution of less than $100,000. Existing Limited Partners may add to their investments on an annual basis (or more frequently, in the General Partner's sole discretion) in amounts of not less than $50,000. The General Partner may, in its sole discretion, reject any subscription in whole or in part, for any or no reason, and may terminate this offering of Interests at any time. |
| Allocations | Net realized and unrealized profits and losses of the Fund will be allocated to the Partners' capital accounts on a monthly basis. |
| Distributions | The General Partner generally intends to reinvest all realized income and capital gains into additional Fund investments rather than distribute such realized income and gains to the investing partners of the Fund. Because the Fund will be classified and treated as a partnership for income tax purposes, each Partner will be subject to income tax on its proportionate share of such income and gains whether or not the Fund makes distributions thereof. |
| Fund Expenses | The Fund will bear all of its operating and other expenses, including but not limited to its organization and initial offering expenses, the brokerage commissions, dealer mark-ups and other transactional expenses associated with its investment activities and its legal, auditing, accounting and custodial fees. The Fund will also bear the salaries and expenses associated with research consultants (if any) engaged or employed to provide services to the Fund and travel expenses associated with conducting due diligence on prospective Fund investments. As discussed above, the General Partner may advance a portion of the organizational and initial offering expenses of the Fund. |
| Sales Fee | The General Partner has appointed Capital Solutions Distributors, LLC (the "Sales Agent") to refer prospective Fund investors to the General Partner. In connection with successful referrals, Limited Partners referred to the General Partner by the Sales Agent (the "Covered Limited Partners") will be charged an annual sales fee in advance equal to 1% of each Covered Limited Partner's capital account, commencing on the effective date of the Covered Limited Partner's initial subscription, and on each anniversary date of the initial subscription thereafter (the "Sales Fee"). The Sales Fee is payable to the Sales Agent and will be deducted from the capital account of each Covered Limited Partner |

CT00398

|   |   |
|---|---|
|   | In addition, the General Partner has agreed to pay the Sales Agent 7.5% of the Performance Allocation, if any, in connection with successful referrals of Covered Limited Partners. |
| **Management Fees** | The Fund will pay the General Partner a management fee equal to 1% per annum of the Fund's net asset value as of the first day of each calendar year (excluding the capital account balances of the General Partner or any of its members, officers, employees and affiliates). The management fee will be paid in advance, and the total management fee will be apportioned among the Partners (again, other than the General Partner or any of its members, officers, employees and affiliates) based on their relative capital account balances. *The Fund will pay the General Partner a prorated management fee with respect to any capital contribution made by a Limited Partner during a calendar year. However, in the event that the General Partner, in its sole discretion, permits a Limited Partner to effect a withdrawal on a date other than the last day of a calendar year, the General Partner will not refund any portion of the management fees paid with respect to withdrawn amount.* The General Partner, in its sole discretion, may assess a higher or lower management fee with respect to certain Limited Partners upon their admission to the Fund. |
|   | To the extent that brokers and dealers can deliver best execution on portfolio transactions, the General Partner may select brokers in part on their willingness to provide or pay for research, systems and other services and matters that the General Partner would otherwise be responsible for providing at its own expense (including its rent, overhead and other expenses). Such payments (commonly referred to as "soft dollar" benefits), if received, will increase the Fund's transactional costs and will increase the General Partner's net profits in relation to the Fund. |
| **Performance Allocations** | A "Performance Allocation" will be determined for each Limited Partner at the end of each "Performance Period" (generally, as defined in the Partnership Agreement, a calendar year). As more fully described in the Partnership Agreement, the Performance Allocation for each Limited Partner generally will equal 25% of the net profits during each Performance Period, subject to a "high water mark" under which net losses previously allocated to such Limited Partner must first be offset by net profits during the ensuing Performance Period. Each Limited Partner's Performance Allocation will be allocated to the General Partner and charged against such Limited Partner, as of the last day of each Performance Period prior to any withdrawals by such Limited Partner as of such date |
|   | Performance Allocations are assessed only on net profits over and above the last "high water mark" for each Limited Partner. This is accomplished by reducing net profits during any Performance Period by available net loss carryforwards from the prior Performance Period Each Limited Partner's Performance Allocation will be allocated to |

-6-

|  |  |
|---|---|
|  | the General Partner and charged against such Limited Partner, as of the last day of each Performance Period prior to any permissible withdrawals by the Limited Partner as of such date. If a Limited Partner withdraws any portion of its capital account during the Performance Period to which a loss carryforward relates or during the following Performance Period (when the loss carryforward will be utilized in calculating the Limited Partner's total investment return), such loss carryforward will be proportionately reduced. |
|  | No Performance Allocation will be assessed against the General Partner or, in the General Partner's discretion, any of its members, governors, directors, officers or affiliates that may invest in the Fund |
| **Withdrawals** | Limited Partners generally may make withdrawals from their capital accounts on an annual basis (as of the last business day of each calendar year) upon providing the General Partner with at least 60 days' prior written notice. *However, you will generally not be permitted to make a withdrawal prior to the first anniversary of your admission to the Fund.* |
|  | No Limited Partner may make a withdraw, other a complete withdrawal, which reduces a Limited Partner's capital account balance below minimum initial capital contribution amount. However, the General Partner may, in its sole discretion, waive minimum capital account balances with respect to certain Limited Partners or under certain circumstances. The General Partner may require that any Limited Partner withdraw all or any portion of its capital account for any reason without notice |
|  | *Additional restrictions may be placed on withdrawals. Please review the Partnership Agreement carefully before investing.* |
| **Payment of Withdrawal Proceeds** | For withdrawals representing up to 80% of a Limited Partner's capital account balance, the estimated amount of such withdrawal will be payable within 90 days of the effective date of the withdrawal. For withdrawals representing more than 80% of a Limited Partner's capital account, 80% of the estimated withdrawal proceeds will be payable within 90 days of the effective date of the withdrawal and the remainder shall be payable after the completion of the year-end audit of the Fund's financial statements. No escrow account is used in processing withdrawals and no interest is payable on withdrawal proceeds |
| **Suspension of Withdrawal Rights** | The General Partner, in its sole discretion, may suspend the right of withdrawal or postpone the date of payment of withdrawal proceeds for any period during which (i) any stock exchange or over-the-counter market is closed or trading on such exchange or market is restricted or |

CT00400

|  |  |
|---|---|
|  | suspended, (ii) there exists a state of affairs such that it is not practicable or is seriously prejudicial to dispose of the Fund's assets, (iii) a breakdown occurs in any of the means normally employed in ascertaining the value of Fund assets or when for any other reason the value of such assets cannot be reasonably ascertained. Any amounts subject to suspended capital withdrawal rights shall continue to participate in the Fund's profits and losses. |
| Federal Tax Matters | The Fund has been structured to qualify as a "pass-through" entity for tax purposes. Each prospective investor should consult its own tax adviser regarding the federal, state, local and foreign tax consequences of an investment in the Fund. |
|  | Because the Fund will be permitted to acquire investments subject to indebtedness (including, but not limited to, purchasing securities "on margin"), certain of the Fund's investments may give rise to "unrelated business taxable income" to otherwise tax-exempt investors. See "Federal Income Tax Considerations – Unrelated Business Taxable Income." |
| ERISA | The General Partner intends to organize and operate the Fund so that Fund assets will not be "plan assets" under the Employee Retirement Income Security Act of 1974 "plan asset regulations." |
| Reports to Partners | The General Partner will provide each Limited Partner with monthly financial statements and performance information of the Fund and its operations. Additionally, the General Partner will provide each Limited Partner with audited annual financial statements of the Fund as soon as practicable following the date they become available. |
| Prime Broker/Custodian | The Prime Broker will clear and settle all portfolio transactions, will provide any required financing in connection with the Fund's portfolio transactions and will serve as the custodian of the Fund's assets. The Prime Broker will also supply the General Partner with valuations of the Fund's investment securities (which the General Partner will use in calculating the Fund's net asset value) and will act as custodian for all Fund assets. |
| Accounting and Reporting | Virchow, Krause & Co., Bloomington, Minnesota, has been selected by the General Partner as the Fund's independent certified public accounting firm and will report upon the financial statements of the Fund for each year. Copies of their reports will be distributed to all Limited Partners together with a report of the Fund's operations and portfolio holdings. The Fund's fiscal year will end December 31. |
| Legal Advisor | Faegre & Benson LLP, Minneapolis, Minnesota. |

CT00401

## INVESTMENT OBJECTIVE AND STRATEGIES

*Principal Objective and Trading Strategy.* The Fund's investment objective will be to maximize investment returns while minimizing risks by using a "long/short" investment strategy. The Fund will invest in long positions in securities which it believes will outperform the overall securities markets while simultaneously taking short positions in securities which it believes will underperform the overall securities market. The Fund may utilize leverage in the implementation of its investment strategy.

[In pursuing the Fund's investment objective, the General Partner will primarily employ technical analysis in the trading of the Fund's assets. Technical analysis is based, most simply, on supply and demand. When supply is low and demand is high, the stock price will rise. Conversely, if the supply is high and the demand is low, the stock price will fall. Technical analysis operates with a number of basic rules and assumptions, one of which is that all available information is reflected in the price of a security. The General Partner will typically use technical strategies to determine market direction and will also employ equity charts to identify specific securities for purchase or sale based on the overall direction of the market. A technical trader does not normally concern him or herself with the fundamentals of a particular equity, only the market's reaction to the fundamentals.

However, in addition to technical analysis, the General Partner will also employ fundamental analysis in the management of the Fund's portfolio. Fundamental analysis is a method of evaluating securities by attempting to measure the intrinsic value of a particular security. Fundamental analysis covers everything from the overall economy and industry conditions, to the financial condition and management of companies. The General Partner's approach will be to constantly search for intrinsic value in a company's securities and to trade those securities when value opportunities exist. As money managers, the principals of the General Partner will constantly evaluate securities of various companies to identify situations where the asset or equity value of a company differs from its market price.]
[confirm that bracketed language is accurate]

*As with any investment, there can be no assurance that the Fund's investment objective will be achieved or that an investor will not lose a portion or all of its investment in the Fund. The Fund is designed for investors who do not require current liquidity.*

The Fund will not knowingly invest in the securities of any issuer as to which the General Partner, any of its members or any Limited Partner is an "insider" or is otherwise affiliated.

*Short Sales.* The Fund may seek to realize additional gains or hedge investments through short sales. Short sales are transactions in which the Fund sells a security it does not own, in anticipation of a decline in the market value of that security. To complete such a transaction, the Fund must borrow the security to make delivery to the buyer. The Fund then is obligated to replace the security borrowed by purchasing it at the market price at or prior to the time of replacement. The price at such time may be more or less than the price at which the security was sold by the Fund. Until the security is replaced, the Fund is required to repay the lender any dividends or interest that accrue during the period of the loan. To borrow the security, the Fund also may be required to pay a premium, which would increase the cost of the security sold. The net proceeds of the short sale will be retained by the broker (or by the Fund's custodian in a special custody account), to the extent necessary to meet margin requirements, until the short position is closed out. The Fund also will incur transaction costs in effecting short sales.

The Fund will incur a loss as a result of the short sale if the price of the security increases between the date of the short sale and the date on which the Fund replaces the borrowed security. The Fund will realize a gain if the security declines in price between those dates. The amount of any gain

-9-

will be decreased, and the amount of any loss increased, by the amount of the premium, dividends, interest or expenses the Fund may be required to pay in connection with a short sale. An increase in the value of a security sold short by the Fund over the price at which it was sold short will result in a loss to the Fund, and there can be no assurance that the Fund will be able to close out the position at any particular time or at an acceptable price. Except in the case of short sales "against the box" (as to which the Fund owns or has a contractual right to acquire at a fixed price the securities sold short), the Fund's market risk is unlimited in that the increase in the market price of the security sold short is unlimited.

The short sale of securities may also be used to create leverage in the Fund's portfolio. Leverage obtained by short-selling may result in the Fund achieving absolute market exposure equal to a multiple of the Fund's capital. Leverage significantly increases the Fund's market exposure and its risk. When the Fund is leveraged and its investments increase or decrease in value, the Fund's net asset value will increase or decrease more (depending upon the degree of leverage employed by the Fund at such time) than if it were not leveraged. For example, if the Fund were leveraged to 200% of its net asset value, a 25% increase or decrease in the absolute value of the Fund's investment portfolio would cause the Fund's net asset value to increase or decrease (as applicable) by 50% (200% of the increase or decrease of 25%). Successful use of leverage depends on the General Partner's ability to predict market movements correctly.

*Portfolio Turnover* The Fund will employ an active trading strategy intended to take advantage of short-term market inefficiencies and to capitalize on what the General Partner believes to be relatively predictable investor trading behavior. This strategy will result in high portfolio turnover within the Fund, which in turn will result in much higher than average transactional costs to the Fund and in substantially all of the Fund's investment returns being short-term capital gains.

*Option Transactions.* The Fund may purchase or sell various "put" and "call" options, warrants, and other derivative securities without limitation. The use of options involves a high degree of embedded leverage, which can involve greater market risk, especially when not used to hedge the underlying security. If the Fund purchases a put option, the Fund acquires the right to sell the underlying security at a specified price at any time during the term of the option or on the option expiration date. Purchasing put options may be used as a portfolio investment strategy when an investment manager perceives significant short-term risk of substantial capital depreciation potential for the underlying security and may be used as an alternative to selling a security short. Selling put options may also be used as a method to purchase securities below current market prices or to collect the premium. If the Fund purchases a call option, it acquires the right to purchase the underlying security at a specified price at any time during the term of the option. The purchase of a call option is a type of insurance policy to hedge against losses that could occur if the Fund has a short position in the underlying security and the security thereafter increases in price. The selling of call options may also be used to initiate short positions at or above current market prices or to collect a premium. The Fund generally will only invest in options for which the General Partner believes there is an active secondary market to facilitate closing transactions. The premium paid at the time an option is purchased will reduce any profit the Fund might have realized had it purchased or sold the underlying security (or the contract on the underlying index, as applicable) instead of purchasing the put or call option.

*Borrowing for Leverage* The Fund may borrow money without limitation to invest in additional portfolio securities. *This practice significantly increases the Fund's market exposure and its risk.* When the Fund borrows money for leverage and its investments increase or decrease in value, the Fund's net asset value will increase or decrease more (possibly by multiples, depending upon the degree of leverage employed by the Fund at such time) than if it had not borrowed money. In addition, the interest the Fund must pay on borrowed money will reduce the amount of any potential gains or increase any losses.

CT00403

*Futures Contracts.* The General Partner has no current intention of employing futures contracts in pursuing the Fund's investment objective.

## BROKERAGE AND PORTFOLIO TRANSACTIONS

The General Partner will generally select brokers and dealers to effect transactions on behalf of its clients substantially in the manner set forth below. However, no guarantee or assurance can be made that the General Partner will adhere to, and comply with, its stated practices. The General Partner will seek to obtain the best price and execution for the transactions, taking into account factors such as price, size of order, difficulty of execution and operational facilities of a brokerage firm and the firm's risk in positioning a block of securities. As described below, the General Partner may consider factors that benefit the General Partner and its affiliates, such as the provider's agreement to pay certain expenses the General Partner or its affiliates would otherwise bear (sometimes referred to as "soft dollars"). The General Partner's receipt of such benefits may give it an incentive to select a provider for the Fund that it would not have used but for these benefits, and an incentive not to negotiate from the provider the lowest possible commission rate. The General Partner intends to use only those providers that the General Partner believes provide the Fund with high-quality services and competitive commission rates, taking into consideration the services and products received.

Consistent with the principle of seeking best price and execution, the General Partner may place brokerage orders with brokers that provide the General Partner and its affiliates with supplemental research, market and statistical information, including advice as to the value of securities, the advisability of investing in, purchasing or selling securities, and the availability of securities or purchasers or sellers of securities, and furnishing analyses and reports concerning issuers, industries, securities, economic factors and trends, portfolio strategy and the performance of accounts. The expenses of the General Partner are not necessarily reduced as a result of the receipt of this supplemental information, which may be useful to the General Partner or its affiliates in providing services to clients other than the Fund. In addition, not all of the supplemental information is used by the General Partner in connection with Fund investments. The General Partner expects that the use of commissions or "soft dollars" to pay for research products or services may not fall within the safe harbor created by Section 28(e) of the Securities Exchange Act of 1934, as amended.

## OTHER RISK FACTORS

There are various substantial risks associated with an investment in the Fund. No person should invest in the Fund unless it is fully able, financially and otherwise, to bear such a loss, and unless it has the background and experience to understand thoroughly the risks of its investment. This and other sections of this Memorandum identify some of the risks of investing in the Fund, but this Memorandum does not attempt to identify each risk, or to describe completely or substantially those risks it does identify.

*No Guarantee of Investment Performance.* The General Partner cannot warrant or guarantee that the Fund will achieve its stated investment objective or achieve positive or competitive investment returns. Market, regulatory and other factors, many of which cannot be anticipated or controlled by the General Partner, could result in the Fund not generating positive or competitive after-tax returns or in an investor losing a portion or all of its investment in the Fund.

-11-

*No Market for Interests.* Although Interests in the Fund may be redeemed on a periodic basis, Interests may not be assigned, pledged or otherwise transferred without the prior written consent of the General Partner. There is no market for the Interests and none is expected to develop. The Interests will not be registered under the Securities Act or any other securities law and will be subject to strict restrictions on resale and transferability under such laws and the Partnership Agreement. Therefore, investors must be prepared to bear the risk of their investment in the Fund for a substantial period of time.

*Passive Investment.* The Fund will be managed exclusively by the General Partner, and the Limited Partners will not be able to make any investment or other decision on behalf of the Fund. Limited Partners are in fact precluded from active participation in making investment decisions. In order to safeguard their limited exposure to the Fund's liabilities, Limited Partners must rely on the General Partner to manage and conduct the affairs of the Fund.

*Reliance on Key Person.* The Fund Agreement vests in the General Partner broad powers to manage the Fund's business and affairs. The Fund's future profitability will in large measure depend upon the business and investment acumen key personnel of the General Partner. Should anything happen to such persons, the business and results of operations of the Fund may be adversely affected.

*Absence of Regulatory Oversight.* While the Fund may be considered similar to an investment company, it does not intend to register as such under the Investment Company Act of 1940 (the "Investment Company Act"), in reliance upon an exemption available to privately offered investment companies. Accordingly, the provisions of the Investment Company Act (which, among other matters, requires investment companies to have a board of directors or trustees comprised in part of disinterested persons, requires securities to be held in segregated custody accounts, and closely regulates the relationship between the investment company and its investment adviser) will not be applicable.

## POTENTIAL CONFLICTS OF INTEREST

*Non-Exclusive Relationship.* The General Partner may be subject to various conflicts of interest in the performance of its duties and obligations for the Fund. The General Partner and its affiliates may provide similar services to other persons, some of whom may have investment objectives and policies similar to those of the Fund. The Fund may therefore invest in securities in which other accounts managed by the General Partner and/or its affiliates also invest. In addition, the General Partner and/or its affiliates may give advice and recommend securities to, or buy or sell securities for, such accounts that may be different from the advice given to, or securities recommended for, the Fund even though the investment objectives of such accounts may be the same as or similar to those of the Fund. There can be no assurance that the Fund will be afforded comparable investment opportunities to those directed to such other accounts managed or advised by the General Partner or its affiliates. The General Partner and its portfolio manager will devote as much of their business time to the Fund as they shall determine is appropriate. While the General Partner believes that there is generally a commonality of interest among its various business responsibilities, conflicts may arise in certain situations.

*Participation of the General Partner in Organization of Fund.* The General Partner and its principals participated in the structuring and organization of the Fund. Thus, the selection of the General Partner and the setting of the General Partner's compensation were not the result of arms-length negotiation.

CT00405

*Performance Allocations.* The Performance Allocations may create an incentive for the General Partner to make investments that are riskier or more speculative than would be the case in the absence of the Performance Allocations. The performance of the Fund on which the Performance Allocation is calculated will include unrealized appreciation and depreciation of Fund investments which may not ultimately be realized by the Fund and the Partners. The amounts of Performance Allocations are variable and cannot be determined in advance. Depending on the Fund's total return, the amount of Performance Allocations may be high compared to a fixed fee paid to an investment manager for managing a comparable amount of money.

## MANAGEMENT OF THE FUND

### General Partner

The General Partner of the Fund will be Crossroad Capital Management, LLC, a Delaware limited liability company. All of the General Partner's capital is owned by John W. Lawton and Capital Solutions Management, L.P ("Capital Solutions"). As of the initial date of the agreement between Capital Solutions and the General Partner, Capital Solutions owns 10 percent of the General Partner. For each $2,000,000 in new assets the General Partner takes under management, Capital Solutions will own an additional 10 percent of the General Partner, up to a maximum of 50 percent. Capital Solutions will advise and assist the General Partner in business planning, business management, business development, and fundraising, and the General Partner will pay Capital Solutions a monthly fee for services rendered.

The principal business address of the General Partner is 461 Bush Street, Suite 330 San Francisco, CA 94108

### Partnership Agreement

The Partnership Agreement provides that the General Partner, its affiliates, and their respective directors, governors, shareholders, members, partners, officers, employees and agents, will not be liable to any Limited Partner or the Fund for honest mistakes of judgment, acts or omissions done or made in good faith for a purpose reasonably believed to be in the best interests of the Fund; the negligence, dishonesty or bad faith of any employee, broker or other agent of the Fund; or acts or omissions done or made in accordance with the advice or opinion of counsel or accountants. However, these provisions will not relieve any person of any liability for acts or omissions of such person which a court finds to be the result of the gross negligence, recklessness or intentional wrongfulness of such person or if the court determines that applicable law prevents exculpation. The Partnership Agreement provides that a loss from an investment made and managed by the General Partner in the good faith exercise of its reasonable business judgment will not constitute gross negligence, recklessness or intentional wrongfulness or prevent exculpation.

The Partnership Agreement also provides that the Fund will indemnify the General Partner, its affiliates, and their respective directors, governors, shareholders, members, partners, officers, employees and agents, for damages, settlements, fees and expenses arising from claims and actions relating to the Fund or its affairs. However, indemnification will not extend to the conduct of an indemnified person which a court finds to be the result of the gross negligence, recklessness or intentional wrongfulness of such indemnified person or if the court determines that applicable law prevents indemnification. Expenses incurred by any indemnified party in defending an eligible claim or proceeding will be paid by the Fund in advance of the final disposition of such claim or proceeding provided the party undertakes to repay such amount if it is ultimately determined that the party was not entitled to be indemnified by the Fund

CT00406

## FEES AND EXPENSES

In addition to the management fees and Performance Allocations discussed above under "Summary," the Fund will bear (and, therefore, each Limited Partner will indirectly bear) all of the Fund's operating and other expenses, including the brokerage commissions, dealer mark-ups and other transactional expenses associated with its investment activities and its legal, auditing, accounting and custodial fees. The Fund will also bear the salaries and expenses associated with research consultants (if any) engaged or employed to provide services to the Fund and travel expenses associated with conducting due diligence on prospective Fund investments. The General Partner may advance a portion of the organizational and initial offering expenses of the Fund.

## SALES FEE

The General Partner has appointed Capital Solutions Distributors, LLC (the "Sales Agent") to refer prospective Fund investors to the General Partner. In connection with successful referrals, Limited Partners referred to the General Partner by the Sales Agent (the "Covered Limited Partners") will be charged an annual sales fee in advance equal to 1% of each Covered Limited Partner's capital account, commencing on the effective date of the Covered Limited Partner's initial subscription, and on each anniversary date of the initial subscription thereafter (the "Sales Fee"). The Sales Fee is payable to the Sales Agent and will be deducted from the capital account of each Covered Limited Partner.

In addition, the General Partner has agreed to pay the Sales Agent 7.5% of the Performance Allocation, if any, in connection with successful referrals of Covered Limited Partners.

## CAPITAL ACCOUNTS; ALLOCATIONS

A capital account will be established on the Fund's books for each Limited Partner. The initial value of the capital account will be the Limited Partner's capital contribution to the Fund. The capital account will be decreased by any capital withdrawn by the Limited Partner from the capital account; any distribution made from the capital account to the Limited Partner by the Fund; the Limited Partner's share of the Fund's expenses and losses (both realized and unrealized), and Performance Allocations to the General Partner. Each Limited Partner's capital account will be increased by the Limited Partner's share of the Fund's gains (both realized and unrealized) and of any dividend, interest and other income earned by the Fund.

## DESCRIPTION OF INTERESTS

All Interests are equal as to distributions and voting privileges, except as otherwise disclosed in the Partnership Agreement, and have no preemptive, conversion, exchange or redemption rights (other than the redemption rights described herein and in the Partnership Agreement). Limited Partners are entitled to a proportionate share of the net assets of the Fund available for distribution to such Limited Partners upon liquidation of the Fund. Limited Partners are entitled to vote in accordance with their respective Interests only with respect to limited matters as set forth in the Partnership Agreement.

## DETERMINATION OF NET ASSET VALUE

CT00407

The General Partner will determine the Fund's net asset value, generally as of the last day of each calendar quarter, in the manner set forth in the Partnership Agreement. In determining the Fund's net asset value, the General Partner will generally rely on valuations of investment securities that are supplied to it by the Prime Broker.

## SUBSCRIPTION TERMS AND PROCEDURES

In order to subscribe for Interests, each prospective investor will be required to deliver to the General Partner a fully executed and appropriately completed copy of the Fund's subscription agreement (the "Subscription Agreement"), which includes certain representations by such prospective investor with respect to such prospective investor's subscription and which requests information necessary for the General Partner to determine whether the prospective investor is qualified under applicable securities laws and regulations to invest in the Interests. Accompanying this Memorandum are copies of the forms of the Partnership Agreement and Subscription Agreement. *A new Subscription Agreement must be completed with each investment in the Fund.* Additional copies of the Subscription Agreement are available from the General Partner.

The amount to be invested must be delivered by wire transfer (or, if approved in advance by the General Partner, by check) to the Prime Broker and received no later than the effective time of the investment. The General Partner will supply each investor with wire transfer or alternative instructions upon its acceptance of each Subscription Agreement. Subscriptions received prior to each closing will be escrowed by the Prime Broker pending each such closing and invested in an interest-bearing account. Interest earned on escrowed amounts will be allocated proportionately among subscribers in accordance with the amount invested and the time period between the date of each subscription and the closing date. Interest earned will be added to subscribers' subscription amounts.

## INVESTOR SUITABILITY STANDARDS

An investment in Interests involves a high degree of risk and should not be made by any person who cannot afford a complete loss of its investment therein. The Interests lack liquidity, as compared with other securities investments. See "Investment Objective and Strategies" and "Other Risk Factors."

Each purchaser of an Interest is required to represent that the Interest is being acquired for its own account, for investment, and not with a view to resale or distribution. The Interests are suitable investments only for sophisticated investors for whom an investment in the Fund does not constitute a complete investment program and who fully understand, are willing to assume, and who have the financial resources necessary to withstand the risks involved in the Fund's specialized investment program and to bear the potential loss of their entire investment in the Interests.

Each purchaser of an Interest must qualify as an "accredited investor" within the meaning of Regulation D under the Securities Act and must meet certain additional suitability standards set forth in the Subscription Agreement to be completed with each investment in the Fund.

**Securities Act**

An "accredited investor" includes:

1. Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his or her purchase, exceeds $1,000,000;

CT00408

2. Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

3. Any organization described in Section 501(c)(3) of the Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the Interests, with total assets in excess of $5,000,000;

4. Any bank as defined in Section 3(a)(2) of the Securities Act or any savings and loan association or other institution as defined in Section 3(a)(5) of the Securities Act, whether acting in its individual or fiduciary capacity, any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; any insurance company as defined in Section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in Section 2(a)(48) of the Investment Company Act; any Small Business Investment Company licensed by the U.S Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000, or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

5. Any "private business development company" as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

6. Any trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Interests, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Securities Act; or

7. Any entity all of whose equity owners satisfy one or more of such requirements (1) through (6) above

\* \* \*

The foregoing suitability standards represent the minimum suitability requirements for prospective investors in the Fund and satisfaction of these standards does not necessarily mean that an investment in the Fund is a suitable investment for a prospective investor. In all cases, the General Partner will have the right, in its sole discretion, to refuse a subscription for Interests for any reason, including, but not limited to, its belief that the prospective investor does not meet the applicable suitability requirements or that such an investment is otherwise unsuitable for that investor.

*Each prospective investor is urged to consult with its own advisers to determine the suitability of an investment in the Interests, and the relationship of such an investment to the investor's overall investment program and financial and tax position.* Each purchaser of an Interest is required to further represent that, after all necessary advice and analysis, its investment in an Interest is suitable and appropriate, in light of the foregoing considerations

CT00409

## OTHER REGULATORY CONSIDERATIONS

*Securities Act.* The Interests are being offered as a private placement to a limited number of qualified buyers and will not be registered under the Securities Act, in reliance upon exemptions provided by Section 4(2) of the Securities Act and Rule 506 of Regulation D thereunder. Each investor must be an "accredited investor" (as defined in Regulation D) and will be required in connection with the purchase of the Interests to make representations confirming its accredited investor status. See "Investor Suitability Standards" above

The Interests are subject to restrictions on subsequent dispositions thereof designed to require compliance with the Securities Act. In short, the Interests may not be transferred in the absence of an effective registration statement under the Securities Act and any applicable state securities laws or an opinion of counsel acceptable to the General Partner that such registration is not required Transferability of the Interests is further restricted by the terms of the Partnership Agreement. However, after the first anniversary of a Limited Partner's admission to the Fund, Interests generally may be redeemed on a quarterly basis at their net asset value.

This Memorandum is not intended to provide the sole basis of an investment in the Interests. Each prospective investor should conduct (and will be deemed to have made) its own independent investigation of the Interests, the Fund and the General Partner  The General Partner will provide qualified prospective investors with additional information as may be reasonably requested relating to the offering of the Interests. In addition, qualified prospective investors will have the opportunity to meet directly with certain members of the General Partner's management.  Investors will be asked to acknowledge in the Subscription Agreement that they were given the opportunity to obtain such additional information and that they either did so or elected to waive such opportunity.

The General Partner makes no representations as to the proper characterization of the Interests for legal, investment, accounting, regulatory and tax purposes, or as to the ability of particular investors to purchase the Interests under applicable legal and investment restrictions.  Prior to investing in the Interests, a prospective investor should consult with its legal, investment, accounting, regulatory and tax advisers to determine the consequences of an investment in the Interests and arrive at an independent evaluation of such investment.

*Investment Company Act.* It is anticipated that the Fund will not be subject to the registration requirements of the Investment Company Act. The Fund will rely on Section 3(c)(1) of the Investment Company Act, which is available to certain issuers whose outstanding securities are beneficially owned by not more than 100 persons  The Fund will obtain appropriate representations and undertakings from investors in order to ensure that the Fund continually meets the conditions of Section 3(c)(1)

*ERISA*  ERISA governs the investment of the assets of employee benefit plans subject to ERISA, including those that are Limited Partners.  ERISA and the rules and regulations of the U.S. Department of Labor (the "DOL") promulgated thereunder contain provisions that should be considered by fiduciaries of those plans and their legal advisers.

In deciding upon an investment in the Fund, plan fiduciaries should consider their basic fiduciary duties under ERISA Section 404, which requires them to discharge their investment duties prudently, solely in the interests of the plan participants and beneficiaries and by diversifying the investments of the plan  Plan fiduciaries must give appropriate consideration to the role that an investment in the Fund would play in the plan's overall investment portfolio. In analyzing an investment in the Fund, special attention should be given to the DOL's regulation on investment duties (29 CFR 2550.404a-1). That

CT00410

regulation requires, among other things (i) a determination that each investment is reasonably designed, as part of the portfolio, to further the plan's purposes, (ii) an examination of risk and return factors and (iii) consideration of the portfolio's composition with regard to diversification, the liquidity and current return of the total portfolio relative to the anticipated cash flow needs of the plan and the projected return of the total portfolio relative to the plan's funding objectives. ERISA also requires a fiduciary to discharge its duties in accordance with the documents governing the plan insofar as they are consistent with ERISA.

DOL regulations concerning whether an investment by a plan in a partnership will result in the assets of the partnership being deemed "plan assets" contain a general rule that when an employee benefit plan invests in an equity interest in an entity (such as the Fund), and when the interest acquired by the plan is neither a publicly offered security nor a security issued by a registered investment company, the plan's assets include both the interest and an undivided interest in each of the underlying assets of the partnership, unless the aggregate equity participation in the Fund by "benefit plan investors" (including individual retirement accounts, pension, profit-sharing and stock bonus plans and governmental retirement plans) is not "significant" (which the DOL regulations define as less than 25% of the Fund's total capital). The General Partner does not anticipate that the aggregate equity participation in the Fund by benefit plan investors will equal or exceed 25% or more of the Fund's total committed capital and the underlying assets of the Fund. Moreover, the General Partner will not permit it to do so unless and until the General Partner registers as an investment adviser with the Securities and Exchange Commission or one or more states.

The foregoing discussion of ERISA issues should not be construed as legal advice. Trustees and other fiduciaries of employee benefit plans subject to ERISA should consult with their own counsel with respect to issues arising under ERISA and make their own independent investment decisions.

## FEDERAL INCOME TAX CONSIDERATIONS

The following is a summary of certain United States federal income tax consequences of the ownership of Interests in the Fund. The discussion is based on current income tax laws, regulations, rulings, cases and other authorities in effect as of the date of this Memorandum, all of which are subject to change by legislative, judicial and administrative action, possibly with retroactive effect. The summary does not discuss all tax considerations that may be relevant to a prospective investor. Counsel has not provided any opinions regarding the tax consequences associated with an investment in the Fund.

The tax treatment of any Partner will depend on that Partner's particular circumstances and may differ from the summary below. Prospective Partners must consult their own tax advisers concerning the specific United States federal, state, local and foreign tax consequences of purchasing, owning, and disposing of Interests.

*Partnership Taxation*. The Fund has been structured to qualify as a partnership (*i.e.*, a "pass-through" entity) for U.S. federal income tax purposes, and not as a publicly traded partnership or as an association taxable as a corporation. No opinion of counsel or ruling from the Internal Revenue Service on this question has been or will be requested.

A partnership is not subject as an entity to United States income tax. The Fund will, however, file a federal partnership information return reporting its operations for each calendar year and will provide each Partner with the information necessary to enable the Partner to include in its federal income tax return items arising from its investment in the Fund. Each Partner will be required to take into

-18-

CT00411

account its distributive share of all items of Fund income, expense, gain, loss, deduction and credit, whether or not distributed.

*Allocation of Fund Income, Gains and Losses* For federal income tax purposes, a Partner's distributive share of Fund income, gain, deduction, loss or credit generally is determined in accordance with the Partnership Agreement. However, under Section 704 of the Code, the allocation of all such items pursuant to the Partnership Agreement must have "substantial economic effect" to be recognized for federal income tax purposes. If any allocation fails to satisfy the "substantial economic effect" requirement, the allocated items would be reallocated, for tax purposes only, among the Partners based on their respective interests in the Fund, determined on the basis of all the relevant facts and circumstances. Such a reallocation, however, would not alter the distribution of cash flow under the Partnership Agreement.

*Deductibility of Fund Expenses* The Fund will treat its expenses as fully deductible for Federal income tax purposes. Such expenses, however, may be characterized by the U.S. Internal Revenue Service as investment expenses. To the extent the characterization of these items as investment expenses were to be sustained, the deductibility by a noncorporate Partner of its share of the amounts so characterized would be subject to a 2% limitation on deductibility of "miscellaneous itemized deductions," with the result that the taxable income of a noncorporate Partner derived from the Fund might be increased. Capital expenditures, such as brokerage commissions attributable to securities trading, will be capitalized and will reduce gains or increase losses, and will not be treated as investment expenses by the Fund. Accordingly, in view of such uncertain application to the Fund and its Partners of the 2% floor on miscellaneous itemized deductions, prospective investors must consult with their tax advisors regarding the potential impact of the 2% rule to their particular tax situations.

*Unrelated Business Taxable Income.* Organizations exempt from federal income tax under Section 501(a) of the Code, including certain plans subject to ERISA (as defined above), are subject to the tax on "unrelated business taxable income" imposed by Section 511 of the Code. Unrelated business taxable income arises primarily as either income from an unrelated trade or business regularly carried on or as income from "debt-financed" property. Although the Fund believes that its activities generally will not involve engaging in any trade or business, the Fund is permitted to acquire investments subject to indebtedness. Accordingly, certain of the Fund's investments may give rise to unrelated business taxable income

*Taxation of Non-U.S. Investors* In general, a non-U.S. investor should not be subject to U.S. federal income tax with respect to its distributive share of Fund income, expense, gain, loss, deduction and credit. However, any dividends received from a portfolio company and which are allocable to a non-U.S. investor may be subject to a 30% U.S. federal withholding tax. In general, a non-U.S. investor will not be subject to U.S. federal withholding taxes on any capital gains recognized from the sale, exchange or redemption of stock in a portfolio company

*The foregoing discussion does not address any tax consequences to the partnership or particular partners under applicable state, local or foreign laws. Prospective investors are urged to consult their tax advisers with reference to their specific tax situations, including any applicable federal, state, local or foreign taxes.*

fb us 1020341 03

CT00412